NATHAN E. SHAFROTH (Bar No. 232505)
COVINGTON & BURLING LLP
Salesforce Tower, 415 Mission Street
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
nshafroth@cov.com

ANNA ENGH (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
aengh@cov.com

DAVID LUTTINGER (*pro hac vice forthcoming*)
CLÉA P.M. LIQUARD (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
The New York Times Building, 620 Eighth Avenue
New York, New York 10018
Telephone: + 1 (212) 841-1000
Facsimile: + 1 (212) 841-1010
dluttinger@cov.com; cliquard@cov.com

*Attorneys for Defendant Insured McKesson Corporation*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MCKESSON CORPORATION;<br><br>and | Civil Case No.:<br><br>**DEFENDANT MCKESSON CORPORATION'S NOTICE OF REMOVAL**<br><br>(Removal from the Superior Court of California for the County of Orange—Central Justice Center, Case No. 30-2020-01168115-CU-IC-CXC) |

AIU INSURANCE COMPANY; ARCH
REINSURANCE LIMITED; ARGO RE
LIMITED; ASPEN INSURANCE UK
LIMITED; CANOPIUS UNDERWRITING
BERMUDA LIMITED; ENDURANCE
SPECIALTY INSURANCE LIMITED;
GOLDEN STATE INSURANCE
COMPANY LIMITED; GREAT LAKES
INSURANCE COMPANY SE;
IRONSHORE SPECIALTY INSURANCE
COMPANY; LEXINGTON INSURANCE
COMPANY; LIBERTY SPECIAL
MARKETS AGENCY; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509B0WCN1500017; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509BOWCN1600451; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509BOWCN1700408; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. 509/DL554610; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509BOWCN1600450; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509BOWCN1700419; MARKEL
AMERICAN INSURANCE COMPANY;
MUNICH REINSURANCE AMERICA,
INC.; NATIONAL FIRE & MARINE
INSURANCE COMPANY; NATIONAL
UNION FIRE INSURANCE COMPANY;
NORTH AMERICAN CAPACITY
INSURANCE COMPANY; SWISS RE
INTERNATIONAL SE; XL INSURANCE
AMERICA, INC.; AND DOES 1-50,

Defendants.

This action is about whether McKesson Corporation ("McKesson") has insurance coverage for opioid-related lawsuits under commercial umbrella liability policies issued by its insurance company, ACE Property and Casualty Insurance Company ("ACE"). ACE brought this lawsuit as a peremptory action seeking a declaration that it does not owe coverage obligations to McKesson. When the parties to this action are properly aligned in accord with the action's primary purpose, and the citizenship of fraudulently joined parties is disregarded, there is complete diversity between plaintiff(s) and defendant(s)—and the amount in controversy exceeds $75,000. Therefore, in accordance with 28 U.S.C. §§ 1332(d), 1441, 1446 and 1367, and with full reservation of its claims and defenses, McKesson gives notice of the removal of this action originally filed in the Superior Court of the State of California, County of Orange, to the United States District Court for the Central District of California. In support of this notice of removal, McKesson provides the required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure."):

## I.   NATURE OF REMOVED ACTION

1.   On November 2, 2020, ACE filed this action in the Superior Court of the State of California for the County of Orange–Central Justice Center, titled *ACE Property and Casualty Insurance Company v. McKesson Corporation, et al.* The court designated the case No. 30-2020-01168115-CU-IC-CXC.

2.   ACE filed its lawsuit in California state court ten days *after* another McKesson insurer, AIG, filed a similar lawsuit against McKesson in the United States District Court for the Northern District of California. *See AIU Insurance Company v. McKesson*

*Corporation f/k/a McKesson HBOC, Inc.*, No. 20-cv-07469 (N.D. Cal. Oct. 23, 2020), Dkt. No. 1.

3.      ACE's Complaint names two categories of defendants:  (1) McKesson, the insured; and (2) other insurance companies.

4.      The first category of named defendants consists of McKesson, ACE's insured. The Complaint asserts a claim against McKesson for declaratory relief finding that ACE has no obligations under insurance policies it issued to McKesson to defend or indemnify McKesson in connection with opioid-related lawsuits brought against McKesson.  Compl. ¶¶ 1, 47–52.

5.      The second category of named defendants, to which the Complaint refers collectively as "Insurer Defendants," Compl. ¶ 14, and which this pleading refers to as "Additional Insurers," consists of the following insurance companies and/or managing agents:  AIU Insurance Company; Arch Reinsurance Limited; Argo Re Limited; Aspen Insurance UK Limited; Canopius Underwriting Bermuda Limited; Endurance Specialty Insurance Limited; Golden State Insurance Co. Ltd; Great Lakes Insurance Company SE; Ironshore Specialty Insurance Company;  Lexington Insurance Company; Liberty Special Markets Agency; Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1500017; Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1600451; Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1700408; Certain Underwriters at Lloyd's London, Subscribing to Policy No. 509/DL554610; Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1600450; Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1700419; Markel American Insurance Company; Munich Reinsurance America, Inc.; National Fire & Marine Insurance Company; National Union Fire Insurance Company;   North American Capacity Insurance Company; Swiss Re International SE; and  XL Insurance America, Inc.  Compl. ¶¶ 14–15a–x.

6.      The Complaint alleges, on information and belief, that the Additional Insurers "issued insurance policies to McKesson covering the relevant period of the Opioid

Lawsuits."  Compl. ¶ 14.  The Complaint further alleges that "McKesson asserts that insurance coverage for the Opioid Lawsuits is available to them under these policies." Compl. ¶ 14.  The Complaint seeks declaratory relief laying out "the rights and obligations, if any, of the [Additional Insurers] with respect to coverage for any of the underlying Opioid Lawsuits under [the] terms, conditions, and exclusions" of insurance policies allegedly issued to McKesson.  Compl. ¶ 54.

7.     The thrust of the Complaint, and nearly all of the allegations, is that ACE seeks to avoid defending McKesson against opioid-related lawsuits and indemnifying McKesson for any settlements or judgments in those lawsuits.  *See* Compl. ¶¶ 47–52. Secondary to that, and only in the event that the Court finds that ACE must indemnify McKesson, ACE purports to seek a declaration of the rights and obligations of the Additional Insurers—presumably to determine the amount, if any, for which the Additional Insurers must pay ACE in contribution (although, tellingly, the prayer for relief does not seek any relief as to the Additional Insurers).  *Id.* ¶¶ 53–55.

8.     The Complaint incorrectly asserts that all of the Additional Insurers issued insurance policies to McKesson and that "McKesson asserts that insurance coverage for the Opioid Lawsuits is available to them under these policies."  Compl. ¶ 14.  In fact, a number of the Additional Insurers did not issue such insurance policies to McKesson and are improperly named by ACE as defendants, presumably in order to defeat diversity jurisdiction and manufacture the appearance of a "comprehensive" action.  Those insurers are:  Lexington Insurance Company ("Lexington"), Munich Reinsurance America, Inc. ("Munich Reinsurance America"), XL Insurance America, Inc. ("XL Insurance America"), Ironshore Specialty Insurance Company, Markel American Insurance Company, and Swiss Re International SE.

9.     There are only three insurance companies named in the Complaint with a principal place of business or place of incorporation that is the same as McKesson.  But each of those three defendants are among the Additional Insurers that ACE incorrectly

named as defendants:  Lexington, Munich Reinsurance America, and XL Insurance America.

10.    When the citizenship of the improperly named defendants is disregarded, there is complete diversity between the insured McKesson, on the one hand, and ACE and all of the other Additional Insurers, on the other hand.

11.    Although not necessary to determining this Court's jurisdiction, it bears noting that ACE's improper naming of the purportedly diversity-defeating insurer parties is not accidental.  While ACE alleges that it "does not have copies of those insurance policies" issued by the Additional Insurers to McKesson, Compl. ¶ 14, in fact ACE has had copies of the policies for the last two-and-a-half years and thus knows the identities of the insurance companies that issued policies to McKesson in the relevant periods.

12.    With respect to the three diversity-defeating Additional Insurers referenced in Paragraph 9 above, ACE chose *not* to name as defendants the foreign-based insurers that in fact issued polices to McKesson, and instead named the U.S. and Delaware-based affiliates of those foreign-based insurers, notwithstanding that ACE had information to the contrary.  ACE's deliberate substitution of incorrect parties for the known correct parties is an improper attempt to defeat federal court jurisdiction.

13.    Based on the copies of the policies in ACE's possession, ACE is also aware that nearly all of the Additional Insurers that in fact issued insurance policies to McKesson (and under which McKesson is seeking coverage for opioid-related losses) have arbitration clauses in their respective policies mandating that any disputes arising under the policies be determined through arbitration in London, UK.   Nevertheless, ACE named as defendants these Additional Insurers with arbitration clauses in their policies in a sham effort to create the appearance of a "comprehensive" action; in fact, ACE had no intention of pursuing these Additional Insurers in a court action.  Tellingly, ACE has not served any of the Additional Insurers whose policies contain arbitration clauses, nor did ACE name as a defendant its own Bermuda-based affiliate that issued insurance to McKesson in the relevant periods, but which policy contains an arbitration clause.

14.     Indeed, in a footnote to its Complaint, ACE implicitly acknowledged the meritless basis of joining the Additional Insurers by *inviting* those insurers to request voluntary dismissal from the action.  *See* Compl. ¶ 16 n.1.

15.     Within three weeks after initiating its lawsuit, ACE had already filed Requests for Dismissal of *13* of the Additional Insurers—*including* two of the three named Additional Insurers that are allegedly incorporated in Delaware.  *See* Ex. B, Part 3 at 9–60. Others of the few remaining Additional Insurer parties will likely also request dismissal from the lawsuit.

16.     A copy of the state court docket sheet is attached as **Exhibit A**.  In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on McKesson in the state court action are attached as **Exhibit B, Parts 1–3**.

## II.     TIMELINESS OF REMOVAL

17.     McKesson was served with the Complaint on November 2, 2020.

18.     In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service of plaintiff's original Complaint.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

## III.    PROPRIETY OF VENUE

19.     Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.  McKesson is filing this Notice of Removal in the United States District Court for the Central District of California, because the state court in which the action is pending, the Superior Court of the State of California, County of Orange, is within this federal judicial district.

## IV.    BASIS OF REMOVAL

20.     Removal is proper under 28 U.S.C. §§ 1332 & 1367 because there is complete diversity and the amount in controversy exceeds $75,000.

21.    When the parties are aligned in accord with their interest as insurers versus insured, there is complete diversity between (1) McKesson (the sole defendant) and (2) ACE and the properly joined Additional Insurers (plaintiffs). The non-diverse Additional Insurers are fraudulently joined, and therefore their citizenship does not defeat diversity. *See infra* Part IV.A.

22.    In the alternative, diversity of citizenship exists for a second independent reason:  The parties should be properly aligned so that McKesson is the sole plaintiff asserting claims against ACE for defense and indemnity coverage under McKesson's insurance policies issued by ACE.  ACE has effectively impleaded the Additional Insurers as third-party defendants.  ACE has no contract claim against any of the Additional Insurers—at most ACE is seeking contribution from those Additional Insurers in the event that ACE is found liable to McKesson in the primary action.  Because there is complete diversity between McKesson and ACE as the sole plaintiff and defendant, diversity jurisdiction is proper.  *See infra* Part IV.B.

23.    Moreover, two of the three purportedly diversity-defeating defendants are the subject of ACE's Requests for Dismissal, along with 11 other Additional Insurer defendants.  Others of the remaining Additional Insurer defendants are also likely to request dismissal.

**A.    There Is Complete Diversity When the Parties Are Properly Realigned as Insurers Versus Insured.**

24.    There is complete diversity of citizenship here because, when the parties are properly realigned so that all insurers, as plaintiffs, are opposite McKesson as the sole defendant, *see infra* Part IV.A.1, there is complete diversity as between plaintiffs and McKesson:  McKesson is a citizen of Delaware and Texas; ACE and all properly joined Additional Insurers are citizens of states or foreign states other than Delaware and Texas, *see infra* Part IV.A.2; and the citizenship of the other improperly named Additional Insurers is irrelevant for the purposes of diversity jurisdiction because they *did not issue*

any of the alleged insurance policies to McKesson and are fraudulently joined, *see infra* Part IV.A.3.

### 1.    Realignment is proper.

25.    It is well recognized in the Ninth Circuit that "[t]he issue of alignment for purposes of diversity jurisdiction requires a court to 'look beyond the pleadings' to the actual interests of the parties respecting the subject matter of the lawsuit." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 872 (9th Cir. 2000); *see also Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1157 (9th Cir. 2012).

26.    To determine whether realignment is proper, the Ninth Circuit asks "what constitutes the primary dispute to the primary purpose of this federal case." *Scotts Co. LLC*, 688 F.3d at 1158.  Then, "[i]f the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987); *see also Prudential Real Estate Affiliates*, 204 F.3d at 873 ("We must align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.'").

27.    Applying those principles, courts routinely realign parties in insurance coverage cases for jurisdictional purposes.  In particular, every Court of Appeals that has applied the Ninth Circuit's "primary purpose" test to insurance coverage cases has found that, for realignment purposes, *insurers and insureds belong on opposite sides of the action*—even where the insurer asserts claims for contribution against the other insurers. Those courts have reasoned that because the primary issue in such cases is whether the insurers must provide coverage to the insured, any "dispute among the insurers is secondary to whether the insurers are liable to [insured] and is hypothetical until the insurers' liability is determined." *U.S. Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 134 (4th Cir. 1995).  Therefore, "[t]he insurers share the primary goal of avoiding obligations to [insured], and the district court properly realign[s] them as plaintiffs opposite

the defendant [insured]." *Id.*; *see also Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 497 F. App'x 313, 316 (4th Cir. 2012); *First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, 384 F. App'x 64, 66 (3d Cir. 2010); *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088–89 (6th Cir. 1992).[1]

28.     That analysis applies with equal force here.  The primary matter in dispute is whether ACE, and the Additional Insurers, must defend and/or indemnify McKesson.  And although ACE ostensibly pleads claims against the Additional Insurers, the interests of the Additional Insurers "coincide with those of the plaintiff [ACE]" because *all of the insurers dispute their coverage obligations to McKesson.  Cont'l Airlines, Inc.*, 819 F.2d at 1523. In other words, "[t]he insurers share the primary goal of avoiding obligations to [McKesson]."  *U.S. Fid. & Guar. Co.*, 48 F.3d at 134.  Consequently, the court must "[re]align for jurisdictional purposes those parties."  *Prudential Real Estate Affiliates, Inc.*, 204 F.3d at 873.

29.     Indeed, the vast majority of the allegations in the Complaint focus on ACE's obligations to defend or indemnify McKesson under the insurance policies ACE issued to McKesson.  *See, e.g.*, Compl. ¶¶ 1–10 (introduction), 22–46 (factual allegations).  Any claims ACE may have against the Additional Insurers are secondary to and derivative of the main issue, which is whether ACE (and the other insurers) have obligations to defend

---

[1] Before the Ninth Circuit articulated the primary purpose test, the Ninth Circuit only once addressed the question of alignment for insurers versus insureds, in an unpublished decision from the 1980s.  *See Chicago Ins. Co. v. Kilbuck*, 857 F.2d 1477 (9th Cir. 1988). There, the Court stated in a single paragraph that the district court did not abuse its discretion in denying to realign the parties because "[t]he parties were properly aligned when the suit was first brought, as plaintiff Chicago Insurance Co. (Chicago) then had an active controversy with defendant Oscar Kilbuck over its liability for the accident, and with defendant Industrial over the extent of Chicago's liability as excess insurer."  *Id.* (internal citation omitted).  The Court did not ask what the "primary matter in dispute" was, nor did it evaluate whether the excess insurer liability claim flowed only from the primary issue of liability.  Subsequently, in *Prudential Real Estate Affiliates*, the Ninth Circuit definitively articulated the primary purpose test as the law of the Circuit.  204 F.3d at 873.

and/or indemnify McKesson in connection with the opioid-related lawsuits.  *See Prudential Real Estate Affiliates, Inc.*, 204 F.3d at 874 ("Where we have realigned parties according to their interests, those interests have involved substantial legal rights or detriments flowing from the resolution of the primary matter in dispute.").

30.    For example, ACE's Complaint requests only that, "*[t]o the extent* that the court determines that ACE has any obligation to provide defense and/or indemnity coverage [to McKesson] for any of the underlying Opioid Lawsuits that are the subject matter of this case, ACE seeks a declaration of the rights and obligations, *if any*, of the other insurers with respect to coverage [to McKesson] for any of the underlying Opioid Lawsuits under terms, conditions, and exclusions of their respective policies."  Compl. ¶ 54 (emphases added).   Thus, by the Complaint's own terms, the Court may reach the secondary question of what obligations, if any, the Additional Insurers may have to ACE *only if* the Court first finds that ACE must indemnify McKesson.

31.    In short, the "primary dispute" is whether ACE (and Additional Insurers) must provide McKesson coverage in connection with the opioid lawsuits.  As to that dispute, the Additional Insurers are aligned with ACE because *all* insurers have disputed their coverage obligations to McKesson in connection with the defense and/or indemnity of the opioid-related lawsuits.  And whatever claims ACE may have against the Additional Insurers are entirely derivative of the primary issue of ACE and the Additional Insurers' coverage obligations to McKesson.

32.    Consequently, the parties should be realigned for purposes of jurisdiction to place all insurers—ACE and Additional Insurers—as plaintiffs, opposite McKesson as the sole defendant.  *See Scotts Co. LLC*, 688 F.3d at 1158.

### 2.    There is complete diversity between McKesson and the properly joined parties.

33.    Once the parties are realigned such that all of the insurer parties (ACE and Additional Insurers) are plaintiffs opposite defendant McKesson, there is complete diversity between the properly joined parties.

34.     Although three of the named Additional Insurers—Lexington, Munich Reinsurance America, and XL Insurance America—are alleged to have Delaware citizenship, like McKesson, those three Additional Insurers *did not* issue insurance policies under which McKesson seeks coverage for the opioid-related actions and thus are improperly joined. *See infra* § IV.A.3.  Moreover, ACE has filed papers to voluntarily dismiss Munich Reinsurance America and XL Insurance America from this action. Voluntary dismissals have also been filed for 11 other Additional Insurers initially named in the Complaint.

35.     For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  The Ninth Circuit has not yet ruled on how to determine the citizenship of a Lloyd's of London Syndicate and circuits are split as to whether to treat Lloyd's Syndicates as unincorporated associations or non-legal entities subject to the "real parties to the controversy test." *See Certain Underwriters at Lloyd's of London Syndicates v. Travelers Indem. Co.*, No. C06-5238 RBL, 2006 WL 1896341, at *2 (W.D. Wash. July 7, 2006) (collecting cases).  This Court need not determine that issue because there is diversity of citizenship under both approaches to the citizenship of Lloyd's Syndicates.

36.     McKesson is a corporation organized under the laws of Delaware with its principal place of business in Texas.

37.     Neither ACE nor any of the properly joined Additional Insurers are citizens of Delaware or Texas.

38.     ACE is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.  It is not a citizen of Texas or Delaware.

39.     AIU Insurance Company is a corporation organized under the laws of New York with its principal place of business in New York.  It is not a citizen of Texas or Delaware.

40.     Arch Reinsurance Limited is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  It is not a citizen of Texas or Delaware.  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Arch Reinsurance Limited from the action.  *See* Ex. B, Part 3 at 9–12.

41.     Argo Re Limited is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  It is not a citizen of Texas or Delaware.  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Argo Re Limited from the action.  *See* Ex. B, Part 3 at 13–16.

42.     Aspen Insurance UK Limited is a corporation organized under the laws of the United Kingdom with its principal place of business in the United Kingdom.  It is not a citizen of Texas or Delaware.  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Aspen Insurance UK Limited from the action.  *See* Ex. B, Part 3 at 17–20.

43.     Canopius Underwriting Bermuda Limited is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  It is not a citizen of Texas or Delaware.[2]  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Canopius Underwriting Bermuda Limited from the action.  *See* Ex. B, Part 3 at 21–24.

44.     Endurance Specialty Insurance Limited is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  It is not a citizen of Texas or Delaware.  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Endurance Specialty Insurance Limited from the action.  *See* Ex. B, Part 3 at 25–28.

---

[2] McKesson notes that Canopius Underwriting Bermuda Limited is a managing general agent.  McKesson takes no position in this Notice of Removal as to whether the managing general agent is a proper party.

45.   Golden State Insurance Co. Ltd is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  It is not a citizen of Texas or Delaware.

46.   Great Lakes Insurance Company SE is a corporation organized under the laws of Germany with its principal place of business in Germany.  It is not a citizen of Texas or Delaware.  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Great Lakes Insurance Company SE from the action.  *See* Ex. B, Part 3 at 29–32.

47.   Liberty Special Markets Agency is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  It is not a citizen of Texas or Delaware.[3]  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Liberty Special Markets Agency from the action.  *See* Ex. B, Part 3 at 37–40.

48.   National Fire & Marine Insurance Company is a corporation organized under the laws of Nebraska with its principal place of business in Nebraska.  It is not a citizen of Texas or Delaware.

49.   National Union Fire Insurance Company is a corporation organized under the laws of Pennsylvania with its principal place of business in New York.  It is not a citizen of Texas or Delaware.

50.   North American Capacity Insurance Company is a corporation organized under the laws of New Hampshire with its principal place of business in Missouri.  It is not a citizen of Texas or Delaware.  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice North American Capacity Insurance Company from the action.  *See* Ex. B, Part 3 at 49–52.

51.   The Complaint names "Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1500017."  Compl. ¶ 15l.  The underwriters for that policy

---

[3] McKesson notes that Liberty Special Markets Agency Limited (f/k/a Iron-Starr Excess Agency Limited) is a managing general agent.  McKesson takes no position in this Notice of Removal as to whether the managing general agent is a proper party.

are Lloyd's of London Syndicate Nos. 9984 & 2007.  The Lloyd's of London Syndicates are London-based entities and, on information and belief, all of the underwriting members of Syndicate Nos. 9984 and 2007 are UK companies with principal places of business in the UK.  Syndicate Nos. 9984 and 2007 are not themselves, nor are their members, citizens of Texas or Delaware.

52.     The Complaint names "Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1600451."  Compl. ¶ 15m.  The underwriters for that policy are Lloyd's of London Syndicate Nos. 9984 & 2007.  The Lloyd's of London Syndicates are London-based entities and, on information and belief, all of the underwriting members of Syndicate Nos. 9984 and 2007 are UK companies with principal places of business in the UK.  Syndicate Nos. 9984 and 2007 are not themselves, nor are their members, citizens of Texas or Delaware.

53.     The Complaint names "Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1700408."  Compl. ¶ 15n.  The underwriters for that policy are Lloyd's of London Syndicate Nos. 9984 & 2007.  The Lloyd's of London Syndicates are London-based entities and, on information and belief, all of the underwriting members of Syndicate Nos. 9984 and 2007 are UK companies with principal places of business in the UK.  Syndicate Nos. 9984 and 2007 are not themselves, nor are their members, citizens of Texas or Delaware.

54.     The Complaint names "Certain Underwriters at Lloyd's London, Subscribing to Policy No. 509/DL554610."  Compl. ¶ 15o.  The underwriters for that policy are Lloyd's of London Syndicate Nos. 2003 & 2007.  The Lloyd's of London Syndicates are London-based entities and, on information and belief, all of the underwriting members of Syndicate Nos. 2003 and 2007 are UK companies with principal places of business in the UK. Syndicate Nos. 2003 and 2007 are not themselves, nor are their members, citizens of Texas or Delaware.

55.     The Complaint names "Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1600450."  Compl. ¶ 15p  The underwriters for that policy

are Lloyd's of London Syndicate Nos. 2003 & 2007.  The Lloyd's of London Syndicates are London-based entities and, on information and belief, all of the underwriting members of Syndicate Nos. 2003 and 2007 are UK companies with principal places of business in the UK.  Syndicate Nos. 2003 and 2007 are not themselves, nor are their members, citizens of Texas or Delaware.

56.     The Complaint names "Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1700419."  Compl. ¶ 15q.  The correct policy number is B0509BOWCN17000409 and the underwriters for that policy are Lloyd's of London Syndicate Nos. 2003 & 2007.  The Lloyd's of London Syndicates are London-based entities and, on information and belief, all of the underwriting members of Syndicate Nos. 2003 and 2007 are UK companies with principal places of business in the UK.  Syndicate Nos. 2003 and 2007 are not themselves, nor are their members, citizens of Texas or Delaware.

57.     Accordingly, all of the properly joined Additional Insurers are citizens of States or foreign states other than Delaware and Texas.

### 3.     The non-diverse Additional Insurers (among others) are fraudulently joined.

58.     In determining whether there is complete diversity for jurisdiction and removal, courts disregard the citizenship of non-diverse defendants who have been fraudulently joined.  *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).

59.     Under Ninth Circuit law, "[f]raudulent joinder is established . . . if a defendant shows that an 'individual[] joined in the action cannot be liable on any theory'"—in other words, if the plaintiff would be unable to "to establish a cause of action against the non-diverse party in state court."  *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)).  In particular, the Ninth Circuit has held that joinder is fraudulent where the defendant in question "is not a party to any relevant contract on which plaintiff could

predicate a claim against [the defendant]." *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002).

60.     That is exactly the case here.  Although the Complaint alleges that Lexington, Munich Reinsurance America, and XL Insurance America are incorporated in Delaware, and thus are not diverse, the citizenship of those parties, along with three others[4] (collectively, the "Non-Issuing Insurers"), must be disregarded, because none of them is "a party to any relevant contract" and could not be liable to ACE on "any theory."  *United Computer Sys.*, 298 F.3d at 761; *Grancare, LLC*, 889 F.3d at 548.  Those named parties are thus fraudulently joined.  *See infra* ¶¶ 62a–c.  Moreover, ACE has already filed Requests for Dismissal *of all but one* of the Non-Issuing Insurers.  The only remaining Non-Issuing Insurer is Lexington, which ACE incorrectly alleges is the successor in interest to policies issued to McKesson.

61.     ACE named the Non-Issuing Insurers as parties that, "on information and belief, issued insurance policies to McKesson covering the relevant period of the Opioid Lawsuits"—policies under which "McKesson asserts that insurance coverage for the Opioid Lawsuits is available."  Compl. ¶ 14.  ACE's sole claim against the Non-Issuing Insurers is for a "declaration of the rights and obligations, if any, of the[se] . . . insurers with respect to coverage for any of the underlying Opioid Lawsuits under terms, conditions, and exclusions of their respective policies."  *Id.* ¶ 54.  ACE's claims therefore turn on the allegation that the Non-Issuing Insurers issued insurance policies to McKesson under which McKesson is seeking coverage for the Opioid Lawsuits—which they did not.[5]

---

[4] The additional three Non-Issuing Insurers are Ironshore Specialty Insurance Company, Markel American Insurance Company, and Swiss Re International SE.  *See infra* ¶¶ 64a–c.

[5] Tellingly, the Non-Issuing Insurers that ACE named in its Complaint are US-based affiliates of the foreign-based insurers that *actually did* issue insurance policies to McKesson under which McKesson is seeking coverage for the opioid-related lawsuits.

62.  Specifically, as to the three Non-Issuing Insurers with alleged Delaware citizenship:

a.  The Complaint names "Lexington Insurance Company (formerly known as AIG Excess Liability Company Limited, formerly known as Starr Excess Liability Insurance Company)," Compl. ¶ 15j, a corporation allegedly organized under the laws of Delaware with its principal Place of Business in Massachusetts. *Id.*  Lexington, however, *did not* issue any relevant insurance policies to McKesson nor is it the successor in interest to an insurer that issued relevant insurance policies to McKesson. Rather, American International Reinsurance Ltd. (of which Lexington is a U.S. affiliate within the AIG group of companies) is the successor in interest to insurance policies issued by Starr Excess Liability and AIG Excess Liability and under which McKesson seeks coverage for opioid actions.  American International Reinsurance Ltd. is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  It is not a citizen of Texas or Delaware.

b.  The Complaint names "Munich Reinsurance America, Inc.," Compl. ¶ 15s, a corporation allegedly organized under the laws of Delaware with its principal Place of Business in New Jersey. *Id.*  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Munich Reinsurance America from the action. *See* Ex. B, Part 3 at 45–48.  Moreover, Munich Reinsurance America *did not* issue any relevant insurance policies to McKesson.  Rather, Great Lakes Reinsurance SE (of which Munich Reinsurance America is a U.S. affiliate) issued a policy to McKesson and under which McKesson seeks coverage for opioid actions.  Great Lakes Reinsurance SE is a corporation organized under the laws of Germany with its principal place of business in Germany.  It is not a citizen of Texas or Delaware.

c. The Complaint names "XL Insurance America, Inc.," Compl. ¶ 15x, a corporation allegedly organized under the laws of Delaware with its principal Place of Business in Connecticut. *Id.* On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice XL Insurance America from the action. *See* Ex. B, Part 3 at 57–60. Moreover, XL Insurance America *did not* issue any relevant insurance policies to McKesson. Rather, XL Bermuda Ltd. (of which XL Insurance America is a U.S. affiliate) issued a policy to McKesson under which McKesson seeks coverage for opioid actions. XL Bermuda Ltd. is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda. It is not a citizen of Texas or Delaware.

63.    ACE has no conceivable claim against Lexington, Munich Reinsurance America, or XL Insurance America—the only three purportedly non-diverse parties (two of which ACE has already voluntarily dismissed)—because they "[are] not a party to any relevant contract on which plaintiff [ACE] could predicate a claim against [them]." *United Computer Sys., Inc.*, 298 F.3d at 761. Those parties are thus fraudulently joined and their citizenship is therefore not considered for purposes of diversity jurisdiction and removal. *Grancare, LLC*, 889 F.3d at 548; *United Computer Sys., Inc.*, 298 F.3d at 761; *Hunter*, 582 F.3d at 1043.

64.    Three other Non-Issuing Insurers do not have alleged Delaware or Texas citizenship but are nonetheless fraudulently joined and as to each party ACE has filed a Request for Dismissal:

a. The Complaint names "Ironshore Specialty Insurance Company," Compl. ¶ 15i, a corporation allegedly organized under the laws of Arizona with its principal place of business in New York. *Id.* Ironshore Specialty Insurance Company *did not* issue any relevant insurance policies to McKesson. On November 20, 2020, ACE filed a Request for

Dismissal to dismiss without prejudice Ironshore Specialty Insurance Company from the action.  *See* Ex. B, Part 3 at 33–36.

b.  The Complaint names "Markel American Insurance Company," Compl. ¶ 15r, a corporation allegedly organized under the laws of Virginia with its principal place of business in Virginia.  *Id.*  Markel American Insurance Company *did not* issue any relevant insurance policies to McKesson.  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Markel American Insurance Company from the action.  *See* Ex. B, Part 3 at 41–44.

c.  The Complaint names "Swiss Re International SE," Compl. ¶ 15w, a corporation allegedly organized under the laws of Switzerland with its principal place of business in Switzerland.  *Id.*  Swiss Re International SE *did not* issue any relevant insurance policies to McKesson.  On November 20, 2020, ACE filed a Request for Dismissal to dismiss without prejudice Swiss Re International SE from the action.  *See* Ex. B, Part 3 at 53–56.

65.  Because there is complete diversity between the properly joined parties, removal of this action to federal court is proper.  *United Computer Sys., Inc.*, 298 F.3d at 763.

**B.  There Is Complete Diversity When the Parties Are Properly Realigned as McKesson versus ACE versus Third-Party Additional Insurer Defendants.**

66.  In the alternative, and as a separate and independent basis supporting jurisdiction, there is complete diversity of citizenship here if the Court realigns the parties such that McKesson is considered the sole plaintiff, ACE the sole defendant, and Additional Insurers third-party defendants to a cross-claim from ACE, *see infra* Part IV.B.1.  Realigned this way, there would be complete diversity between McKesson, the sole plaintiff, and ACE, the sole defendant, *see infra* Part IV.B.2.

### 1.   Realignment is proper.

67.   As explained in paragraphs 25–26, *supra*, this Court must "look beyond the pleadings" to determine "the actual interests of the parties respecting the subject matter of the lawsuit." *Prudential Real Estate Affiliates, Inc.*, 204 F.3d at 872.  Viewed under this standard, the primary dispute is whether ACE must defend or indemnify McKesson and, if so, whether ACE has an equitable claim against the Additional Insurers for contribution based on those insurers' contractual obligations to McKesson.  Aligned in accord with this understanding, McKesson would be considered the sole plaintiff, ACE the sole defendant, and Additional Insurers third-party defendants to ACE's cross-claim.

68.   The primary dispute at issue here, *Scotts Co. LLC*, 688 F.3d at 1158, is whether ACE (and any other Additional Insurer) is required to defend and indemnify McKesson under the insurance policies ACE issued to McKesson.  *See supra* ¶¶ 28–30; Compl. ¶¶ 48, 51.  These claims stem from the fact that "McKesson has asserted that it is entitled under the [ACE] Policies to the costs it has incurred and will continue to incur defending the Opioid Lawsuits," and "for its settlements of and potential liabilities from the Opioid Lawsuits." *Id*. ¶¶ 48, 51.  Thus, the basis of ACE's request for declaratory relief is *McKesson*'s claim *against ACE* for defense and indemnification under the policies.  Thus, properly viewed, this is a claim asserted by McKesson, as a plaintiff, against ACE, as defendant, to obtain McKesson's rights under the insurance policy.  *Cf. Cas. Indem. Exch. v. High Croft Enterprises, Inc.*, 714 F. Supp. 1190, 1193–94 (S.D. Fla. 1989) (holding that action brought by *insured* against insurer would be proper action compared to action brought by insurer against insured in separate forum).

69.   ACE's claims against the Additional Insurers are in effect supplemental or cross-claims against third-party defendants.  Federal Rule of Civil Procedure 14 allows a defendant, "as third-party plaintiff, [to] serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).  ACE's claims for contribution against the Additional Insurers are precisely that:  ACE pleads a claim against the Additional Insurers to determine their "rights and obligations"

to provide defense or indemnity coverage to McKesson *only* "[t]o the extent that the court determines that ACE has any obligation to provide defense and/or indemnity coverage" to McKesson.  Compl. ¶ 54.  Thus, ACE's Complaint effectively sets out a contribution claim against the Additional Insurers seeking to find them liable for any portion of the coverage for which ACE is found liable.  *See Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1293 (1998) ("In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others.  Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution.").  These types of claims are commonly brought by defendant insurers against third-party insurers in coverage actions.  *See, e.g.*, *Miller v. Sec. Life of Denver Ins. Co.*, No. C 11-1175 PJH, 2011 WL 7762985, at *1 (N.D. Cal. Dec. 14, 2011) (discussing third-party complaint for contribution brought by insurer defendant against third-party insurers defendants); *Bank of Am. v. Travelers Indem. Co.*, No. C07-0322RSL, 2009 WL 529227, at *1 (W.D. Wash. Mar. 2, 2009) (same).

70.   The "primary matter in dispute" is whether ACE must provide defense and indemnity coverage for McKesson under the policies it issued McKesson.  *Prudential Real Estate Affiliates*, 204 F.3d at 873.  ACE's claims against the Additional Insurers are properly viewed as third-party claims.  Properly aligned, McKesson is the sole plaintiff asserting claims against ACE for defense and indemnification under McKesson's insurance policies.  ACE has impleaded the Additional Insurers as third-party defendants, seeking claims for contribution to the extent that ACE is found liable to McKesson in the primary action.  *See, e.g.*, *Rainier Econ. Dev. Council v. United States Gypsum Co.*, No. 09-00479-HA, 2009 WL 10733447, at *1 (D. Or. July 6, 2009) (realigning case for jurisdictional purposes to consider the primary defendant as the plaintiff, the original plaintiff as the defendant, and the additional defendants as third-party defendants).

## 2.     There is complete diversity between McKesson and ACE.

71.     Once realigned as McKesson versus ACE versus third-party defendant Additional Insurers, there is complete diversity between McKesson and ACE.

72.     McKesson is a corporation organized under the laws of Delaware with its principal place of business in Texas.

73.     ACE is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.

74.     Under this realignment, the citizenship of the Additional Insurers is irrelevant to the diversity analysis because the Court has supplemental jurisdiction over any claim by a defendant against a non-diverse third-party defendant.  28 U.S.C. § 1367(b); *see also, e.g.*, *Boys v. Abbott Labs.*, 122 F.R.D. 583, 585 (W.D. Wash. 1988) ("[A] defendant's impleading of a non-diverse third-party defendant does not defeat diversity jurisdiction.").

75.     Because there is complete diversity between McKesson, the plaintiff, and ACE, the sole defendant, removal of this action to federal court is proper.  *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008).

## C.     The Amount in Controversy Exceeds $75,000.

76.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).  "[W]hen a defendant seeks federal court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553.

77.     Here, ACE seeks, *inter alia*, a declaratory judgment that it is not required to defend or indemnify McKesson under policies it issued McKesson for McKesson's "settlements of and potential liabilities from the Opioid Lawsuits."  Compl. ¶ 51.  ACE further alleges that the settlement for one of the lawsuits amounted to over $215 million, Compl. ¶ 46, and another was over $37 million, *id.* ¶ 39.  Moreover, each of the relevant

policies at issue has limits of liability of at least $5 million.  It is thus clear that the alleged amount in controversy exceeds $75,000, exclusive of interest and costs.

## V.   COMPLIANCE WITH PROCEDURAL REQUIREMENTS

78.   McKesson has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446 and this Court's Local Rules.

79.   In accordance with 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served in this action must join in or consent to this removal under 28 U.S.C. § 1332.

80.   Because McKesson is the sole defendant under McKesson's primary theory of realignment, *see supra* Part IV.A, and the sole Plaintiff under the alternative theory of realignment, *see supra* Part IV.B, McKesson has no proper co-defendants whose consent would be required for removal.  *See* 28 U.S.C. § 1446(b)(2) ("When a civil action is removed solely under section 1441(a), all *defendants* who have been properly joined and served must join in or consent to the removal of the action.") (emphasis added).

81.   After filing this Notice, in accordance with 28 U.S.C. § 1446(d), McKesson will serve a copy of this Notice upon ACE and will file a copy of the Notice with the Clerk of the Superior Court of the State of California, County of Orange.

82.   By filing this Notice of Removal, McKesson does not waive any defense that may be available to it, and expressly reserves all such defenses, including those related to personal jurisdiction and service of process.

83.   If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

84.   McKesson reserves the right to amend or further supplement this Notice.

## VI.   CONCLUSION

85.   WHEREFORE, McKesson removes this action to this Court for further proceedings according to law.

DATED:  December 2, 2020

By: */s/ Nathan E. Shafroth*

Nathan E. Shafroth (Bar No. 232505)
COVINGTON & BURLING LLP
Salesforce Tower, 415 Mission Street
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
nshafroth@cov.com

Anna Engh (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
aengh@cov.com

David Luttinger (*pro hac vice forthcoming*)
Cléa P.M. Liquard (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: + 1 (212) 841-1000
Facsimile: + 1 (212) 841-1010
dluttinger@cov.com; cliquard@cov.com

*Attorneys for Defendant Insured McKesson Corporation*