# EXHIBIT B
# PART 1

LONDON FISCHER LLP
Richard S. Endres, Esq. (SBN 144853)
Patrick G. Bollig, Esq. (SBN 248255)
2505 McCabe Way
Suite 100
Irvine, CA 92614
Telephone: (949) 252-1384
Facsimile: (949) 252-0553

Spiro K. Bantis, Esq. (SBN 2023307)*
59 Maiden Lane
New York, NY 10038
Telephone: (212) 331-9560
Facsimile: (212) 972-1030

HOLWELL SHUSTER & GOLDBERG LLP
Michael S. Shuster, Esq. (SBN 2122190)*
James M. McGuire, Esq. (SBN 1831932)*
Blair E. Kaminsky, Esq. (SBN 4747523)*
Daniel M. Sullivan, Esq. (SBN 4710323)*
Daniel M. Horowitz, Esq. (SBN 5322169)*
425 Lexington Avenue
New York, New York 10017
Telephone: (646) 837-5151
Facsimile: (646) 837-5150

*Attorneys for Plaintiff*
*ACE Property & Casualty Insurance Company*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

| | |
|---|---|
| ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v. | CASE NO.:<br>JUDGE: Assigned for All Purpose<br><br>DEPT: CX-102<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT; DEMAND FOR JURY TRIAL** |

1

{L0157060 1 }

COMPLAINT FOR DECLARATORY JUDGMENT

MCKESSON CORPORATION; AIU INSURANCE COMPANY; ARCH REINSURANCE LIMITED; ARGO RE LIMITED; ASPEN INSURANCE UK LIMITED; CANOPIUS UNDERWRITING BERMUDA LIMITED; ENDURANCE SPECIALTY INSURANCE LIMITED; GOLDEN STATE INSURANCE COMPANY LIMITED; GREAT LAKES INSURANCE COMPANY SE; IRONSHORE SPECIALTY INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LIBERTY SPECIAL MARKETS AGENCY; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509B0WCN1500017; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509BOWCN1600451; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509BOWCN1700408; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. 509/DL554610; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509BOWCN1600450; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509BOWCN1700419; MARKEL AMERICAN INSURANCE COMPANY; MUNICH REINSURANCE AMERICA, INC.; NATIONAL FIRE & MARINE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY; NORTH AMERICAN CAPACITY INSURANCE COMPANY; SWISS RE INTERNATIONAL SE; XL INSURANCE AMERICA, INC.; AND DOES 1-50,

Defendants.

## **NATURE OF ACTION**

1. McKesson is one of the largest wholesale pharmaceutical distributors in the world.  It reports having 80,000 employees and ranks eighth on the Fortune 500 list.  It is also the largest distributor of prescription opioids in the United States.  McKesson has been sued in thousands of lawsuits attempting to hold it responsible for contributing to, and profiting from, the epidemic of opioid addiction and abuse that has plagued the nation.  In this action, Plaintiff ACE Property & Casualty Insurance Company ("ACE") seeks a declaration that it has no obligation to

defend or indemnify Defendant McKesson Corporation ("McKesson") in connection with those actions.

2. McKesson was, until very recently, headquartered in California, and continues to have significant operations throughout the state of California, including Orange County.  Starting in 2009, ACE issued certain annual commercial umbrella liability insurance policies (collectively, the "Policies," attached as Exhibits A – I) to McKesson in California.

3. The Policies contain several prerequisites for coverage.  For example, the damages claimed must have been suffered "because of 'bodily injury'" and that bodily injury must have been caused by an "occurrence."  In addition, the Policies prevent recoveries for the insured when the insured had knowledge of bodily injury prior to the policy period.  And the Policies are each excess of primary policies, which must be exhausted before coverage under the Policies is implicated.

4. Since 2016, McKesson has been named in thousands of lawsuits for its alleged misconduct in distributing opioids (the "Opioid Lawsuits").  Many of these lawsuits have been consolidated in *In re National Prescription Opiate Litigation*, No. 1:17-md-2804, a multi-district litigation in the Northern District of Ohio (the "MDL").

5. These actions allege, among other things, that McKesson deliberately distributed opioids at a rate and in a manner that demonstrates McKesson knew they were not being used and consumed for legitimate medical purposes.  The actions allege that McKesson purposefully breached federal and state law and caused the diversion of millions of prescription opioids.  Even as the devastating impact of the opioid epidemic became apparent, McKesson is alleged to have distributed opioids in quantities that demonstrated to McKesson that diversion was certain to occur.  It is also alleged that McKesson knew any diversion prevention policies it developed or maintained were ineffective.

6. The Opioid Lawsuits also allege that McKesson was aware—before the effective date of the Policies—of the danger and harm caused by its over-distribution of highly addictive opioids.  Indeed, the year *before* McKesson's first ACE policy became effective, McKesson entered a settlement with the Drug Enforcement Agency ("DEA") and the Department of Justice

1  ("DOJ") in which McKesson paid a civil penalty for violating the Controlled Substances Act

2  ("CSA") by failing to comply with its obligations to report suspicious sales of opioids. After that

3  settlement, the Opioid Lawsuits allege that McKesson continued to flout its obligations, which

4  resulted in McKesson later paying the DOJ and DEA $150 million for its acknowledged failures to

5  comply with the CSA.

6         7. Other than the relatively few personal-injury suits, the Opioid Lawsuits have

7  been brought by State attorneys general, governmental entities, Indian tribes, hospitals, pension

8  funds, unions and other third-party payors that do not seek compensation for or on behalf of any

9  individuals that suffered bodily injury due to opioids.  Instead, these plaintiffs seek to recover the

10  economic costs of responding to the opioid crisis.  Accordingly, these suits do not seek damages

11  "because of 'bodily injury.'"  Nor do the Opioid Lawsuits seek damages resulting from an

12  "occurrence"—defined in the Policies to mean an "accident"—as required by the Policies.

13         8. McKesson has demanded that ACE (and its other insurers) pay its costs in

14  defending the Opioids Lawsuits.  It has also demanded that ACE indemnify McKesson for the

15  settlements to which it has already agreed and any related liabilities it may incur in the future.

16         9. ACE reserved its right to deny McKesson's claims for defense and/or indemnity

17  for several reasons, including, but not limited to: (1) the Opioid Lawsuits do not seek damages

18  because of bodily injury; (2) the Opioid Lawsuits do not arise from an "occurrence"; (3)

19  McKesson expected or intended the harms that resulted from its alleged misconduct; (4) other

20  exclusions under the Policies or applicable law would bar or limit coverage; (5) McKesson cannot

21  show that plaintiffs' damages in the Opioid Lawsuits were caused by bodily injuries during the

22  respective policy periods; (6) prior to the issuance of the Policies, McKesson knew of injuries

23  caused by, and losses to it from, the use of opioids it distributed and had knowledge of the

24  potential claims against it arising from the opioid crisis; (7) McKesson has not established that it

25  has satisfied any applicable retained limits or underlying limits; and (8) McKesson has not

26  satisfied all of the conditions to coverage nor has it complied with all of its duties and obligations

27  under the Policies.

28         10. ACE now seeks a declaration that it has no duty to defend or indemnify

McKesson in any of the Opioid Lawsuits.  There is an actual, ripe, and justiciable controversy regarding coverage under the Policies.  If a declaratory judgment is not granted, ACE may suffer real and immediate harm.

**PARTIES**

11. Plaintiff ACE is organized under the laws of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. ACE is an insurance company licensed by the State of California to sell insurance policies in California.  ACE issued insurance policies to McKesson in California that covered risks in California and elsewhere.

12. Defendant McKesson is a Delaware corporation and, until recently, had its corporate headquarters in San Francisco, California, where each of the ACE policies were issued. Its corporate headquarters are now in Irving, Texas.  However, McKesson continues to be registered to do business in California and has significant operations throughout the State of California, including in Orange County.  McKesson reports that its relocation to Texas will not be completed until 2021.

13. In the fiscal year ending March 31, 2020, McKesson recorded over $230 billion in revenue, more than $183 billion of which was generated by its U.S. Pharmaceutical and Specialty Solutions segment. This segment distributes branded and generic prescription pharmaceuticals, including certain opioid medications that are subjects of the Opioid Lawsuits. McKesson has been referred to as one of the "giants" of the opioid crisis.

14. The following defendants listed in paragraph 15 are insurance companies who, on information and belief, issued insurance policies to McKesson covering the relevant period of the Opioid Lawsuits (the "Insurer Defendants").  McKesson asserts that insurance coverage for the Opioid Lawsuits is available to them under these policies.  ACE does not have copies of those insurance policies; however, ACE is informed and believes that defendants do.  The Insurer Defendants are joined to ensure the interests they have or may have in the subject matter of this declaratory judgment action are not litigated and affected in their absence.

15. On information and belief, these Insurer Defendants have the following states or countries of organization and, for U.S. defendants, principal places of business:

COMPLAINT FOR DECLARATORY JUDGMENT

a.     AIU Insurance Company—New York with its principal place of business in New York;

b.     Arch Reinsurance Limited—Bermuda;

c.     Argo Re Limited—Bermuda;

d.     Aspen Insurance UK Limited—United Kingdom;

e.     Canopius Underwriting Bermuda Limited—Bermuda;

f.     Endurance Specialty Insurance Limited—Bermuda;

g.     Golden State Insurance Co. Ltd—Bermuda;

h.     Great Lakes Insurance Company SE (formerly known as Great Lakes Reinsurance plc)—Germany;

i.     Ironshore Specialty Insurance Company—Arizona with its principal place of business in New York;

j.     Lexington Insurance Company (formerly known as AIG Excess Liability Company Limited, formerly known as Starr Excess Liability Insurance Company)—Delaware with its principal place of business in Massachusetts;

k.     Liberty Special Markets Agency (formerly known as Iron-Starr Excess Agency Limited)—Bermuda;

l.     Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1500017—citizenship unknown at this time;

m.     Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1600451—citizenship unknown at this time;

n.     Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1700408—citizenship unknown at this time;

o.     Certain Underwriters at Lloyd's London, Subscribing to Policy No. 509/DL554610—citizenship unknown at this time;

p.     Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1600450—citizenship unknown at this time;

q.     Certain Underwriters at Lloyd's London, Subscribing to Policy No.

B0509BOWCN1700419—citizenship unknown at this time;

r.    Markel American Insurance Company—Virginia with its principal place of business in Virginia;

s.    Munich Reinsurance America, Inc.—Delaware with its principal place of business in New Jersey;

t.    National Fire & Marine Insurance Company—Nebraska with its principal place of business in Nebraska;

u.    National Union Fire Insurance Company—Pennsylvania with its principal place of business in New York;

v.    North American Capacity Insurance Company—New Hampshire with its principal place of business in Missouri;

w.    Swiss Re International SE—Switzerland;

x.    XL Insurance America, Inc.—Delaware with its principal place of business in Connecticut.

16. On information and belief, many of the Insurer Defendants are licensed to conduct business in California.[1]

17. On information and belief, each of the Doe Defendants 1–50 are other insurers who sold insurance policies to McKesson covering the relevant period of the Opioid Lawsuits. Doe Defendants 1–50 are sued under fictitious names because their true names are currently unknown to ACE.  When ACE learns their true names, ACE will seek leave to amend this complaint.  The Doe Defendants are joined to ensure the interests they have or may have in the subject matter of this declaratory judgment action are not litigated and affected in their absence.

## **JURISDICTION AND VENUE**

18. This Court has jurisdiction over this action under California Code of Civil

---

[1]    With respect to those Insurers organized and based in foreign countries, ACE has named them as defendants in the interests of completeness.  Should it become clear that the Court lacks personal jurisdiction over any of those Insurers or that the policies applicable to any of those Insurers contain arbitration clauses or other contractual provisions making suit in this Court improper, ACE would voluntarily dismiss from this action any such Insurer that so requests.

Procedure Section 1060, which provides a right of action in the Superior Court for a judicial declaration of rights and duties under a contract.

19. This Court has jurisdiction over McKesson because it maintains offices in California, is registered to and does conduct business in California, and has either committed acts or omissions in California, caused such acts or omissions to be committed in California, or has caused effects in California with respect to one or more causes of action arising from those acts, omissions, or effects.  In addition, the Policies were delivered to McKesson at its principal place of business in California.

20. The Court has jurisdiction over each of the Insurer Defendants because each was licensed to issue insurance policies in California and/or issued policies covering risks in California, and/or committed acts or omissions in California, and/or caused such acts or omissions to be committed in California, and/or has caused effects in California with respect to one or more causes of action arising from these acts, omissions, and/or effects.

21. Venue is proper in this Court because McKesson maintains operations in Orange County, the policies at issue cover risks in California or elsewhere, and McKesson's allegedly unlawful conduct for which it seeks insurance coverage allegedly occurred in Orange County, among other places.

**FACTUAL ALLEGATIONS**

**I.      The Policies**

22. McKesson is seeking coverage under the Policies (annual policies running from 2009 – 2018), which contain several requirements and conditions McKesson cannot satisfy.

23. First, coverage is triggered under the Policies only if the damages sought against the insured in the underlying action are "because of 'bodily injury.'"

24. Similarly, when the damages sought against the insured in the underlying action were not caused by an "accident"—and thus were not caused by an occurrence—coverage is not triggered under the Policies.

25. The Policies, moreover, extend coverage to damages because of bodily injuries only if those injuries occur during the policy period.  And the Policies do not cover damages

because of bodily injury known to have occurred by the insured prior to the policy period.

26. In the event of an occurrence, the Policies also require the insured to demonstrate that it has exhausted all the applicable limits of underlying insurance, and that it has satisfied the full amount of any retained limits, before ACE is obligated to provide coverage.

27. The Policies and/or applicable law also include exclusions that would completely bar or limit coverage.

28. The Policies further impose certain other duties on the insured as prerequisites for coverage.  The Policies require the insured to provide ACE with sufficient information to evaluate the insured's claim for coverage.

29. In addition to the provisions detailed above, coverage is unavailable because of or limited by additional provisions in the Policies, which ACE incorporates in their entirety.

## II.   Investigations by and Settlements with the DEA and DOJ

30. In 2006, as part of its "Distributor Initiative," DEA officials met with and warned McKesson about excessive sales of its products to pharmacies filling illegal online prescriptions.  In addition, in 2006 and 2007, as part of its efforts to combat this problem, the DEA sent multiple letters to remind McKesson of its obligations to ensure pharmacies and dispensers receiving McKesson's products were above board and to report and refrain from shipping suspicious orders.

31. In 2008, McKesson reached a settlement with the DEA and DOJ for McKesson's "violations of 21 U.S.C. § 842(a)(5)," including McKesson's claimed failure to report suspicious orders of opioids to the DEA.  McKesson agreed to "maintain a compliance program designed to detect and prevent diversion of controlled substances as required under the [Controlled Substances Act] and applicable DEA regulations" and to "pay civil penalties . . . in the amount of $13,250,000.00."

32. Not long after, the DEA and DOJ again began investigating McKesson for alleged failures to monitor, report, and/or refrain from shipping suspicious orders of opioids.  The investigation covered twelve McKesson distribution centers in eleven states, including California. The government's investigation developed evidence that even after designing a compliance

1   program after the 2008 settlement, McKesson did not fully implement or adhere to its own

2   program.

3      33. In 2017, McKesson reached another settlement with the DOJ and DEA.

4   McKesson admitted that, "at various times [from January 1, 2009 through January 17, 2017], it did

5   not identify or report to DEA certain orders placed by certain pharmacies which should have been

6   detected by McKesson as suspicious based on the guidance contained in the DEA letters about the

7   requirements set forth in [the CSA]."  McKesson agreed to pay a record $150 million civil

8   penalty, "suspend sales of controlled substances from distribution centers in Colorado, Ohio,

9   Michigan, and Florida for multiple years," and adhere to "new and enhanced compliance

10  obligations [imposed] on McKesson's distribution system."

11     **III.**  **The West Virginia Action**

12     34. On January 21, 2016, the State of West Virginia filed an amended complaint

13  against McKesson in Boone County, West Virginia.

14     35. West Virginia alleged, among other things, that McKesson's "intentional

15  distribution of excessive prescription pain killers" to sparsely populated counties throughout West

16  Virginia "showed a reckless disregard to the safety of [various West Virginia counties] and its

17  residents."  West Virginia's allegations included shocking data that laid bare McKesson's failure

18  to carry out its legal obligations to monitor and report suspicious orders of prescription opioids.

19  For example, over a five-year period, McKesson shipped over 5.6 million doses of hydrocodone

20  and oxycodone to West Virginia's Mingo County.  About 21,000 adults live in Mingo County.

21     36. The West Virginia action did not bring claims to compensate citizens harmed

22  by McKesson's opioid products.  Instead, the government of West Virginia sought relief for its

23  own economic losses:  It alleged, among other things, that McKesson's misconduct caused West

24  Virginia to "expend[] substantial amounts of money annually that it would not have otherwise

25  expended on numerous services . . . including, but not limited to: Increased law enforcement,

26  prosecutors and prosecutions, courts and court personnel, public defender services, corrections and

27  correctional facilities, probation and parole, public welfare and service agencies, healthcare and

28  medical services and drug abuse education."  West Virginia also alleged that "the public nuisance

created by [McKesson]" "endangers the public health and safety" of West Virginians through, among other things, "congest[ion]" of people around "Pill Mills," increased crime, "exhaust[ion]" of "law enforcement and prosecutorial resources," "congest[ion]" of "court dockets . . . by prescription drug-related cases as well as by crimes committed by addicts," and overcrowding of jails and prisons.

37. McKesson notified ACE of the West Virginia Action on March 30, 2017.  On May 22, 2017, ACE provided its coverage position in a letter to McKesson, reserving all rights under the policies.

38. On March 25, 2019, McKesson demanded that ACE consent to and fund a settlement of the West Virginia Action.  On April 12, 2019, ACE responded by requesting additional documents and information and reserving all rights under the terms of the Policies, at law and in equity.

39. On May 2, 2019, McKesson settled the West Virginia Action for $37 million.

40. On October 2, 2019, McKesson reiterated its request that ACE consent to and fund its settlement of the West Virginia Action.  On October 21, 2019, ACE responded by advising that McKesson had failed to identify any particular policy for which it sought defense and indemnity and had failed to demonstrate that any specific "retained limit" had been exhausted by McKesson's payment of defense costs.  In addition, ACE renewed its request for documents and information so that it could properly evaluate McKesson's request for indemnity and reserved all rights under the terms of the Policies, at law and in equity.

**IV.     The MDL**

41. Thousands of the Opioid Lawsuits have been consolidated for pre-trial proceedings in the MDL in the Northern District of Ohio.  These suits include actions brought by municipal, county, and state governments against manufacturers, distributors, and retailers of opioids.

42. Among those cases are two that the MDL District Judge has designated as "Track One" bellwether lawsuits:  *County of Summit, Ohio et al. v. Purdue Pharma et al.*, No. 18-op-45090 (N.D. Ohio 2018) and *County of Cuyahoga, Ohio et al. v. Purdue Pharma et al.*, No. 17-

op-45004 (N.D. Ohio 2017).  These lawsuits generally allege, among other things, that McKesson refused to identify, investigate, prevent, and report suspicious orders of opioids in a deliberate failure to abide by the Controlled Substances Act and other applicable laws, notwithstanding its agreement to do so with the DEA, failed to conduct due diligence of its customers, fraudulently increased quotas that governed the manufacture and distribution of opioids, and ignored clear evidence of diversion.

43. The Track One suits seek abatement, injunctive relief, equitable relief, restitution, damages for economic loss (including punitive damages) and attorney's fees.

44. Among the other cases consolidated in the MDL are numerous suits that were originally filed in California against McKesson.  These suits focus on McKesson's distribution of opioids and violations of law in California.  Similar to the Track One suits, these actions generally allege that McKesson "persisted in a pattern of distributing commonly abused and diverted opioids" in amounts that it knew were not being prescribed for legitimate medical purposes.  They further allege that McKesson's "intentional distribution of excessive amounts of prescription opioids showed an intentional or reckless disregard for" the safety of Californians.  Pursuant to the federal law governing multi-district litigation, if not settled, these suits will be remanded to federal district courts in California for trial.

45. On information and belief, McKesson provided ACE with notice of the Track One complaints and the many other Opioid Lawsuits under the Policies.

46. On October 21, 2019, at the start of the Track One trial, McKesson, along with two other distributors, settled those suits for a total of $215 Million.

**COUNT I:     DECLARATORY JUDGMENT – NO DUTY TO DEFEND MCKESSON FOR THE OPIOID LAWSUITS**

47. ACE reasserts and incorporates herein each allegation set forth in paragraphs 1-46 above.

48. McKesson has asserted that it is entitled under the Policies to the costs it has incurred and will continue to incur defending the Opioid Lawsuits.  ACE disputes that McKesson has any right under the Policies to its defense costs.

49. There exists an actual, ripe, and justiciable controversy between the parties concerning insurance coverage for the defense of the Opioid Lawsuits. ACE seeks, and is entitled to, a declaration that under the terms, conditions, and/or exclusions of the Policies, ACE has no duty to defend or to pay for McKesson's defense of the Opioid Lawsuits.

**COUNT II:   DECLARATORY JUDGMENT – NO DUTY TO INDEMNIFY MCKESSON FOR THE OPIOID LAWSUITS**

50. ACE reasserts and incorporates herein each allegation set forth in paragraphs 1-49 above.

51. McKesson has asserted that it is entitled under the Policies to indemnity for its settlements of and potential liabilities from the Opioid Lawsuits. ACE disputes that McKesson has any right under the Policies to indemnity.

52. There exists an actual, ripe, and justiciable controversy between the parties concerning insurance coverage for the Opioid Lawsuits. ACE seeks, and is entitled to, a declaration that under the terms, conditions, and/or exclusions of the Policies, ACE has no duty to indemnify McKesson for the Opioid Lawsuits.

**COUNT III:  DECLARATORY JUDGMENT – DECLARATION OF RIGHTS AND OBLIGATIONS, IF ANY, OF THE INSURERS TO DEFEND OR INDEMNIFY MCKESSON FOR THE OPIOID LAWSUITS**

53. ACE reasserts and incorporates herein each allegation set forth in paragraphs 1-52 above.

54. To the extent that the court determines that ACE has any obligation to provide defense and/or indemnity coverage for any of the underlying Opioid Lawsuits that are the subject matter of this case, ACE seeks a declaration of the rights and obligations, if any, of the other insurers with respect to coverage for any of the underlying Opioid Lawsuits under terms, conditions, and exclusions of their respective policies.

55. There exists an actual, ripe, and justiciable controversy between the parties concerning the rights and obligations, if any, of the insurers with regard to coverage for the underlying Opioid Lawsuits under the respective terms, conditions, and exclusions of their respective policies. ACE is entitled to a declaratory judgment regarding the insurers' respective

rights and obligations, if any, with regard to coverage for any of the underlying Opioid Lawsuits.

## **PRAYER FOR RELIEF**

WHEREFORE, ACE respectfully prays for:

(1)      A declaration that ACE has no duty to defend or pay the costs of defending McKesson in the Opioid Lawsuits,

(2)      A declaration that ACE has no duty to indemnify McKesson for the Opioid Lawsuits,

(3)      A declaration as to the scope and amount of coverage required to be provided by ACE under the respective terms, conditions, and exclusions of each of the policies, and,

(4)      Such other relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: October 30, 2020

LONDON FISCHER LLP

By:  _____
Richard S. Endres, Esq.
Patrick G. Bollig, Esq.
*Attorneys for Plaintiff*
*ACE Property & Casualty Insurance Company*

* *pro hac vice* application forthcoming

# EXHIBIT A



**ACE USA**

# Declarations
# ACE Umbrella Plus ℠
# Commercial Umbrella Liability Policy

| PRODUCER CODE<br>355110 | OFFICE<br>Chicago | | PREVIOUS POLICY NUMBER<br>NEW | |
|---|---|---|---|---|
| AUDIT FREQUENCY<br>None | PRODUCER<br>MARSH RISK & INSURANCE SERVICES | | | PAC<br>NTA |
| NAMED INSURED IS:<br>Company | BUSINESS OF INSURED<br>Drug proprietaries and sundrie | | | PIIC<br>5122 |

| Policy Number: XOO G24900228 |
|---|

| Policy Period: | From 07/01/2009 to 07/01/2010 |
|---|---|
| | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |

| NAMED INSURED AND ADDRESS | COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BELOW |
|---|---|
| McKesson Corporation<br>One Post St., 34th Floor<br>San Francisco, CA 94105 | ACE Property And Casualty Insurance Company |

### Limits of Insurance

$ 25,000,000 Each Occurrence          $ 25,000,000 General Aggregate

Self Insured Retention $ 25,000

### Premium

Basis of Premium: Flat

$ 650,000   Advance Premium,          $ 650,000 Annual Minimum Premium

$ 30,952  Terrorism Premium included in Advance Premium

### Schedule of Underlying Insurance
The Schedule is described on form no.XS-9U57a, which forms a part of this Policy's Declarations.

### Endorsements Attached to and forming a part of this Policy at inception:

See attached Schedule of Endorsements

| DATE OF ISSUE<br>July 8, 2009 | SIGNATURE OF AUTHORIZED AGENT |
|---|---|

XS-22695 (06/2008)                    Page 1 of 1

# SCHEDULE OF ENDORSEMENTS

| Named Insured | | | |
|---|---|---|---|
| **McKesson Corporation** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009  - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

| | |
|---|---|
| XS-20835 (08/06) | Commercial Umbrella Liability Policy |
| ILN1510807 | WI UIM  Disclosure Notice |
| EXFL64 (10/08) | Florida Uninsured Motorists' Coverage |
| ILU018(09/03) | West Virginia Excess Uninsured/Underinsured |
| CC-1K11e (02/06) | Signatures |
| CC-1E15 | Joint Venture |
| CC-1E15 | Manufacture Of Drug Exclusion |
| CC-1E15 | Specified Products Exclusion |
| CC-1E15 | Retained Limit Amendatory Endorsement |
| CC-1E15 | Personal Injury Definition Amended To Include Discrimination |
| CC-1E15 | Newly Acquired Entity Endorsement |
| XS-22552 (06/07) | Catastrophe Management Policyholder Notice |
| XS-1V12a (07/04) | California Changes-Cancellation, Nonrenewal And State Required Conditions |
| XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| XS-20753 (08/06) | Knowledge Of Occurrence |
| XS-20755 (08/06) | Non-Concurrency Endorsement(Recognizes Non-Concurrency) |
| XS-20756 (08/06) | Notice Of Occurrence |
| XS-20776 (08/06) | Clinical Trial Exclusion Endorsement |
| XS-20780 (03/08) | Pollution Exclusion - Combination ExceptionTime Element And Named Peril(with Insured's Retained Limit) |
| XS-20782 (08/06) | Cancellation Amendatory Endorsement |
| XS-21580 (01/07) | Professional Services Liability Exclusion - Exception For Resulting Bodily Injury And Property Damage |
| XS-21589 (01/07) | Foreign Liability Follow Form Endorsement |
| XS-23501 (04/08) | Unintentional Failure To Disclose |
| XS-23631 (01/08) | Employee Benefit Plan Follow Form Endorsement |
| XS-26429 (02/09) | Industrial Aircraft Aid Endorsement |
| XS-23634 (01/08) | Fellow Employee Exclusion Deleted |
| XS-24545 (03/08) | Named Insured Endorsement |
| XS-23669 (01/08) | Cap On Losses From Certified Acts Of Terrorism |
| XS-25254 (02/09) | War Exclusion |
| TRIA11b (01/08) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| ALL-20887 (10/06) | ACE Producer Compensation Practices & Policies |
| IL P 001 (01/04) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |



**ACE UMBRELLA PLUS**<sup>SM</sup>

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

**I.  INSURING AGREEMENT**

   A.  We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or personal and advertising injury" to which this insurance applies.

     1.  This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

       a.  The "bodily injury" or "property damage" is caused by an "occurrence";

       b.  The "bodily injury" or "property damage" occurs during the "policy period"; and

       c.  Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

     2.  This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

   B.  "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

   C.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

     1.  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

     2.  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

     3.  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II. WHO IS AN INSURED

A. The following are "insureds":

1. The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2. Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3. If you are designated in the Declarations as:

   a. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an "insured".  Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

   c. A limited liability company, you are an "insured".  Your members are also "insureds", but only with respect to the conduct of your business.  Your managers are "insureds", but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an "insured".  Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors.  Your stockholders are also "insureds", but only with respect to their liability as stockholders.

   e. A trust, you are an "insured".  Your trustees are also "insureds", but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are "insureds" for:

   a. "Bodily injury" or "personal and advertising injury":

      (1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (2) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker"  as a consequence of Paragraph a.(1) above;

      (3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

      (4) Arising out of his or her providing or failing to provide professional health care services.

   b. "Property damage" to property:

      (1) Owned, occupied or used by you,

      (2) Rented to, in the care, custody or control of, or over which physical control is being  exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this policy.

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization.  However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   b. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

   c. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

   d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6. Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## II  DEFENSE AND SUPPLEMENTARY PAYMENTS
I.

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

   1. When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

   2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

   3. When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B. We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C. We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D. If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

   1. All expenses we incur.

   2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy.  We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6. All costs taxed against the "insured" in the "suit".

7. Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8. Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E. Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV.   LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made or "suits" brought; or

3. Persons or organizations making claims or bringing "suits".

B. The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1. Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2. Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D. Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E. If the applicable limits of "underlying insurance" have been:

1. Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V. EXCLUSIONS

This insurance does not apply to:

### A. Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1. A watercraft while ashore on premises you own or rent; or

2. A watercraft you do not own that is:

   a. Less than 26 feet long; and

   b. Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B. Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C. Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1. That the "insured" would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

   a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E.  **Damage to Property**

"Property damage" to:

1.  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3.  Property loaned to you;

4.  Personal property in the care, custody or control of the "insured";

5.  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6.  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F.  **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G.  **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.  **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I.  **Employer's Liability**

"Bodily injury" to:

1.  An "employee" of the "insured" arising out of and in the course of:

    a.  Employment by the "insured"; or

    b.  Performing duties related to the conduct of the "insured's" business; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1.  Whether the "insured" may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1. To liability assumed by the "insured" under an "insured contract".

2. To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J. **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies,   acts or omissions; or

4. Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M. **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1. Advertising, broadcasting, publishing or telecasting;

2. Designing or determining content of web-sites for others; or

3. An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VI - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N. **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O. **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P. **Nuclear**

1. To any injury or damage:

   a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting form the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

   a. "Hazardous properties" include radioactive, toxic or explosive properties;

   b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e. "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f. "Nuclear facility" means:

(1)   Any "nuclear reactor";

(2)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

**Q. Other "Personal and Advertising Injury"**

1.   "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2.   "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3.   "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4.   Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5.   "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages:

a. That the "insured" would have in the absence of the contract or agreement; or

b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6.   "Personal and advertising injury" arising out of a breach of contract, except an implied contract use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

   b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (1) Any "insured"; or

      (2) Any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

   e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

   f. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

   g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

   However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

   1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

   2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury"or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6. Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a. The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b. The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7. Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a. The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S. **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment,removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T. **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U. **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V. **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication.   This exclusion also applies to communications which are made or allegedly made in violation of the:

    1.    Telephone Consumer Protection Act (TCPA) including any

            Amendment of or addition to such law; or

    2.    The CAN-SPAM Act of 2003, including any amendment of

            Or addition to such law; or

    3.    Any statute, ordinance or regulation, other than the TCPA

            Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

VI. **CONDITIONS**

A. **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for,in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and intereston that amount of any judgment that does not exceed the applicable Limits of Insurance shown in theDeclarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B. **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us.  If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy.  You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy.  If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force.  Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you.  Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy.  To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

4. No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

G. **Inspection and Audit**

1. We will be permitted, but not obligated to inspect the "insured's" property and operations.  Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

2. We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

H. **Legal Action Against Us**

1. No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

2. You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

I. **Maintenance of "Underlying Insurance"**

During the "policy period", you agree:

1. To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

2. That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

3. That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

4. That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

5. That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

J. **Other Insurance**

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance".  This provision will not apply if the "other insurance" is written to be excess of this policy.

K. **Premium**

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium.  It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

L. **Separation of "Insureds"**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2. Separately to each "insured" against whom claim is made or "suit" is brought.

M. **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N. **Transfer of Rights of Recovery Against Others to Us**

1. If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2. Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3. If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O. **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

**DEFINITIONS**

VII.

A. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B. "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D. "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E. "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or independent contractor.

F. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I. "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured

J. "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities

K. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M. "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

1.

Vehicles maintained for use solely on or next to premises you own or rent;

2.

Vehicles that travel on crawler treads;

3.

Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

4.

a.   Power cranes, shovels, loaders, diggers or drills; or

b.   Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b.   Cherry pickers and similar devices used to raise or lower workers;

6.  Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a.   Equipment designed primarily for:

i.   Snow removal;

ii.   Road maintenance, but not construction or resurfacing; or

iii.   Street cleaning;

b.   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O.  "Occurrence" means:

1.  With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2.  With respect to "personal and advertising injury", a covered offense.  All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P.  "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy.  "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q.  "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment;

2.  Malicious prosecution;

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    6. The use of another's advertising idea in your "advertisement"; or

    7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T. "Products-completed operations hazard":

    1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        a. Products that are still in your physical possession; or

        b. Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            i. When all of the work called for in your contract has been completed

            ii. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    2. Does not include "bodily injury" or "property damage" arising out of:

        a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

        b. The existence of tools, uninstalled equipment or abandoned or unused materials.

U. "Property damage" means:

    1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

    2. Loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V. "Retained limit" means either of the following:

    1. The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

    2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

    1. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

    2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which

the "insured" submits with our consent.

XS-20835 (08/06)                                                                    Page 18 of 19

X.     "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.     "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.     "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA.  "Your product":

   1.  Means:

         a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

               (1)  You;

               (2)  Others trading under your name; or

               (3)  A person or organization whose business or assets you have acquired; and

         b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   2.  Includes:

         a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

         b.  The providing of or failure to provide warnings or instructions.

   3.  Does not include vending machines or other property rented to or located for the use of others but not sold.

BB.  "Your work":

   1.  Means:

         a.  Work or operations performed by you or on your behalf; and

         b.  Materials, parts or equipment furnished in connection with such work or operations

   2.  Includes:

         a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

         b.  The providing of or failure to provide warnings or instructions.

XS-20835 (08/06)

IL N 151 08 07

# WISCONSIN UNDERINSURED VEHICLE COVERAGE POLICY DISCLOSURE STATEMENT

| Policy Number: G24900228 | Policy Effective Date: 07/01/2009 |
|---|---|
| Company: ACE Property And Casualty Insurance Company | Producer:  Marsh |
| Applicant/Named Insured: McKesson Corporation | |

[X] Underinsured motorist coverage may not be purchased under this policy.

[ ] Underinsured motorist coverage may be purchased under this policy. You should contact us or your agent
if you have any questions regarding underinsured motorist coverage and your options with respect to this coverage.

**FLORIDA UNINSURED MOTORISTS' COVERAGE**

ace group

Dear Policyholder:

Under Florida law, *we* must provide Uninsured Motorists' Coverage (including Underinsured Motorists' Coverage) at a limit equal to the Bodily Injury Liability limit of *your* policy, unless *you* select one of the available options.

Uninsured Motorists' Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of *bodily injury* or death resulting therefrom.  Such benefits may include payments for certain *medical expenses*, lost wages, and pain and suffering, subject to limitations and conditions contained in the policy. For the purpose of this coverage, and uninsured motor vehicle may include a motor vehicle as to which the *bodily injury* limits are less than *your* damages.

*Your* Uninsured Motorists' Coverage limit options are as follows:

1.   *You* can completely reject Uninsured Motorists' Coverage.

2.   *You* can choose Uninsured Motorists' Coverage at limits that are lower than *your* Bodily Injury Liability limits (but not lower than $10,000/20,000 split limits or $30,000 single limits).

3.   Or, if *you* wish, *you* can choose Uninsured Motorists' Coverage at limits equal to *your* Bodily Injury Liability limits.

In addition, *you* also have the option of purchasing non-stacked Uninsured Motorists' Coverage.  An explanation of this type of coverage is given in the selection form attached.

If *you* wish to choose any of these options, please complete the selection form and send it to *your* agent or broker.

Excess FL Supplement 64 (10/08)

# West Virginia Excess Uninsured/Underinsured
# Important Notice

**RETURN ATTACHED FORMS WITHIN THIRTY (30) DAYS**

**TO: PROPOSED POLICYHOLDER (APPLICANT)**

**IF YOU DO NOT RETURN THESE FORMS TO YOUR INSURER WITHIN THIRTY (30) DAYS YOU WILL BE PRESUMED TO HAVE REJECTED UNINSURED AND UNDERINSURED MOTOR VEHICLE COVERAGES.**

**OR**

**PRESENT POLICYHOLDER**

**IF YOU DO NOT RETURN THESE FORMS TO YOUR INSURER WITHIN THIRTY (30) DAYS YOUR COVERAGE WILL STAY THE SAME AS IT IS NOW. THIS IS AN OPPORTUNITY TO CHANGE THE COVERAGE YOU PRESENTLY HAVE.**

**A.  UNinsured Motor Vehicle Coverage**

**The State of West Virginia requires** that you purchase **UNinsured** motor vehicle coverage with limits not less of $20,000 per person, $40,000 per accident for uninsured bodily injury losses, and $10,000 for uninsured property losses under your basic automobile coverage. In your case, you have already done so, and you have opted to purchase excess or umbrella type coverage which is also written to cover automobile liability. Therefore, the law also requires that you be given the opportunity to purchase uninsured motor vehicle coverage in an amount not less than the liability limit or limits selected on the excess or umbrella policy as well.

**UNinsured Motor Vehicle Coverage** may protect you and passengers in your car if you are injured in an accident that was caused by a driver who was at-fault, or an unidentified driver who was at-fault but who does not have insurance to pay for your damages.

**B.  UNDERinsured Motor Vehicle Coverage**

The State of West Virginia **does not require** you to purchase any **UNDERinsured** motor vehicle coverage under your basic automobile policy. However, the law does state that you must be given the opportunity to purchase this coverage in an amount not less than your liability coverage. In your case, you have opted to purchase excess or umbrella coverage which is also written to cover automobile liability. Therefore, the law also requires that you be given the opportunity to purchase underinsured motor vehicle coverage in an amount not less than the liability limit or limits selected on the excess or umbrella policy as well.

**UNDERinsured** motor vehicle coverage may protect you and passengers in your car if you are involved in an accident which was caused by a driver who was at-fault but the at-fault driver's insurance policy is not sufficient to pay for your damages. In some cases the at-fault driver will not have enough liability coverage to pay for all the damages you have suffered. In order for you to protect yourself and others in your car, **UNDERinsured** motor vehicle coverage is available to you. This type of coverage may pay for the remainder of your damages up to your policy limits.

**C.  Example:**

You have purchased **UNDERinsured** motor vehicle coverage under your auto policy with limits of $100,000 per person with a maximum of $300,000 for any accident. You have also purchased underinsured motor vehicle coverage under your umbrella in the amount of $1,000,000. You are in an accident where the other driver is at fault. The at-fault driver's liability policy limits are $20,000 per person. You suffered damages of $300,000. You receive $20,000 from the at-fault driver's insurance. Since you still have outstanding losses of $280,000, you can receive $100,000 from your **UNDERinsured** motor vehicle coverage under your auto policy and $180,000 from your underinsured motor vehicle coverage under your umbrella.

If you do not have **UNDERinsured motor vehicle coverage,** you may have found yourself in a situation where you did not have enough coverage to meet all of the losses you sustained in the accident.

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 1 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**BANKERS STANDARD FIRE AND MARINE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**BANKERS STANDARD INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE INDEMNITY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE AMERICAN INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**PACIFIC EMPLOYERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

**WESTCHESTER FIRE INSURANCE COMPANY**
1325 Avenue of the Americas, 19th Floor, New York, NY 10019

GEORGE D. MULLIGAN, Secretary

DENNIS A. CROSBY, JR., President

_____
Authorized Agent

# JOINT VENTURE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 2 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that in the event of any "occurrence" caused by or arising out of any Joint Venture, Co-Venture, Joint Lease, Joint Operating Agreement Partnership or Limited Liability Company (hereinafter Joint Venture] in which the "insured" has an interest, the Limits of Insurance under "our" policy shall be limited to the total liability coverage afforded the "insured" by this policy.

It is futher agreed tha the Limits of Insurance of the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture and "our" liability shall be excess of the sum of

1.  The limits of underlying "retained limits" and
2.  The limits of any "other insurance".

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

CC1E15

# MANUFACTURE OF DRUG EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 3 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section V. EXCLUSIONS is amended to include the following additional exclusion.

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling of drugs.

_____

Authorized Agent

CC1E15

# SPECIFIED PRODUCTS EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 4 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section V. EXCLUSIONS is amended to include the following additional exclusion.

This insurance does not apply to any liability arising out of any drugs manufactured by Orchid Pharmaceutical Ltd., Nicholas Piramal India Ltd., Actavis (India), Alembic (India), or Aurobindo (India).

_____
Authorized Agent

CC1E15

# RETAINED LIMIT AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 5 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1.  The preamble in the policy is deleted and replaced with the following:

    Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

    Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

    Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

    We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2.  Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

    A.    We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

          1.  When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or

          2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

3.  Paragraph E of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

    E.    If the applicable "retained limits" listed on the schedule of retained limits have been:

          1. Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

          2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy, or

3. Defense and supplemental payments are included with the "retained Limit" and within the limits of this policy.  If Defense and/or Supplemental payments expenses are not included within the limit of insurance of any "underlying insurance" then such expense payment we make shall not reduce the limit of insurance of this policy.

4.   Exclusions A., I and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.); Employer's Liability (Exclusion I.): or Liquor Liability (Exclusion N.).

5.   Conditions A., C, and I. and Paragraph 3 only of Condition N. of **Section VI. CONDITIONS**,. are deleted and replaced with the following:

A.   **Appeals**
In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal. If we elect to appeal, we will be
liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

C.   **Bankruptcy**
Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits."

I.   **Maintenance of "Underlying Insurance"** is deleted.

N.   **Transfer of Rights of Recovery Against Others to Us**.

3. If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6.   Definitions P., and V of **Section VII. DEFINITIONS** are deleted and replaced with the following:

P.   "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

V.   "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below:

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit | |
|---|---|---|
| General Liability | $5,000,000<br>$7,500,000 | Each Occurrence<br>General Aggregate |
| Products Liability | $5,000,000 | Occurrence |
| Auto Liability | $5,000,000 | Occurrence |
| Employers Liability | $5,000,000<br>$5,000,000<br>$5,000,000 | Bodily Injury by Accident, Each Occurrence<br>Bodily Injury by Disease, Each Policy<br>Bodliy Injury by Disease, Each Employee |

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

CC1E15

# PERSONAL INJURY DEFINITION AMENDED TO INCLUDE DISCRIMINATION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 6 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section VII, DEFINITIONS, Part R. "Personal and advertising injury" is deleted and replaced with the following:

R.   "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5. Oral or written publication, in any manner, of material that violates a person's right of privacy;
6. Dicrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only is such discrimination or humiliation is:
   a. Not intentionally committed by the "insured,"
   b. Not committed by, at the direction of, or with the knowledge of you and/or any of your executive officers or directors,
   c. Not directly or indirectly related to the employment of the person or persons by you, and
   d. Not in violation of any provision(s) of the Americans with Disabilities Act (including but not limited to any amendments or revisions thereto and any rules or regulation promulgated thereunder) or any similar common or statutory law,
7. The sue of another's advertising idea in your "advertisement," or
8. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

CC1E15

# NEWLY ACQUIRED ENTITY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 7 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION II, WHO IS AN INSURED**, Section B.5. is deleted and replaced with the following:

5.  Any organization(s) you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured; subject to the following:

   a.  at the time of acquisition, inception of control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $500,000,000 and (b) the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of control or formation, with no additional premium charge, provided that you notify us within 90 days of such acquisition, inception of control or formation.

   b.  If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do exceed $500,000,000 or (b)  the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 90th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier.

   c.  For any organization covered by paragraph b. above, coverage will expire on the 90th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier, unless, within the 90 day period, you request us to include such organization as a Named Insured, and we agree to do so.

   d.  We may, at our option, make an additional premium charge for any organization that you acquire, take control of or form during the "policy period," when that organization is not automatically covered in 5 .a. above.

   e.  Coverage does not apply to any liability arising out of an "occurrence" or offense committed before you acquire, take control of or form any organization covered by this endorsement; and

   f.  Coverage does not apply if the organization you acquire, take control of, is not covered by the "underlying insurance."

Notwithstanding anything to the contrary contained above, coverage does not apply to any liability arising out of the conduct of any current, past, or newly acquired or formed partnership or joint venture that is not stated in the Declarations of this policy as a Named Insured.

All other terms and conditions of the policy remain unchanged.

_____

Authorized Agent

**COMMERCIAL UMBRELLA LIABILITY**
**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A**
**CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully. When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.

- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

  # 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.

- Please be prepared to provide the following information:
  - Caller's name, title and contact telephone number
  - Name of Insured
  - Policy Number
  - A description of the incident
  - Any witnesses
  - Property, Product or Vehicle Information
  - Incident Location
  - Contact Person
  - Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty insurance Company or one of its insurance company affiliates.*

XS-22552   (06/2007)

# CALIFORNIA CHANGES - CANCELLATION, NONRENEWAL AND STATE REQUIRED CONDITIONS

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 8 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**EXCESS LIABILITY POLICY**
**EXCESS LIABILITY CATASTROPHE POLICY**

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

      **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

      **(b)** Continuation of the policy coverage would:

         **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

         **(ii)** Threaten our solvency.

    **(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

    **(8)** A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

    **(9)** Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

   **(10)** A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

  **b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

    **(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following is added and supersedes any provisions to the contrary:

  **NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

_____

Authorized Agent

# CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 9 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

> $250,000 Annual Limit

Catastrophe Management Coverage

A. Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

B. A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

C. There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

D. Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

E. Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

F. For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage".  "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling;  travel expenses; temporary living expenses or other necessary response costs and approved by us,  incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured".  A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## KNOWLEDGE OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 10 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 to 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a risk manager or senior corporate counsel of yours shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# NON-CONCURRENCY ENDORSEMENT
## (Recognizes Non-Concurrency)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 11 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 to 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Whereas, the policy (ies) listed in the schedule of "underlying insurance" are non-concurrent with the "policy period" hereunder;

In the event of reduction or exhaustion of the aggregate limit(s) of the policy (ies) by reason of "occurrences" prior to the inception of this policy, it is agreed that such insurance as is afforded by this policy shall:

    (1)   in the event of reduction apply in excess of the reduced underlying limit; or

    (2)   in the event of exhaustion continue in force as "underlying insurance".

Anything in this endorsement to the contrary notwithstanding this policy applies only to "occurrences" happening during the "policy period".

"Policy period" means the period stated in the Declarations of this policy.

All other terms and conditions remain unchanged.

_____

Authorized Agent

# NOTICE OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 12 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 to 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

## CLINICAL TRIAL EXCLUSION ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | 13 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 to 07/01/2010** | **07/01/2009** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial".

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

## POLLUTION EXCLUSION - COMBINATION EXCEPTION
## TIME ELEMENT AND NAMED PERIL
## (With Insured's Retained Limit)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **14** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009  - 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., EXCLUSIONS, is deleted and replaced by the following:

This insurance does not apply:

1.  To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2.  To any "loss", cost or expense arising out of any:

    a.  directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b.  claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1.  is both unexpected and unintended from the standpoint of the "insured";

2.  commenced abruptly and instantaneously and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3.  is caused:

a. solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, sprinkler leakage, or collision or upset of a motor vehicle or an aircraft or arises out of "your product" included in the "products-completed operations hazard"; or

b. by any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) is at or from any

a. premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

b. premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

and

(2) is known by any "insured" within 20 days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

(3) is reported to us within 80 days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding the foregoing, we shall have no duty to defend any "suit", claim or proceeding arising out of or in any way related to pollution.

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. "loss" of, damage to or "loss" of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not. Waste means any substance that:

a. is left over, or no longer in use, or discarded;

b. to be reclaimed or recycled, or reconditioned; or

c. has been removed, treated, stored or disposed of as part of any environmental remediation effort.

Explosion does not include:

1. shock waves caused by aircraft, generally known as "sonic booms";

2. electric arcing;

3. rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown;

4. water hammer;

5. rupture, bursting, breaking apart, collapse of pipes, tanks, vessels or containment areas;

6. operation of a pressure release device.

It is further agreed that solely as respects any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" or any other "underlying insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein, the Insured's Retained Limit in the Limits of Insurance section of the Declarations is amended to $5,000,000.

It is further agreed that with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution, Section III, DEFENSE AND SUPPLEMENTAL PAYMENTS, Provisions A. and C. are hereby deleted and replaced by the following:

> We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, "suit" brought or proceeding instituted against the "insured". We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, "suits" or proceedings relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

## CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 15 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 to 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL UMBRELLA LIABILITY POLICY

Parts 1., 2., 5 and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1.  This policy may be  cancelled by you by  mailing to us  written notice stating  when such  cancellation shall be effective.

2.  This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than 120 days thereafter, 10 days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective.  The mailing of notice shall be sufficient proof      of notice.  The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".  Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5.  If you cancel, earned premiums shall be computed in accordance with the applicable short rate table or procedure. If we cancel, earned premium shall be computed pro-rata.

6.  Premium adjustment may be made at the time cancellation becomes effective. our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

All other terms and conditions of the policy remain unchanged.

Authorized Agent

## PROFESSIONAL SERVICES LIABILITY EXCLUSION - EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | 16 | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement | |
| **XOO** | **G24900228** | **07/01/2009 to 07/01/2010** | **07/01/2009** | |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property And Casualty Insurance Company** | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of the policy remain unchanged.

_____

Authorized Agent

XS-21580 (01/07)

# FOREIGN LIABILITY FOLLOW FORM ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | 17 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 to 07/01/2010** | **07/01/2009** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

Definition D. (Coverage Territory) is amended to exclude anywhere except the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the "scheduled underlying insurance:"

1) This exclusion and amendment of the Coverage Territory shall not apply; and

2) Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance," subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance."

Notwithstanding 1 and 2 above, this insurance does not apply to "loss," injury, damage claim or "suit," arising directly or indirectly as a result of or in connection with terrorism that occurs in the following countries:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Bahrain, Bosnia & Herzegovina, Burundi, Cambodia, Central African Republic, Colombia, Cote d'Ivoire, Cuba, Democratic Republic of Congo, Egypt, Ethiopia, Federal Republic of Yugoslavia, Georgia, Guinea-Bissau, Haiti, India, Indonesia, Iran, Iraq, Jordan, Kosovo, Kuwait, Kyrgyz Republic, Lebanon, Liberia, Libya, Macedonia, Nigeria, North Korea, Northern Ireland, Oman, Pakistan, Peru, Philippines, Qatar, Rwanda, Saudi Arabia, Serbia, Sierra Leone, Somalia, Sri Lanka, Sudan, Syria, Tajikistan, Turkey, Uganda, United Arab Emirates, Uzbekistan, Venezuela, West Bank and Gaza, Yemen, Zaire, Zimbabwe.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-21589 (01/07)

# UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **18** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 – 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

## EMPLOYEE BENEFIT PLAN FOLLOW FORM ENDORSEMENT
### [Claims Made]

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **19** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 – 07/01/2010** | **07/01/2009** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

1. Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown therein, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "administration"  of any "employee benefit program(s)".

2. "Administration" includes but is not limited to performing any of the following functions for an "employee benefit program":

    a. Counseling "employees" on your "employee benefit programs";

    b. Interpreting your "employee benefit programs";

    c. Handling records for your "employee benefit programs";

    d. Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

    e. Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs";

    f. Collection of contributions and application of contributions as provided in your "employee benefit programs";

    g. Preparation of reports required by government agencies, or "employee" communication     materials concerning your "employee benefit programs"; or

    h. Processing of claims for your "employee benefit programs".

3. "Employee benefit program(s)" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4. The coverage provided by this endorsement applies on the basis of claims first made against you during the period of this policy, and shall apply to those claims provided:

    a. The date such claim is first made against you is during our "policy period", or within 180 days of the termination of our policy period, and

    b. The injury, "loss", or damage occurs prior to the termination of this policy.

5. **SECTION VI. CONDITIONS F.** of this policy is amended to add paragraph 5. as follows:

    5. Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

_____
Authorized Agent

# INDUSTRIAL AID AIRCRAFT ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**20** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24900228** | Policy Period<br>**07/01/2009 – 07/01/2010** | Effective Date of Endorsement<br>**07/01/2009** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.  LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$500,000,000. Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned by or rented or loaned to any "insured".  Use includes operation and "loading and unloading").

II. For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any 'suit' against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III. For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV. Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance".

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses".

V.  For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

    A.    Aircraft

        This insurance does not apply to 'bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustments to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

        This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI.  For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1.      attorney's fees and all other investigation, loss adjustment and litigation expenses;
2.      premiums on bonds to release attachments;
3.      premiums on appeal bonds required by law to appeal any claim or "suit";
4.      costs taxed against the "insured" in any claim or "suit";
5.      pre-judgment interest awarded against the "insured"; and
6.      interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used solely for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## FELLOW EMPLOYEE EXCLUSION DELETED

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**21** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24900228** | Policy Period<br>**07/01/2009 – 07/01/2010** | Effective Date of Endorsement<br>**07/01/2009** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# NAMED INSURED ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**22** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24900228** | Policy Period<br>**07/01/2009 – 07/01/2010** | Effective Date of Endorsement<br>**07/01/2009** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### EXCESS LIABILITY CATASTROPHE POLICY
### EXCESS LIABILITY POLICY

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

| | |
|---|---|
| McKesson Corporation | California Golden State Finance Company |
| Medical & Vaccine Products, Inc. | Golden State Insurance Company Limited |
| McKesson New Zealand Limited | Access Health UK Ltd. |
| McKesson Health Solutions Texas Inc. | McKesson International S.a.r.l. |
| McKesson International Finance S.a.r.l. | McKesson International Capital S.a.r.l. |
| McKesson International Holdings S.a.r.l. | McKesson International Holdings II S.a.r.l. |
| McKesson Funding Company of Canada | McKesson International Holdings III S.a.r.l. |
| McKesson Canada Corporation | 3071406 Nova Scotia Company |
| McKesson Canada Support Services Corporation | McKesson International Holdings V S.a.r.l. |
| McKesson Automation Canada Corporation | McKesson International Holdings VI S.a.r.l. |
| Zee Medical Canada Corporation | McKesson Information Solutions Finance S.a.r.l. |
| McKesson Information Solutions Capital S.a.r.l. | McKesson Information Solutions Holdings S.a.r.l. |
| McKesson Ireland Limited | McKesson Information Solutions Netherlands B.V. |
| McKesson Nederland B.V. | McKesson Information Solutions Swedan AB |
| McKesson Israel Ltd. | Medcon UK Limited |
| McKesson Information Solutions UK Limited | McKesson Information Solutions Holdings II S.a.r.l. |
| McKesson Information Solutions Holdings III S.a.r.l. | McKesson Health Solutions Canada Company |
| McKesson Information Solutions Holdings IV S.a.r.l. | McKesson Information Solutions Canada Company |
| McKesson Information Solutions Holdings V S.a.r.l. | McKesson Information Solutions Holdings France S.a.r.l. |
| McKesson Information Solutions Holdings France SAS | McKesson Health Solutions Puerto Rico Inc. |
| McKesson International Holdings IV S.a.r.l. | McKesson International Netherlands B.V. |

| | |
|---|---|
| McKesson International Netherlands II B.V. | Nadro S.A. de C.V. |
| Nadro Services, S. de R.L. de C.N. | McKesson International Holdings VII S.a.r.l. |
| McKesson Specialty Prescription Services Corporation | McKesson Specialty Prescription Services (B.C.) Corporation |
| McKesson Medical-Surgical Minnesota Supply Inc. | Northstar Healthcare Holdings Limited |
| McKesson (Shanghai) Trading Co., Ltd. | Northstar Healthcare Limited |
| Northstar Rx LLC | Per-Se Technologies Canada, Inc. |
| Per-Se Technologies (UK) Limited | |

_____
Authorized Agent

XS-24545 (03/08)

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **23** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 – 07/01/2010** | **07/01/2009** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C. In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

1. The Limits of Insurance of the Declarations is amended to include:

   "Certified act of terrorism retained limit" $5,000,000.

2. "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance. "Certified act of terrorism retained limit" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

3. Solely with respect to this endorsement, Section III., Defense Provisions and Supplement Payments is amended as follows:

   a. With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism". However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.  We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".  Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".  We may make such investigation as we require and effect settlement of any "suit" so defended.

c.  We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.


All other terms and conditions of this policy remain unchanged.


_____
                              Authorized Representative

# WAR EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **24** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 – 07/01/2010** | **07/01/2009** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

**W.  War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 24 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24900228** | **07/01/2009 to 07/01/2010** | **07/01/2009** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.   The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

### Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $30,952.

_____
Authorized Agent

Includes copyrighted material of Insurance Services office, Inc., with its permission

TRIA11b (1/08)



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our  website  at http://www.aceproducercompensation.com or by calling the  following toll-free  telephone number: 1-866-512-2862.

ALL-20887 (10/06)



# ACE USA SPECIALTY CLAIMS
# LOSS NOTIFICATION FORM

**FORWARD BY FAX, MAIL OR E-MAILTO:**

ACE USA Specialty Claims
140 Broadway, 40th Floor
New York, NY 10005
Fax No.:  (646) 458 - 5933

CasualtyRiskExcessFirstNotice@acegroup.com

**Today's Date: 8 July 2009**

## Notice of:   (check all that apply)

☐ **First-Party Claim**        ☐ **Potential Claim**

☐ **Third-Party Claim**       ☐ **Litigation Initiated**

☐ **Other**_____

## Insured's Name & Contact Information

**Company Name:**  McKesson Corporation                          **Point of Contact:**  _____

**Address:**        One Post St., 34th Floor
                    San Francisco, CA 94105

**Phone Number:**  _____

## Broker/Agent's Name & Contact Information

**Company Name:**  MARSH RISK & INSURANCE SERVICES        **Point of Contact:**  Linda Miner

**Address:**        One CALIFORNIA STREET, Suite 1700
                    SAN FRANCISCO, CA 94111

**Phone Number:**  _____

## Policy Information

**Policy Number:**  XOO G24900228                        **Policy Period:**  07/01/2009 - 07/01/2010

**Limits of Liability:**  25,000,000   **per**  25,000,000   **agg**  **Self-Insured Retention/Deductible:**  25,000.00

## Loss Information

**Date of Incident/Claim:**  _____   **Location:**  _____

**Claimant Name/Address:**  _____

**Description of Loss:**  _____

_____

Please list all attached or enclosed documentation:   ☐  (check if none provided)

_____

_____

_____

Name of Person Completing This Form:  _____   Signature:  _____

Form Version: May 2007

**IL P 001 01 04**

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# AMENDATORY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | 25 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 – 07/01/2010** | **07/01/2009** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

It is understood and agreed that this policy is amended per the following:

- Revised Schedule of Underlying
- The insured zip code is amended to read 94104
- Endorsement 26 – Named Insured Endorsement is added

All other terms and conditions of this policy remain unchanged.

Authorized Agent

CC1E15

# NAMED INSURED ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | Endorsement Number<br>**26** |
|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24900228** | Policy Period<br>**07/01/2009 – 07/01/2010** | Effective Date of Endorsement<br>**07/01/2009** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## EXCESS LIABILITY CATASTROPHE POLICY

## EXCESS LIABILITY POLICY

## COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

**McKesson Corporation**
**3701406 Nova Scotia Company**
**3087601 Nova Scotia Company**
**A.L.I. Holdings LLC**
**A.L.I. Imaging Systems Corp.**
**A.L.I Technologies (Deutschland) GmbH**
**A.L.I. Technologies (Europe) B.V.**
**A.L.I. Technologies (International) LLC**
**Beldere Corporation**
**California Golden State Finance Company**
**Cancer Clinics of Excellence LLC**
**CGSF Funding Corporation**
**City Properties, S.A.**
**Clinique Sante Corporation**
**CPG Industries, Inc.**
**Crocker Plaza Company**
**Cypruss Medical Products LLC**
**D&K Healthcare Resources LLC**
**D&K Pharmacy Solutions, Inc.**
**Diversified Healthcare, LLC**
**Edwards Medical Supply, Inc.**
**FAR-SUR**
**FASTPRO International, Inc.**
**Foremost de Venezuela, S.A.**
**Foremost Iran Corporation**
**Foremost Shir, Inc.**
**Foremost Tehran, Inc.**
**Golden State Insurance Company Limited**
**Groupe PharmEssor Inc.**
**HBO & Company (VI), Inc.**
**HBOC Medical Limited**
**Health Mart Systems, Inc.**
**HF Land Company**

**Intercal, Inc.**
**Jaron, Inc.**
**Jewett Drug LLC**
**Knowledgeable Healthcare Solutions, Inc.**
**KWS & P, Inc.**
**KWS & P/SFA, Inc.**
**McKesson Asia-Pacific Pty Limited**
**McKesson Automation Canada Corporation**
**McKesson Automation Inc.**
**McKesson Automation Systems Inc.**
**McKesson Canada Corporation**
**McKesson Canada Support Services Corporation**
**McKesson Capital Funding Corporation**
**McKesson Capital LLC**
**McKesson Central Fill LLC**
**McKesson China Holdings S.a.r.l.**
**McKesson Financial Holdings II Limited**
**McKesson Financial Holdings Limited**
**McKesson Foundation, Inc.**
**McKesson Funding Company of Canada**
**McKesson Health Solutions Holdings LLC**
**McKesson Health Solutions LLC**
**McKesson Health Solutions Puerto Rico Inc.**
**McKesson Health Solutions Texas Inc.**
**McKesson High Volume Solutions Inc.**
**McKesson Information Solutions Canada Company**
**McKesson Information Solutions Capital S.a.r.l.**
**McKesson Information Solutions Finance S.a.r.l.**
**McKesson Information Solutions France SAS**
**McKesson Information Solutions Holdings France S.a.r.l.**
**McKesson Information Solutions Holdings I SRL**
**McKesson Information Solutions Holdings S.a.r.l.**
**McKesson Information Solutions I SRL**
**McKesson Information Solutions LLC**
**McKesson Information Solutions Netherlands B.V.**
**McKesson Information Solutions Sweden AB**
**McKesson Information Solutions UK Limited**
**McKesson International Capital S.a.r.l.**
**McKesson International Finance S.a.r.l.**
**McKesson (International) (Gibraltar) Limited**
**McKesson International Holdings II S.a.r.l.**
**McKesson International Holdings III S.a.r.l.**
**McKesson International Holdings IV S.a.r.l.**
**McKesson International Holdings V S.a.r.l.**
**McKesson International Holdings VII S.a.r.l.**
**McKesson International Holdings Limited**
**McKesson International Holdings LLC**
**McKesson International Holdings S.a.r.l.**
**McKesson International Holdings SRL**
**McKesson International LLC**
**McKesson International Netherlands BV**
**McKesson International Netherlands II B.V.**
**McKesson International S.a.r,l.**
**McKesson International SRL**
**McKesson International Topholdings S.a.r.l.**
**McKesson Ireland Limited**
**McKesson Israel Ltd.**
**McKesson Logistics Solutions**

McKesson Logistics Solutions LLC
McKesson Medical Imaging Company
McKesson Medical-Surgical FDT Inc.
McKesson Medical-Surgical Holdings Inc.
McKesson Medical-Surgical Inc.
McKesson Medical-Surgical International Limited
McKesson Medical-Surgical MediMart Inc.
McKesson Medical-Surgical Minnesota Inc.
McKesson Medical-Surgical Minnesota Supply Inc.
McKesson Nederland B.V.
McKesson New Zealand Limited
McKesson Pharmaceutical Holdings LLC
McKesson Pharmacy Optimization LLC
McKesson Pharmacy Systems LLC
McKesson Pharmacy Systems Canada ULC
McKesson Plasma and Biologics LLC
McKesson Property Company, Inc.
McKesson Services LLC
McKesson (Shanghai) Trading Company Limited
McKesson Specialty Arizona Inc.
McKesson Specialty Care Distribution Corporation
McKesson Specialty Care Distribution Joint Venture LP
McKesson Specialty Corporation
McKesson Specialty Distribution LLC
McKesson Specialty Holdings LLC
McKesson Specialty Prescription Services (B.C.) Corporation
McKesson Specialty Prescription Services Corporation
McKesson Transportation Systems, Inc.
McQueary Bros. Drug Company, LLC
Medcon UK Limited
Medical & Vaccine Products, Inc.
Medical Imaging SRL
Moore Medical LLC
MSA Products LLC
myhca, inc.
NADRO, S.A. de C.V.
NADRO Services, S. de R.L. de C.V.
National Oncology Alliance, Inc.
NDC of Canada, Inc.
NDCHealth Corporation
NDCHealth Pharmacy Systems and Services, Inc.
Northstar Healthcare Holdings Limited
Northstar Healthcare Limited
Northstar Rx LLC
Oncology Holdings II, Inc.
Oncology Holdings, Inc.
Oncology Therapeutics Network Corporation
Onmark, Inc.
OTN Generics, Inc.
OTN Participant, Inc.
Parata Systems, LLC
Patient Accoutn Management Services, Inc.
Per-Se Technologies Canada, Inc.
Per-Se Technologies, Inc.
Per-Se Transaction Services, Inc.
PhyServ Solutions, Inc.
Podiatry Online, Inc.
Proventy

**PST Products, LLC**
**PST Services, Inc.**
**Purchasing Alliance for Clinical Therapeutics, LLC**
**San Bruno Mountain Ltd.**
**S.K.U., Inc.**
**Sterling Medical Services, LLC**
**Strategic Health Alliance II, Inc.**
**Strategic Health Alliance Management Corp.**
**Titus Home Health Care LLC**
**VC Services, Inc.**
**Visitacion Associates**
**Walsh Distribution, L.L.C.**
**Walsh Healthcare Solutions LLC**
**Zee Medical Canada Corporation**
**Zee Medical, Inc.**
**Access Health UK Ltd  (dissolved)**
**DC Land Company  (merged into McKesson Property Company, Inc.)**
**DCAZ Land Company  (merged into McKesson Property Company, Inc.)**
**McKesson Finance Company of Canada  (merged 03/31/2009)**
**McKesson Health Solutions Canada Company  (merged 03/31/2009)**
**McKesson Information Solutions Holdings II S.a.r.l.  (merged 04/2009)**
**McKesson Information Solutions Holdings III S.a.r.l.  (merged 04/2009)**
**McKesson Information Solutions Holdings IV S.a.r.l.  (merged 04/2009)**
**McKesson Information Solutions Holdings V S.a.r.l.  (merged 04/2009)**
**McKesson Specialty Pharmaceuticals LLC  (sold 12/01/2008)**
**McKesson International Holdings VI S.a.r.l.  (merged)**
**McKesson International Nova Scotia ULC  (merged)**
**McKesson HBOC (Gibraltar) Limited  (dissolved)**
**McKesson Medication Management LLC  (sold 04/11/2008)**
**McKesson Medication Management Puerto Rico Inc.  (sold 04/11/2008)**
**McKesson Medication Management Virgin Islands Inc.  (dissolved 10/06/2006)**
**Per-Se Technologies (UK) Limited  (merged 02/17/2009)**
**Soldier Acquisition Corp  (merged 02/17/2009)**
**UNIDIS Albert ULC  (sold 04/30/2009)**
**Verispan L.L.C.  (sold 07/28/2008)**

All other terms and conditions of this policy remain unchanged.

_C. German_

Authorized Agent

# AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 27 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24900228** | **07/01/2009 – 07/01/2010** | **06/11/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is understood and agreed that this policy is amended per the following:

- Endorsement 26 – Named Insured Endorsement is deleted and replaced with Endorsement 28 – Named Insured Endorsement

All other terms and conditions of this policy remain unchanged.

_CYrmans_

Authorized Agent

CC1E15

# NAMED INSURED ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**28** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24900228** | Policy Period<br>**07/01/2009 – 07/01/2010** | Effective Date of Endorsement<br>**06/11/2010** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

### EXCESS LIABILITY CATASTROPHE POLICY

### EXCESS LIABILITY POLICY

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

**McKesson Corporation**
**McKesson Specialty Prescription Services (Atlantic) Corporation**
**3087601 Nova Scotia Company**
**A.L.I. Holdings LLC**
**A.L.I. Imaging Systems Corp.**
**A.L.I Technologies (Deutschland) GmbH**
**A.L.I. Technologies (Europe) B.V.**
**A.L.I. Technologies (International) LLC**
**Beldere Corporation**
**California Golden State Finance Company**
**Cancer Clinics of Excellence LLC**
**CGSF Funding Corporation**
**City Properties, S.A.**
**Clinique Sante Corporation**
**CPG Industries, Inc.**
**Crocker Plaza Company**
**Cypruss Medical Products LLC**
**D&K Healthcare Resources LLC**
**D&K Pharmacy Solutions, Inc.**
**Diversified Healthcare, LLC**
**Edwards Medical Supply, Inc.**
**FAR-SUR**
**FASTPRO International, Inc.**
**Foremost de Venezuela, S.A.**
**Foremost Iran Corporation**
**Foremost Shir, Inc.**
**Foremost Tehran, Inc.**
**Golden State Insurance Company Limited**
**Groupe PharmEssor Inc.**
**HBO & Company (VI), Inc.**
**HBOC Medical Limited**
**Health Mart Systems, Inc.**
**HF Land Company**

XS-24545 (03/2008)                                                                 Page 1 of 4

Intercal, Inc.
Jaron, Inc.
Jewett Drug LLC
Knowledgeable Healthcare Solutions, Inc.
KWS & P, Inc.
KWS & P/SFA, Inc.
McKesson Asia-Pacific Pty Limited
McKesson Automation Canada Corporation
McKesson Automation Inc.
McKesson Automation Systems Inc.
McKesson Canada Corporation
McKesson Canada Support Services Corporation
McKesson Capital Funding Corporation
McKesson Capital LLC
McKesson Central Fill LLC
McKesson China Holdings S.a.r.l.
McKesson Financial Holdings II Limited
McKesson Financial Holdings Limited
McKesson Foundation, Inc.
McKesson Funding Company of Canada
McKesson Health Solutions Holdings LLC
McKesson Health Solutions LLC
McKesson Health Solutions Puerto Rico Inc.
McKesson Health Solutions Texas Inc.
McKesson High Volume Solutions Inc.
McKesson Information Solutions Canada Company
McKesson Information Solutions Capital S.a.r.l.
McKesson Information Solutions Finance S.a.r.l.
McKesson Information Solutions France SAS
McKesson Information Solutions Holdings France S.a.r.l.
McKesson Information Solutions Holdings I SRL
McKesson Information Solutions Holdings S.a.r.l.
McKesson Information Solutions I SRL
McKesson Information Solutions LLC
McKesson Information Solutions Netherlands B.V.
McKesson Information Solutions Sweden AB
McKesson Information Solutions UK Limited
McKesson International Capital S.a.r.l.
McKesson International Finance S.a.r.l.
McKesson (International) (Gibraltar) Limited
McKesson International Holdings II S.a.r.l.
McKesson International Holdings III S.a.r.l.
McKesson International Holdings IV S.a.r.l.
McKesson International Holdings V S.a.r.l.
McKesson International Holdings VII S.a.r.l.
McKesson International Holdings Limited
McKesson International Holdings LLC
McKesson International Holdings S.a.r.l.
McKesson International Holdings SRL
McKesson International LLC
McKesson International Netherlands BV
McKesson International Netherlands II B.V.
McKesson International S.a,r,l.
McKesson International SRL
McKesson International Topholdings S.a.r.l.
McKesson Ireland Limited
McKesson Israel Ltd.
McKesson Logistics Solutions

**McKesson Logistics Solutions LLC**
**McKesson Medical Imaging Company**
**McKesson Medical-Surgical FDT Inc.**
**McKesson Medical-Surgical Holdings Inc.**
**McKesson Medical-Surgical Inc.**
**McKesson Medical-Surgical International Limited**
**McKesson Medical-Surgical MediMart Inc.**
**McKesson Medical-Surgical Minnesota Inc.**
**McKesson Medical-Surgical Minnesota Supply Inc.**
**McKesson Nederland B.V.**
**McKesson New Zealand Limited**
**McKesson Pharmaceutical Holdings LLC**
**McKesson Pharmacy Optimization LLC**
**McKesson Pharmacy Systems LLC**
**McKesson Pharmacy Systems Canada ULC**
**McKesson Plasma and Biologics LLC**
**McKesson Property Company, Inc.**
**McKesson Services LLC**
**McKesson (Shanghai) Trading Company Limited**
**McKesson Specialty Arizona Inc.**
**McKesson Specialty Care Distribution Corporation**
**McKesson Specialty Care Distribution Joint Venture LP**
**McKesson Specialty Corporation**
**McKesson Specialty Distribution LLC**
**McKesson Specialty Holdings LLC**
**McKesson Specialty Prescription Services (B.C.) Corporation**
**McKesson Specialty Prescription Services Corporation**
**McKesson Transportation Systems, Inc.**
**McQueary Bros. Drug Company, LLC**
**Medcon UK Limited**
**Medical & Vaccine Products, Inc.**
**Medical Imaging SRL**
**Moore Medical LLC**
**MSA Products LLC**
**myhca, inc.**
**NADRO, S.A. de C.V.**
**NADRO Services, S. de R.L. de C.V.**
**National Oncology Alliance, Inc.**
**NDC of Canada, Inc.**
**NDCHealth Corporation**
**NDCHealth Pharmacy Systems and Services, Inc.**
**Northstar Healthcare Holdings Limited**
**Northstar Healthcare Limited**
**Northstar Rx LLC**
**Oncology Holdings II, Inc.**
**Oncology Holdings, Inc.**
**Oncology Therapeutics Network Corporation**
**Onmark, Inc.**
**OTN Generics, Inc.**
**OTN Participant, Inc.**
**Parata Systems, LLC**
**Patient Accoutn Management Services, Inc.**
**Per-Se Technologies Canada, Inc.**
**Per-Se Technologies, Inc.**
**Per-Se Transaction Services, Inc.**
**PhyServ Solutions, Inc.**
**Podiatry Online, Inc.**
**Proventy**

**PST Products, LLC**
**PST Services, Inc.**
**Purchasing Alliance for Clinical Therapeutics, LLC**
**San Bruno Mountain Ltd.**
**S.K.U., Inc.**
**Sterling Medical Services, LLC**
**Strategic Health Alliance II, Inc.**
**Strategic Health Alliance Management Corp.**
**Titus Home Health Care LLC**
**VC Services, Inc.**
**Visitacion Associates**
**Walsh Distribution, L.L.C.**
**Walsh Healthcare Solutions LLC**
**Zee Medical Canada Corporation**
**Zee Medical, Inc.**
**Access Health UK Ltd  (dissolved)**
**DC Land Company  (merged into McKesson Property Company, Inc.)**
**DCAZ Land Company  (merged into McKesson Property Company, Inc.)**
**McKesson Finance Company of Canada  (merged 03/31/2009)**
**McKesson Health Solutions Canada Company  (merged 03/31/2009)**
**McKesson Information Solutions Holdings II S.a.r.l.  (merged 04/2009)**
**McKesson Information Solutions Holdings III S.a.r.l.  (merged 04/2009)**
**McKesson Information Solutions Holdings IV S.a.r.l.  (merged 04/2009)**
**McKesson Information Solutions Holdings V S.a.r.l.  (merged 04/2009)**
**McKesson Specialty Pharmaceuticals LLC  (sold 12/01/2008)**
**McKesson International Holdings VI S.a.r.l.  (merged)**
**McKesson International Nova Scotia ULC  (merged)**
**McKesson HBOC (Gibraltar) Limited  (dissolved)**
**McKesson Medication Management LLC  (sold 04/11/2008)**
**McKesson Medication Management Puerto Rico Inc.  (sold 04/11/2008)**
**McKesson Medication Management Virgin Islands Inc.  (dissolved 10/06/2006)**
**Per-Se Technologies (UK) Limited  (merged 02/17/2009)**
**Soldier Acquisition Corp  (merged 02/17/2009)**
**UNIDIS Albert ULC  (sold 04/30/2009)**
**Verispan L.L.C.  (sold 07/28/2008)**

All other terms and conditions of this policy remain unchanged.

_C. Germano_

Authorized Agent

# SCHEDULE OF UNDERLYING INSURANCE

| Named Insured | Revised |
|---|---|
| McKesson Corporation | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G24900228 | 07/01/2009 – 07/01/2010 | 07/01/2009 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property And Casualty Insurance Company |

### Foreign DIC General Liability

Company:  Insurance Company of the Sate of Pennsylvania     $1,000,000 Each Occurrence
$2,000,000 Aggregate
Policy Term:  07/01/2009 – 07/01/2010                          $4,000,000 Master Control
Policy Aggregate

### Foreign DIC Automobile Liability

Company:  Insurance Company of the Sate of Pennsylvania     $1,000,000 Each Occurrence

Policy Term:  07/01/2009 – 07/01/2010

### Foreign DIC Employers Liability

Bodily Injury by Accident
Company:  Insurance Company of the Sate of Pennsylvania     $1,000,000 Each Occurrence

Policy Term:  07/01/2009 – 07/01/2010                          Bodily Injury by Disease
$1,000,000 Each Policy
$1,000,000 Each Employee

**In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying lnsurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.**

# EXHIBIT B



**ace group**

**Declarations**
**ACE Umbrella Plus**<sup>sm</sup>
**Commercial Umbrella Liability Policy**

| | |
|---|---|
| Policy Symbol: XOO | Previous Policy Symbol: XOO |
| Policy Number: G24910179 | Previous Policy Number: G24900228 |

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW

ACE Property And Casualty Insurance Company

| Named Insured and Address | Producer Name and Address |
|---|---|
| McKesson Corporation<br>One Post St., 34th Floor<br>San Francisco, CA 94104 | Marsh Risk & Insurance Services<br>345 California Street, Suite 1300<br>San Francisco, CA 94104<br><br>PRODUCER CODE  355110 |

| | | |
|---|---|---|
| Policy Period:   From 07/01/2010 | to 07/01/2011 | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |

**Limits of Insurance**

| | |
|---|---|
| $ 25,000,000 | Each Occurrence |
| $ 25,000,000 | General Aggregate |
| $ 25,000,000 | Products Completed-Operations Aggregate  $ 25,000   Self-Insured Retention |

**Annual Premium**

| | | |
|---|---|---|
| $ 650,000 | Premium | $ 30,952  Terrorism Premium included in Annual Premium |
| $ 0 | [State Surcharge] | |
| $ 650,000 | Premium, including all Surcharges and Assessments | |

**Policy Period Premium**

| | | |
|---|---|---|
| $ 650,000 | Premium | $ 30,952  Terrorism Premium included in Annual Premium |
| $ 650,000 | Premium, including all Surcharges and Assessments | |

**Schedule of Underlying Insurance**

Refer to the attached Schedule of Underlying Insurance, which forms a part of this Policy's Declarations.

**Endorsements and Forms**

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.

# SCHEDULE OF ENDORSEMENTS

| Named Insured | | | |
|---|---|---|---|
| **McKesson Corporation** | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) | | | |
|---|---|---|---|
| **ACE Property And Casualty Insurance Company** | | | |

| | |
|---|---|
| XS9U57b (08/09) | Schedule of Underlying Insurance |
| XS-20835 (08/06) | Commercial Umbrella Liability Policy |
| ALL-20887 (10/06) | ACE Producer Compensation Practices & Policies |
| XS-28500 (10/09) | Ace Groups Speciality Claims Loss Notification Form |
| IL P 001 (01/04) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| XS-22552 (06/07) | Catastrophe Management Policyholder Notice |
| EXFL64 (10/08) | Florida Uninsured Motorists' Coverage |
| ILN151 (08 07) | Wisconsin Underinsured Vehicle Coverage Policy Disclosure Statement |
| ILU018 (09/03) | West Virginia Excess Uninsured/Underinsured Important Noctice |
| CC-1K11e (02/06) | Signatures |
| XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| XS-20782 (08/06) | Cancellation Amendatory Endorsement |
| XS-20776 (08/06) | Clinical Trial Exclusion Endorsement |
| XS-21589 (01/07) | Foreign Liability Follow Form Endorsement |
| XS-20753 (08/06) | Knowledge Of Occurrence |
| XS-20755 (08/06) | Non-Concurrency Endorsement(Recognizes Non-Concurrency) |
| XS-20756 (08/06) | Notice Of Occurrence |
| XS-21580 (01/07) | Professional Services Liability Exclusion - Exception For Resulting Bodily Injury And Property Damage |
| XS-25254 (02/09) | War Exclusion |
| XS-23501 (04/08) | Unintentional Failure to Disclose |
| XS-23634 (01/08) | Fellow Employee Exclusion Deleted |
| XS-26426 (02/09) | Employee Benefit Plan Limitation (Claims Made) |
| XS-26428(02/09) | Incidental Medical Malpractice Endorsement |
| XS-26048 (02/09) | Foreign Entity Loss - Indemnity Endorsement |
| XS26429a (08/09) | Industrial Aid Aircraft Endorsement |
| XS20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and NamedPeril (with Insureds Retained Limit) |
| CC-1E15 | Trailing Retention Endorsement |
| XS-24545 (03/08) | Named Insured Endorsement |
| CC-1E15 | Joint Venture |
| CC-1E15 | Manufacture of Drugs Exclusion |
| CC-1E15 | Annual Period Extension - Natural Disaster Or Other Catastrophe |
| CC-1E15 | Retained Limit Amendatory Endorsement |
| CC-1E15 | Personal Injury Definition Amended To Include Discrimination |
| CC-1E15 | Newly Acquired Entity Endorsement [Revenue And Timeframe Parameters] |
| CC-1E15 | Coverage Territory Definition Amendment |

# SCHEDULE OF ENDORSEMENTS

| Named Insured<br>**McKesson Corporation** | | | |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24910179** | Policy Period<br>**07/01/2010  - 07/01/2011** | Effective Date of Endorsement<br>**07/01/2010** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | | |

| | |
|---|---|
| TRIA11b (01/08) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| XS-23669 (01/2008) | Cap On Losses From Certified Acts Of Terrorism |
| XS-1V12a (07/04) | California Changes-Cancellation, Nonrenewal And State Required Conditions |
| CC-1E15 | Amendment Of Who Is An Insured |
| CC-1E15 | Permissive Use Of Auto |



# Schedule of Underlying Insurance

**ace group**

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | XOO G24910179 | 07/01/2010 to 07/01/2011 |

**General Liability (Canada)**

Company: Old Republic Insurance Co.

Limits of Insurance

Each Occurrence $ 5,000,000

Policy Number: TBD

Policy Period: 07/01/2010 to 07/01/2011

**General Liability (New York)**

Company: Old Republic Insurance Co.

Limits of Insurance

General Aggregate $ 5,000,000

Each Occurrence $ 5,000,000

Policy Number: TBD

Policy Period: 07/01/2010 to 07/01/2011

**Employers Liability**

Company: Old Republic Insurance Co.

Limits of Insurance

Bodily Injury by Accident

$ 5,000,000 Each Accident

Policy Number: TBD

Bodily Injury By Disease

$ 5,000,000 Each Policy

$ 5,000,000 Each Employee

Policy Period: 07/01/2010 to 07/01/2011

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.



# Schedule of Underlying Insurance (Continued)

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | XOO G24910179 | 07/01/2010 to 07/01/2011 |

| | | Limits of Insurance |
|---|---|---|
| Coverage | Foreign DIC General Liability | |
| Company | Insurance Company of the State of PA | $1,000,000 Occurrence |
| Policy Number | TBD | $2,000,000 Products Completed Operations Aggregate |
| Policy Period | 07/01/2010 to 07/01/2011 | $2,000,000 General Aggregate |
| | | $4,000,000 Master Control Policy Aggregate |
| Coverage | Foreign DIC Employee Benefits Liability | Limits of Insurance |
| Company | Insurance Company of the State of PA | $1,000,000 Aggregate |
| Policy Number | TBD | $1,000,000 Occurrence |
| Policy Period | 07/01/2010 to 07/01/2011 | |
| Coverage | Foreign DIC Automobile Liability | Limits of Insurance |
| Company | Insurance Company of the State of PA | $1,000,000 Occurrence |
| Policy Number | TBD | |
| Policy Period | 07/01/2010 to 07/01/2011 | |
| Coverage | Foreign DIC Employers Liability | Limits of Insurance |
| Company | Insurance Company of the State of PA | $1,000,000 Each Accident |
| Policy Number | TBD | $1,000,000 Each Policy |
| Policy Period | 07/01/2010 to 07/01/2011 | $1,000,000 Each Employee |
| Coverage | Employers Liability - UK | Limits of Insurance |
| Company | AIG UK Limited | £10,000,000 Occurrence |
| Policy Number | TBD | |
| Policy Period | 07/01/2010 to 07/01/2011 | |



**ACE UMBRELLA PLUS**<sup>SM</sup>

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

**I.   INSURING AGREEMENT**

   A.   We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or personal and advertising injury" to which this insurance applies.

      1.   This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

         a.   The "bodily injury" or "property damage" is caused by an "occurrence";

         b.   The "bodily injury" or "property damage" occurs during the "policy period"; and

         c.   Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

      2.   This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

   B.   "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

   C.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      1.   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      2.   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      3.   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II.  WHO IS AN INSURED

A.  The following are "insureds":

1.  The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2.  Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an "insured".  Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

c.  A limited liability company, you are an "insured".  Your members are also "insureds", but only with respect to the conduct of your business.  Your managers are "insureds", but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an "insured".  Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors.  Your stockholders are also "insureds", but only with respect to their liability as stockholders.

e.  A trust, you are an "insured".  Your trustees are also "insureds", but only with respect to their duties as trustees.

B.  Each of the following is also an "insured":

1.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are "insureds" for:

a.  "Bodily injury" or "personal and advertising injury":

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(2)  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker"  as a consequence of Paragraph a.(1) above;

(3)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

(4)  Arising out of his or her providing or failing to provide professional health care services.

b.  "Property damage" to property:

(1)  Owned, occupied or used by you,

(2)  Rented to, in the care, custody or control of, or over which physical control is being  exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3.  Any person or organization having proper temporary custody of your property if you die, but only:

    a.  With respect to liability arising out of the maintenance or use of that property; and

    b.  Until your legal representative has been appointed.

4.  Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this policy.

5.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization.  However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

    b.  This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

    c.  This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

    d.  We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6.  Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III. DEFENSE AND SUPPLEMENTARY PAYMENTS

A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

    1.  When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

    2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

    3.  When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B.  We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C.  We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D.  If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

    1.  All expenses we incur.

    2.  Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy.  We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6. All costs taxed against the "insured" in the "suit".

7. Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8. Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E. Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made or "suits" brought; or

3. Persons or organizations making claims or bringing "suits".

B. The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1. Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2. Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D. Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E. If the applicable limits of "underlying insurance" have been:

1. Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V.  EXCLUSIONS

This insurance does not apply to:

### A.  Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1.  A watercraft while ashore on premises you own or rent; or

2.  A watercraft you do not own that is:

    a.  Less than 26 feet long; and

    b.  Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B.  Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C.  Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1.  That the "insured" would have in the absence of the contract or agreement; or

2.  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

    a.  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    b.  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D.  Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1.  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E.  **Damage to Property**

 "Property damage" to:

1.  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3.  Property loaned to you;

4.  Personal property in the care, custody or control of the "insured";

5.  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6.  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F.  **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G.  **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.  **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I.  **Employer's Liability**

**"**Bodily injury" to:

1.  An "employee" of the "insured" arising out of and in the course of:

    a.  Employment by the "insured"; or

    b.  Performing duties related to the conduct of the "insured's" business; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1.  Whether the "insured" may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1. To liability assumed by the "insured" under an "insured contract".

2. To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J. **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies,  acts or omissions; or

4. Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M. **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1. Advertising, broadcasting, publishing or telecasting;

2. Designing or determining content of web-sites for others; or

3. An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VI - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N. **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O. **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P. **Nuclear**

1. To any injury or damage:

a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting form the "hazardous properties" of "nuclear material", if:

a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

a. "Hazardous properties" include radioactive, toxic or explosive properties;

b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e.   "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f.   "Nuclear facility" means:

(1)   Any "nuclear reactor";

(2)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.   "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h.   Injury or damage includes all forms of radioactive contamination of property.

**Q.   Other "Personal and Advertising Injury"**

1.   "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2.   "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3.   "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4.   Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5.   "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages:

a. That the "insured" would have in the absence of the contract or agreement; or

b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6.   "Personal and advertising injury" arising out of a breach of contract, except an implied contract use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

    b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

    c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        (1) Any "insured"; or

        (2) Any person or organization for whom you may be legally responsible;

    d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

    e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

    f. That are, or that are contained in any property that is:

        (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

        (2) Otherwise in the course of transit by or on behalf of the "insured"; or

        (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

    g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

    However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

        1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

        2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3.  Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury"or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4.  Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5.  Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6.  Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

    a.  The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    b.  The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7.  Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

    a.  The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    b.  The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2.  Any loss, cost or expense arising out of any:

    a.  Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    b.  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S.  **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment,removal or disposal of:

1.  "Your product";

2.  "Your work"; or

3.  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T.   **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U.   **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V.   **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication.   This exclusion also applies to communications which are made or allegedly made in violation of the:

    1.   Telephone Consumer Protection Act (TCPA) including any

       Amendment of or addition to such law; or

    2.   The CAN-SPAM Act of 2003, including any amendment of

       Or addition to such law; or

    3.   Any statute, ordinance or regulation, other than the TCPA

       Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W.  **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

## VI.   CONDITIONS

A.   **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal.   If we elect to appeal, we will be liable for,in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and intereston that amount of any judgment that does not exceed the applicable Limits of Insurance shown in theDeclarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B.   **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us.  If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

  4.  No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

**G.  Inspection and Audit**

  1.  We will be permitted, but not obligated to inspect the "insured's" property and operations.  Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

  2.  We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

**H.  Legal Action Against Us**

  1.  No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

  2.  You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

**I.  Maintenance of "Underlying Insurance"**

During the "policy period", you agree:

  1.  To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

  2.  That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

  3.  That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

  4.  That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

  5.  That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

**J.  Other Insurance**

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance".  This provision will not apply if the "other insurance" is written to be excess of this policy.

**K.  Premium**

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium.  It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

**L.  Separation of "Insureds"**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

  1.  As if each Named Insured were the only Named Insured; and

2.    Separately to each "insured" against whom claim is made or "suit" is brought.

M.  **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N.  **Transfer of Rights of Recovery Against Others to Us**

1.    If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2.    Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment.  The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3.    If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O.  **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy.  The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

**VII.  DEFINITIONS**

A.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B.  "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D.  "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E.  "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker".  "Employee" does not include a "temporary worker" or independent contractor.

F.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I. "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured

J. "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities

K. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M. "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      a.   Power cranes, shovels, loaders, diggers or drills; or

      b.   Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.   Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      a.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      b.   Cherry pickers and similar devices used to raise or lower workers;

6.   Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      a.   Equipment designed primarily for:

            i.   Snow removal;

           ii.   Road maintenance, but not construction or resurfacing; or

         iii.   Street cleaning;

      b.   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      c.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O.   "Occurrence" means:

1.   With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2.   With respect to "personal and advertising injury", a covered offense.  All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P.   "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy.  "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q.   "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R.   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1.   False arrest, detention or imprisonment;

2.   Malicious prosecution;

3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T. "Products-completed operations hazard":

1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   a. Products that are still in your physical possession; or

   b. Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

      i. When all of the work called for in your contract has been completed

      ii. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

   a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

   b. The existence of tools, uninstalled equipment or abandoned or unused materials.

U. "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V. "Retained limit" means either of the following:

1. The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

X.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.  "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.  "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA.  "Your product":

   1.  Means:

      a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (1)  You;

         (2)  Others trading under your name; or

         (3)  A person or organization whose business or assets you have acquired; and

      b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   2.  Includes:

      a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      b.  The providing of or failure to provide warnings or instructions.

   3.  Does not include vending machines or other property rented to or located for the use of others but not sold.

BB.  "Your work":

   1.  Means:

      a.  Work or operations performed by you or on your behalf; and

      b.  Materials, parts or equipment furnished in connection with such work or operations

   2.  Includes:

      a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      **b.**  The providing of or failure to provide warnings or instructions.



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our  website  at http://www.aceproducercompensation.com or by calling the  following toll-free  telephone number: 1-866-512-2862.

ALL-20887 (10/06)



## ACE GROUP SPECIALTY CLAIMS LOSS NOTIFICATION FORM

**Today's Date: 22 June 2010**

FORWARD BY FAX, MAIL OR E-MAILTO:

ACE Excess
P.O. Box 5103
Scranton, PA 18505-0510
Fax No.: (866)635-5687

CasualtyRiskExcessFirstNotice@acegroup.com

### Notice of: (check all that apply)

☐ **First-Party Claim**          ☐ **Potential Claim**

☐ **Third-Party Claim**          ☐ **Litigation Initiated**

☐ **Other**_____

## Insured's Name & Contact Information

**Company Name:** McKesson Corporation          **Point of Contact:** _____

**Address:** One Post St., 34th Floor
San Francisco  CA 94104

**Phone Number:** _____

## Broker/Agent's Name & Contact Information

**Company Name:** MARSH RISK & INSURANCE SERVICES          **Point of Contact:** Linda Miner

**Address:** 345 CALIFORNIA STREET
SAN FRANCISCO  CA 94104

**Phone Number:** _____

## Policy Information

**Policy Number:** XOO G24910179          **Policy Period:** 07/01/2010 - 07/01/2011

**Limits of Liability:** 25,000,000   **per** 25,000,000   **agg**   **Self-Insured Retention/Deductible:** 25,000.00

## Loss Information

**Date of Incident/Claim:** _____          **Location:** _____

**Claimant Name/Address:** _____

**Description of Loss:** _____

_____
_____
_____

Please list all attached or enclosed documentation:   ☐ (check if none provided)

_____
_____
_____

Name of Person Completing This Form: _____          Signature: _____

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc.,  2004

**COMMERCIAL UMBRELLA LIABILITY**
**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.
This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*
Please read your policy, and the endorsements attached to your policy, carefully. When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.
- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

# 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.
- Please be prepared to provide the following information:
  - Caller's name, title and contact telephone number
  - Name of Insured
  - Policy Number
  - A description of the incident
  - Any witnesses
  - Property, Product or Vehicle Information
  - Incident Location
  - Contact Person
  - Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty insurance Company or one of its insurance company affiliates.*

XS-22552   (06/2007)

**FLORIDA UNINSURED MOTORISTS' COVERAGE**

ace group

Dear Policyholder:

Under Florida law, *we* must provide Uninsured Motorists' Coverage (including Underinsured Motorists' Coverage) at a limit up to the Bodily Injury Liability limit of *your* policy or $1 million, whichever is less, unless *you* select one of the available options.

Uninsured Motorists' Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of *bodily injury* or death resulting therefrom. Such benefits may include payments for certain *medical expenses*, lost wages, and pain and suffering, subject to limitations and conditions contained in the policy. For the purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the *bodily injury* limits are less than *your* damages. If coverage is selected, coverage will respond on a "Non Stacked" basis. This means that under this form if injury occurs in a vehicle owned or leased by you or any family member who resides with you, this policy will apply only to the extent of coverage (if any) which applies to that vehicle in this policy.

*Your* Uninsured Motorists' Coverage limit options are as follows:

1. *You* can completely reject Uninsured Motorists' Coverage.

2. *You* can choose Uninsured Motorists' Coverage up to the Bodily Injury limit of *your* policy or $1 million, whichever is less.

If *you* wish to choose any of these options, please complete the selection form and send it to *your* agent or broker.

IL N 151 08 07

# WISCONSIN UNDERINSURED VEHICLE COVERAGE POLICY DISCLOSURE STATEMENT

| | |
|---|---|
| **Policy Number: G24910179** | **Policy Effective Date: 07/01/2010** |
| **Company: ACE Property And Casualty Insurance Company** | **Producer:  MARSH RISK & INSURANCE SERVICES** |
| **Applicant/Named Insured: McKesson Corporation** | |

☐   Underinsured motorist coverage may not be purchased under this policy.

☐   Underinsured motorist coverage may be purchased under this policy. You should contact us or your agent if you have any questions regarding underinsured motorist coverage and your options with respect to this coverage.

 © ISO Properties, Inc., 2007

IL U 018 09 03

# WEST VIRGINIA EXCESS UNINSURED/UNDERINSURED IMPORTANT NOTICE

### RETURN ATTACHED FORMS WITHIN THIRTY (30) DAYS

**TO: PROPOSED POLICYHOLDER (APPLICANT)**

**IF YOU DO NOT RETURN THESE FORMS TO YOUR INSURER WITHIN THIRTY (30) DAYS YOU WILL BE PRESUMED TO HAVE REJECTED UNINSURED AND UNDERINSURED MOTOR VEHICLE COVERAGES.**

**OR**

**PRESENT POLICYHOLDER**

**IF YOU DO NOT RETURN THESE FORMS TO YOUR INSURER WITHIN THIRTY (30) DAYS YOUR COVERAGE WILL STAY THE SAME AS IT IS NOW. THIS IS AN OPPORTUNITY TO CHANGE THE COVERAGE YOU PRESENTLY HAVE.**

**A. UNinsured Motor Vehicle Coverage**

**The State of West Virginia requires** that you purchase **UNinsured** motor vehicle coverage with limits not less of $20,000 per person, $40,000 per accident for uninsured bodily injury losses, and $10,000 for uninsured property losses under your basic automobile coverage. In your case, you have already done so, and you have opted to purchase excess or umbrella type coverage which is also written to cover automobile liability. Therefore, the law also requires that you be given the opportunity to purchase uninsured motor vehicle coverage in an amount not less than the liability limit or limits selected on the excess or umbrella policy as well.

**UNinsured Motor Vehicle Coverage** may protect you and passengers in your car if you are injured in an accident that was caused by a driver who was at-fault, or an unidentified driver who was at-fault but who does not have insurance to pay for your damages.

**B. UNDERinsured Motor Vehicle Coverage**

The State of West Virginia **does not require** you to purchase any **UNDERinsured** motor vehicle coverage under your basic automobile policy. However, the law does state that you must be given the opportunity to purchase this coverage in an amount not less than your liability coverage. In your case, you have opted to purchase excess or umbrella coverage which is also written to cover automobile liability. Therefore, the law also requires that you be given the opportunity to purchase underinsured motor vehicle coverage in an amount not less than the liability limit or limits selected on the excess or umbrella policy as well

**UNDERinsured** motor vehicle coverage may protect you and passengers in your car if you are involved in an accident which was caused by a driver who was at-fault but the at-fault driver's insurance policy is not sufficient to pay for your damages. In some cases the at-fault driver will not have enough liability coverage to pay for all the damages you have suffered. In order for you to protect yourself and others in your car, **UNDERinsured** motor vehicle coverage is available to you. This type of coverage may pay for the remainder of your damages up to your policy limits.

**C. Example:**

You have purchased **UNDERinsured** motor vehicle coverage under your auto policy with limits of $100,000 per person with a maximum of $300,000 for any accident. You have also purchased underinsured motor vehicle coverage under your umbrella in the amount of $1,000,000. You are in an accident where the other driver is at fault. The at-fault driver's liability policy limits are $20,000 per person. You suffered damages of $300,000. You receive $20,000 from the at-fault driver's insurance. Since you still have outstanding losses of $280,000, you can receive $100,000 from your **UNDERinsured** motor vehicle coverage under your auto policy and $180,000 from your underinsured motor vehicle coverage under your umbrella.

If you do not have **UNDERinsured motor vehicle coverage,** you may have found yourself in a situation where you did not have enough coverage to meet all of the losses you sustained in the accident.

 © ISO Properties, Inc., 2003

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **1** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

### INDEMNITY INSURANCE COMPANY OF NORTH AMERICA
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

### BANKERS STANDARD FIRE AND MARINE COMPANY
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

### BANKERS STANDARD INSURANCE COMPANY
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

### ACE INDEMNITY INSURANCE COMPANY
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

### ACE AMERICAN INSURANCE COMPANY
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

### ACE PROPERTY AND CASUALTY INSURANCE COMPANY
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

### INSURANCE COMPANY OF NORTH AMERICA
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

### PACIFIC EMPLOYERS INSURANCE COMPANY
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

### ACE FIRE UNDERWRITERS INSURANCE COMPANY
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

### WESTCHESTER FIRE INSURANCE COMPANY
1325 Avenue of the Americas, 19th Floor, New York, NY 10019

GEORGE D. MULLIGAN, Secretary

DENNIS A. CROSBY, JR., President

Authorized Agent

# CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **2** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

> $250,000 Annual Limit

Catastrophe Management Coverage

A. Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

B. A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

C. There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

D. Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

E. Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

F. For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage".  "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling;  travel expenses; temporary living expenses or other necessary response costs and approved by us,  incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured".  A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **3** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Parts 1., 2., 5 and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1.  This policy may be cancelled by you by mailing to us written notice stating when such cancellation shall be effective.

2.  This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than <u>one hundred twenty</u> (120) days thereafter, <u>ten</u> (10) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective.  The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".  Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5.  If you cancel, earned premiums shall be computed in accordance with the applicable short rate table or procedure. If we cancel, earned premium shall be computed pro-rata.

6.  Premium adjustment may be made at the time cancellation becomes effective. our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

# CLINICAL TRIAL EXCLUSION ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **4** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial".

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# FOREIGN LIABILITY FOLLOW FORM ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **5** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

Definition D. (Coverage Territory) is amended to exclude anywhere except the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the "scheduled underlying insurance:"

1)  This exclusion and amendment of the Coverage Territory shall not apply; and

2)  Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance," subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance."

Notwithstanding 1 and 2 above, this insurance does not apply to "loss," injury, damage claim or "suit," arising directly or indirectly as a result of or in connection with terrorism that occurs in the following countries:

> Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Bahrain, Bosnia & Herzegovina, Burundi, Cambodia, Central African Republic, Colombia, Cote d'Ivoire, Cuba, Democratic Republic of Congo, Egypt, Ethiopia, Federal Republic of Yugoslavia, Georgia, Guinea-Bissau, Haiti, India, Indonesia, Iran, Iraq, Jordan, Kosovo, Kuwait, Kyrgyz Republic, Lebanon, Liberia, Libya, Macedonia, Nigeria, North Korea, Northern Ireland, Oman, Pakistan, Peru, Philippines, Qatar, Rwanda, Saudi Arabia, Serbia, Sierra Leone, Somalia, Sri Lanka, Sudan, Syria, Tajikistan, Turkey, Uganda, United Arab Emirates, Uzbekistan, Venezuela, West Bank and Gaza, Yemen, Zaire, Zimbabwe.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-21589 (01/07)

# KNOWLEDGE OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **6** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Risk Manager or Senior Corporate Counsel shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-20753 (08/06)                                                                                          Page 1 of 1

# NON-CONCURRENCY ENDORSEMENT
## (Recognizes Non-Concurrency)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **7** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Whereas, the policy (ies) listed in the schedule of "underlying insurance" are non-concurrent with the "policy period" hereunder;

In the event of reduction or exhaustion of the aggregate limit(s) of the policy (ies) by reason of "occurrences" prior to the inception of this policy, it is agreed that such insurance as is afforded by this policy shall:

  (1)  in the event of reduction apply in excess of the reduced underlying limit; or

  (2)  in the event of exhaustion continue in force as "underlying insurance".

Anything in this endorsement to the contrary notwithstanding this policy applies only to "occurrences" happening during the "policy period".

"Policy period" means the period stated in the Declarations of this policy.

All other terms and conditions remain unchanged.

_____
Authorized Agent

# NOTICE OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# PROFESSIONAL SERVICES LIABILITY EXCLUSION - EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **9** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

XS-21580 (01/07)

# WAR EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **10** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

**W.  War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of the policy remain unchanged.

Authorized Agent

# UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **11** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

# FELLOW EMPLOYEE EXCLUSION DELETED

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **12** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# EMPLOYEE BENEFIT PLAN LIMITATION
# [CLAIMS MADE]

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **13** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

### <u>SCHEDULE</u>

1.  Underlying Insurance

   Company:   <u>Insurance Company of the State of Pennsylvania</u>

   Policy Number:  <u>TBA</u>

   Expiration Date:  <u>July 1, 2011</u>

   Retroactive Date:  <u>None</u>

   Limits of Insurance:

   Each Employee  $ <u>1,000,000</u>

   Aggregate:   $ <u>1,000,000</u>


   Company:   <u>Old Republic Insurance Company</u>

   Policy Number:  <u>TBA</u>

   Expiration Date:  <u>July 1, 2011</u>

   Retroactive Date:  <u>None</u>

   Limits of Insurance:

   Each Employee  $ <u>1,000,000</u>

   Aggregate:   $ <u>1,000,000</u>

2.  Our Retroactive Date:  <u>July 1, 2009</u>

3.  Coverage

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

"Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

a.  Counseling "employees" on your "employee benefit programs";

b.  Interpreting your "employee benefit programs";

c.  Handling records for your "employee benefit programs";

d.  Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e.  Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f.  Collection of contributions and application of contributions as provided in your "employee benefit programs";

g.  Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h.  Processing of claims for your "employee benefit programs".


"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4.  Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a.  Retroactive Date

    If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

    i.   The date such claim is first made against you is during OUR policy period, and

    ii.  The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b.  Extended Reporting Period

    If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in  like manner, subject to all of the following:

    i.   Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

    ii.  The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

    iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c.  Aggregate Limits

    If the applicable Limits of Insurance shown in the "underlying insurance"  above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

    i.   The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii.   Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii.  If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d.   Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **14** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4)   arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a.   medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

b.   the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# FOREIGN ENTITY LOSS - INDEMNITY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **15** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The Insuring Agreements, Who is an Insured, Limits of Insurance, Defense and Supplementary Payments, Exclusions, Definitions and Conditions sections of the policy are amended to add the following:

## FIRST NAMED INSURED INDEMNITY COVERAGE

### I. INSURING AGREEMENT

We will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" as a result of "bodily injury", "property damage" or "personal and advertising injury" to which the insurance provided by this endorsement applies.

The insurance provided by this endorsement applies only when "bodily injury", "property damage" "personal and advertising injury", or the "foreign entity occurrence" causing such "bodily injury", "property damage" "personal and advertising injury", takes place in a jurisdiction where we are not licensed.

The terms, conditions and limitations set forth in sub-section A.1., A.2., B., C. and D. of Section I. Insuring Agreement in the policy shall apply to our duty to indemnify the First Named Insured.

### II. WHO IS AN INSURED

Notwithstanding anything in Section II (WHO IS AN INSURED), no "foreign entity" is an insured under this policy.

### III. DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS

When the insurance provided by this endorsement applies, we shall indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign entity", provided that (a) the "First Named Insured" shall enter into a written agreement with the "foreign entity" governing the handling of any claim or "suit", and requiring, at a minimum, that the "First Named Insured" shall have the right to control the investigation, adjustment, defense and settlement of the "loss" and (b) the "First Named Insured" has assigned such rights to us.

The terms, conditions and limitations set forth in sub-sections A through E. of Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS in the policy shall apply to our right and duty to indemnify the First Named Insured for defense costs and supplementary payments and to our rights as assigned to us by the "First Named Insured".

**IV. LIMITS OF INSURANCE**

A. When the insurance provided by this endorsement applies, the insurance provided is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity shall erode and be counted against such limits.

B. Subject to C. below. if the "First Named Insured" has a direct or indirect ownership interest in the "foreign entity", our limit of liability for "loss" arising out of any one "foreign entity occurrence" shall be an amount equal to the percentage ownership interest of the "First Named Insured" in the "foreign entity", as stated in the schedule of "foreign entities", multiplied by the amount of the "loss."

C. If the "First Named Insured" does not have a direct or indirect ownership interest in the "foreign entity", or has an ownership interest of less than 100% but is liable to indemnify the "foreign entity" for the full amount of the "loss", then, subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

    (1)    has indemnified a "foreign entity", or

    (2)    represents and warrants to us that it has a legal obligation to indemnify the "foreign entity".

The terms, conditions and limitations set forth in Section IV. LIMITS OF INSURANCE in the policy shall apply to our duty to indemnify the First Named Insured.

## V. EXCLUSIONS

The following exclusions are added to the policy:

### A. Foreign Entity Exclusion

This insurance does not apply to any "bodily injury", property damage" or "personal and advertising injury" arising out of a "foreign entity occurrence", except as provided by this Foreign Entity Loss - Indemnity endorsement.

### B. Trade or Economic Sanctions

This insurance does not apply if trade or economic sanctions would prohibit us from providing direct insurance, including, but not limited to, the payment of claims, for, on behalf of, or to any person or entity.

## VI. CONDITIONS

When the insurance provided by this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy, which apply as if any "foreign entity" were an insured, or any "foreign entity loss" were insured under this policy.

### A. Claims Made/Reported Coverage (if applicable)

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period shall apply to all claims made against a "foreign entity" for which the "First Named Insured" seeks indemnification hereunder to the same extent that such requirements apply to a covered claim under the policy.

### B. Additional Duties of the "First Named Insured"

The "First Named Insured" must notify us, in writing, as soon as practicable after its Risk Management Department or General Counsel (or equivalent positions) knows of a "foreign entity occurrence," or a "foreign entity claim" by a "foreign entity" against the "First Named Insured" for which the "First Named Insured" would have a legal obligation to which this insurance applies.  Notice must include:

        (1) How, when and where the "foreign entity occurrence"  took place; and

        (2) A description of the "loss", injury or damage.

If a "foreign entity claim" is made by a "foreign entity" against the "First Named Insured" for a "foreign entity loss", the "First Named Insured" must give us written notice, as soon as practicable, of the "foreign entity claim".

In no event may the notices required by this endorsement be given after the time period required in this policy for giving notice of an "occurrence" if the "foreign entity" were an insured.

**C. Proof of Insurance**

This policy shall not serve as proof of insurance in any country where non-admitted insurance is prohibited by local applicable law.

**D. Concealment, Misrepresentation and Fraud**

By accepting this policy, you agree:

(1) The statements and warranties in this policy, including, but not limited to, warranties contained within the policy forms, and any statements in the Declarations are accurate and complete;

(2) Those statements and warranties constitute representations the "First Named Insured" made to us; and

(3) We have issued the policy in reliance upon those representations.

(4) This policy is void in any case of fraud by you as it relates to this endorsement at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured; a "foreign entity"; a "loss", claim or "suit" or a "foreign entity occurrence"

**VII. DEFINITIONS**

When the insurance provided by this endorsement applies, Definition M. in the policy is deleted and replaced with the following:

M. "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages; or, in the case of a "foreign entity occurrence", such sums paid by a "foreign entity" or which a "foreign entity" is legally liable to pay and for which the "foreign entity" makes a claim for reimbursement from the "First Named Insured".

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign entity" means an organization that would be an "insured" under Section II.A.2. of the policy but for the fact that its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", property damage" or "personal and advertising injury" is located in a jurisdiction where we are not licensed.

"Foreign entity occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign entity" taking place in or causing "bodily injury", "property damage" "personal and advertising injury" in a jurisdiction where we are not licensed.

"Ownership interest" means the percentage ownership interest that the "first named insured" in the "foreign entity", as set out in the Schedule in this endorsement or listed in a separate endorsement.

All other terms and conditions of the policy remain unchanged.

_____
                                    Authorized Agent

# INDUSTRIAL AID AIRCRAFT ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **16** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.   LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$500,000,000 Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned by or rented or loaned to any "insured".  Use includes operation and "loading and unloading").

II.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV.   Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance"

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses"

V.   For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.   Aircraft
This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI.   For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1.   attorney's fees and all other investigation, loss adjustment and litigation expenses;
2.   premiums on bonds to release attachments;
3.   premiums on appeal bonds required by law to appeal any claim or "suit";
4.   costs taxed against the "insured" in any claim or "suit";
5.   pre-judgment interest awarded against the "insured"; and
6.   interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used solely for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL
## (with Insureds Retained Limit)

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **17** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1. To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2. To any "loss", cost or expense arising out of any:

    a. Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. Is both unexpected and unintended from the standpoint of the "insured";

2. Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3. Is caused:

    a. Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

    b. Or arises out of "your product" included in the "products-completed operations hazard"; or

© 2009

c.  By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (1)  Is at or from any:

      (a)  Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

      (b)  Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

         And

   (2)  Is known by any "insured" within <u>twenty</u> (20) days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

   (3)  Is reported to us within <u>eighty</u> (80) days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1.  Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2.  Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind.  Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not.  Waste means any substance that:

   a.  Is left over, or no longer in use, or discarded;

   b.  Is to be reclaimed or recycled, or reconditioned; or

   c.  Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to $<u>5,000,000</u>.

All other terms and conditions of the policy remain unchanged.

_____
                               Authorized Representative

# TRAILING RETENTION ENDORSEMENT

| Named Insured **McKesson Corporation** | | | Endorsement Number **18** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24910179** | Policy Period **07/01/2010 to 07/01/2011** | Effective Date of Endorsement **07/01/2010** |
| Issued By (Name of Insurance Company) **ACE Property And Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

**SCHEDULE**

Trailing Retention:          $ <u>500,000</u>          Each Occurrence

Aggregate Trailing Retention:     $ <u>Not Applicable</u>

**Section IV. LIMITS OF INSURANCE** is amended as follows:

With respect to the application of part E. of Section IV., LIMITS OF INSURANCE, that relates to the reduction or exhaustion of the aggregate limits of liability under any "retained limit" by reason of "loss" paid thereunder, this policy is amended as follows:

A.  If the aggregate limits of liability under any "retained limit" are reduced or exhausted solely by reason of "loss" paid thereunder arising out of "bodily injury," "personal and advertising injury," or "property damage" which takes place during our "policy period," then this policy shall:

1.  In the event of reduction, pay the excess of the reduced underlying limit; but only in excess of the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

2.  In the event of exhaustion continue in force, but only for any excess above the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

**Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Part A is amended to read as follows:

1.  With respect to any "occurrence" covered by the "retained limit" listed in the schedule of "retained limit" or any "other insurance" to which this policy applies, whether the aggregate limit of said "retained limit" or "other insurance" is exhausted or not, we shall not be called upon to assume charge of the investigation, settlement or defense of any "suit" brought against the "insured," but we shall have the right and be given the opportunity to be associated in the defense and trial of any "suits" relative to any "occurrence" which, in our opinion, may create liability on the part of us under the terms of the policy.

2.  With respect to any "occurrence" not covered by the "retained limit" or any "other insurance" but covered by the terms and conditions of this policy, we shall defend such "suit" against the "insured" seeking damages on account of "bodily injury," "personal and advertising injury," or "property damage" and we may make such investigation and effect settlement of any "suit" so defended.  Provided, however, we shall have no obligation to defend until the "insured" losses have exceeded the "trailing retention" amount set out in the Schedule above.

Furthermore, we shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

**Section VII. DEFINITIONS**, is amended as follows:

The following Definitions are added:

"Trailing retention" means the amount shown in the Schedule above, which is the amount in excess of the reduced or exhausted limit of "retained limit" you will pay in the settlement of any claim or "suit" to which this policy applies.  Our policy does not apply until you have paid the "trailing retention."

"Aggregate trailing retention" means the amount shown in the Schedule above which is the most you will pay for the sum of all "trailing retention" amounts.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# NAMED INSURED ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **19** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

| McKesson Corporation |
|---|
| 3071406 Nova Scotia Company |
| 3087601 Nova Scotia Company |
| A.L.I. Holdings LLC |
| A.L.I. Technologies (Deutschland) GmbH |
| A.L.I. Technologies (Europe) B.V. |
| Beldere Corporation* |
| California Golden State Finance Company |
| Cancer Clinics of Excellence LLC (McKesson ownership is 27.5%) |
| CGSF Funding Corporation |
| City Properties, S.A. (20%)* |
| Clinique Sante Corporation |
| CPG Industries, Inc. |
| Crocker Plaza Company |
| Cypress Medical Products LLC |
| D&K Healthcare Resources LLC |
| D&K Pharmacy Solutions, Inc. |
| Diversified Healthcare, LLC |
| Edwards Medical Supply, Inc. |
| FAR-SUR |
| Fastpro International, Inc. |
| Fitness2Live (UK) Limited |
| Fitness2Live Pty Limited |
| Foremost de Venezuela, S.A. (Forvensa) (40% owned by McKesson Corp., 60% by City Property)* |
| Foremost Iran Corporation* |
| Foremost Shir, Inc.* |
| Foremost Tehran, Inc.* |
| Golden State Corporate Services LLC |

| |
|---|
| Golden State Insurance Company Limited |
| HBOC Medical Ltd. * |
| Health Mart Systems, Inc. |
| Health Nexus LLC (McKesson owns 34.039%) |
| HF Land Company |
| Intercal, Inc. (15% owned by McKesson Corp.) |
| Jaron, Inc. |
| Jewett Drug LLC |
| KWS & P, Inc. |
| KWS & P/SFA, Inc. |
| McKesson (Shanghai) Trading Co., Ltd. |
| McKesson Asia-Pacific Pty Limited |
| McKesson Automation Canada Corporation |
| McKesson Automation Inc. |
| McKesson Automation Systems Inc. |
| McKesson Canada Corporation*** |
| McKesson Canada Support Services Corporation |
| McKesson Capital Funding Corporation |
| McKesson Capital LLC |
| McKesson Central Fill LLC |
| McKesson China Holdings S.a.r.l. |
| McKesson Financial Holdings II Limited |
| McKesson Financial Holdings Limited |
| McKesson Foundation Inc. |
| McKesson Funding Company of Canada |
| McKesson Health Solutions Holdings LLC |
| McKesson Health Solutions LLC |
| McKesson Health Solutions Puerto Rico Inc. |
| McKesson Health Solutions Texas Inc. |
| McKesson High Volume Solutions Inc. |
| McKesson Information Solutions Canada Company |
| McKesson Information Solutions Capital S.a.rl. |
| McKesson Information Solutions Finance S.a.r.l. |
| McKesson Information Solutions France SAS |
| McKesson Information Solutions Holdings France S.a.r.l. |
| McKesson Information Solutions Holdings I SRL*** |
| McKesson Information Solutions Holdings S.a.r.l. |
| McKesson Information Solutions I SRL*** |
| McKesson Information Solutions Netherlands B.V. |
| McKesson Information Solutions Sweden AB |
| McKesson Information Solutions UK Limited |
| McKesson International Capital S.a.r.l. |
| McKesson International Finance S.a.r.l. |
| McKesson International Holdings II S.a.r.l. |
| McKesson International Holdings III S.a.r.l. |

| |
|---|
| McKesson International Holdings IV S.à.r.l. |
| McKesson International Holdings Limited |
| McKesson International Holdings LLC |
| McKesson International Holdings S.a.r.l. |
| McKesson International Holdings SRL*** |
| McKesson International Holdings V S.a.r.l. |
| McKesson International Holdings VII S.à.r.l. |
| McKesson International LLC |
| McKesson International Netherlands B.V.* |
| McKesson International Netherlands II B.V.* |
| McKesson International S.à.r.l. |
| McKesson International SRL*** |
| McKesson International Sweden I AB |
| McKesson International Sweden II AB |
| McKesson International Sweden III AB |
| McKesson International Topholdings S.a.r.l. |
| McKesson Ireland Limited |
| McKesson Israel Ltd. |
| McKesson Medical Imaging Company |
| McKesson Medical-Surgical FDT Inc. |
| McKesson Medical-Surgical Holdings Inc. |
| McKesson Medical-Surgical Inc. |
| McKesson Medical-Surgical International Limited |
| McKesson Medical-Surgical Medimart Inc. |
| McKesson Medical-Surgical Minnesota Inc. |
| McKesson Medical-Surgical Minnesota Supply Inc. |
| McKesson Nederland B.V. |
| McKesson New Zealand Limited |
| McKesson Pharmaceutical Holdings LLC |
| McKesson Pharmacy Optimization LLC |
| McKesson Pharmacy Systems Canada ULC (formerly NDCHealth Pharmacy Systems and Services ULC) |
| McKesson Pharmacy Systems LLC |
| McKesson Plasma and Biologics LLC |
| McKesson Property Company, Inc. |
| McKesson Specialty Arizona Inc. |
| McKesson Specialty Care Distribution Corporation |
| McKesson Specialty Care Distribution Joint Venture L.P.**** |
| McKesson Specialty Corporation |
| McKesson Specialty Distribution LLC |
| McKesson Specialty Holdings LLC |
| McKesson Specialty Prescription Services (B.C.) Corporation |
| McKesson Specialty Prescription Services Corporation |
| McKesson Technologies Inc.(formerly named Per-Se Technologies Inc.) |
| McKesson Transportation Systems, Inc. |
| McQueary Bros. Drug Company LLC |

| |
|---|
| Medcon Systems (1993)* |
| Medcon UK Limited |
| Medical & Vaccine Products, Inc. |
| Medical Imaging SRL |
| Moore Medical LLC |
| MSA Products LLC |
| myhca, inc. |
| Nadro S.A. de C.V.*** |
| Nadro Services, S. de R.L. de C.V. |
| National Oncology Alliance, Inc. |
| NDCHealth Corporation |
| NDCHealth Pharmacy Systems and Services, Inc. |
| Northstar Healthcare Holdings Limited |
| Northstar Healthcare Limited |
| Northstar Rx LLC |
| Oncology Holdings II, Inc. |
| Oncology Holdings, Inc. |
| Oncology Therapeutics Network Corporation |
| OnMark, Inc. |
| OTN Generics, Inc. |
| OTN Participant, Inc. |
| Parata Systems, LLC (owned 39.06%) |
| Per-Se Technologies Canada, Inc.* |
| Pharmessor Group Corporation |
| Podiatry Online, Inc. |
| Proventy |
| PST Services, Inc. |
| Purchasing Alliance for Clinical Therapeutics, LLC |
| S.K.U., Inc. (50%)** |
| San Bruno Mountain Ltd. (McKesson ownership is 5%)* |
| Sterling Medical Services, LLC |
| Strategic Health Alliance II, Inc. |
| Strategic Health Alliance Management Corp. |
| Titus Home Health Care LLC |
| VC Services, Inc. |
| Visitaction Associates (Mckesson ownership 50%)* |
| Walsh Distribution, LLC |
| Walsh Healthcare Solutions LLC |
| Zee Medical Canada Corporation |
| Zee Medical, Inc. |

_____

Authorized Agent

# JOINT VENTURE

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **20** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**UMBRELLA LIABILITY POLICY**

It is hereby understood and agreed that in the event of any "occurrence" caused by or arising out of any Joint Venture, Co-Venture, Joint Lease, Joint Operating Agreement, Partnership or Limited Liability Company [hereinafter Joint Venture] in which the "insured" has an interest, the Limits of Insurance under our policy shall be limited to the total liability coverage afforded the "insured" by this policy.

It is further agreed that the Limits if Insurance of the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture and our liability shall be excess of the sum of

      1.  The limits of underlying "retained limits", and
      2.  The limits of any "other insurance".

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

# MANUFACTURE OF DRUGS EXCLUSION

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**21** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24910179** | Policy Period<br>**07/01/2010 - 07/01/2011** | Effective Date of Endorsement<br>**07/01/2010** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section V. EXCLUSIONS is amended to include the following additional exclusion.

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling of drugs.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

CC-1E15

# ANNUAL PERIOD EXTENSION - NATURAL DISASTER OR OTHER CATASTROPHE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **22** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

In the event of a natural disaster or other catastrophe that prevents all written, telephonic and electronic communication between us and the Named Insured at the expiration of the "policy period", the "policy period" will automatically be extended until the earlier of the two following times:

1. thirty (30) calendar days from the original expiration date of such "policy period"; or
2. fourteen (14) calendar days after written, telephonic or electronic communication between us and the Named Insured is once again possible.

The additional premium for such extension will be calculated on a pro-rata basis.  Such extension will be cancelled automatically retroactive to its inception if the additional premium or proof of payment thereof is not received by us within thirty (30) calendar days following the earlier of 1. or 2. above.

Nothing in this endorsement will operate to increase or reinstate the Limits of Liability as stated in the Declarations.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# RETAINED LIMIT AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **23** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1. The preamble in the policy is deleted and replaced with the following:

   Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

   Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

   Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS**.

   We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2. Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

   A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

      1. When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
      2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy.  Any such payment we make shall reduce the Limits of Insurance.  Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

3. Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

   E. If the applicable "retained limits" listed on the Schedule of Retained Limits have been:
      1. Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

      2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4. Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5. Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

   A. **Appeals**

   In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

   C. **Bankruptcy**

   Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy.  This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

   I. **Maintenance of "Underlying Insurance"** is deleted.

   N. **Transfer of Rights of Recovery Against Others to Us**

      3. If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6. Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

   P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

   V. "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit | |
| --- | --- | --- |
| General  Liability | $5,000,000 | Each Occurrence |
| | $7,500,000 | General Aggregate |
| Products Liability | $5,000,000 | Each Occurrence |
| | $5,000,000 | Aggregate |
| Auto Liability | $5,000,000 | Each Occurrence |

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# PERSONAL INJURY DEFINITION AMENDED TO INCLUDE DISCRIMINATION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **24** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII, DEFINITIONS, Part R. "Personal and advertising injury" is deleted and replaced with the following:

R.   "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1.   False arrest, detention or imprisonment;
2.   Malicious prosecution;
3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5.   Oral or written publication, in any manner, of material that violates a person's right of privacy;
6.   Discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only is such discrimination or humiliation is:
     a.   Not intentionally committed by the "insured,"
     b.   Not committed by, at the direction of, or with the knowledge of you and/or any of your executive officers or directors,
     c.   Not directly or indirectly related to the employment of the person or persons by you, and
     d.   Not in violation of any provision(s) of the Americans with Disabilities Act (including but not limited to any amendments or revisions thereto and any rules or regulation promulgated thereunder) or any similar common or statutory law,
7.   The sue of another's advertising idea in your "advertisement," or
8.   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

CC1E15

# NEWLY ACQUIRED ENTITY ENDORSEMENT
## [Revenue and Timeframe Parameters]

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **25** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION II, WHO IS AN INSURED**, Section B.5. is deleted and replaced with the following:

5.      Any organization(s) you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured; subject to the following:

a.      at the time of acquisition, inception of control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $500,000,000 and (b)  the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of control or formation, with no additional premium charge, provided that you notify us within 90 days of such acquisition, inception of control or formation.

b.      If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do exceed $500,000,000 or (b)  the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 90th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier.

c.      For any organization covered by paragraph b. above, coverage will expire on the 90th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier, unless, within the 90 day period, you request us to include such organization as a Named Insured, and we agree to do so.

d.      We may, at our option, make an additional premium charge for any organization that you acquire, take control of or form during the "policy period," when that organization is not automatically covered in 5 .a. above.

e.      Coverage does not apply to any liability arising out of an "occurrence" or offense committed before you acquire, take control of or form any organization covered by this endorsement; and

Notwithstanding anything to the contrary contained above, coverage does not apply to any liability arising out of the conduct of any current, past, or newly acquired or formed partnership or joint venture that is not stated in the Declarations of this policy as a Named Insured.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

CC-1E15

# COVERAGE TERRITORY DEFINITION AMENDMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **26** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**
**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section **VII.**, **DEFINITIONS**, part D. "Coverage territory" is deleted and replaced with the following:

D.  "Coverage territory" means anywhere in the world.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

CC-1E15

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **27** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $30,952.

_____
Authorized Agent

Includes copyrighted material of Insurance Services office, Inc., with its permission

TRIA11b (1/08)

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **28** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.   The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C.  In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

1.  The Limits of Insurance of the Declarations is amended to include:

   "Certified act of terrorism retained limit" $5,000,000.

2.  "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance.  "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

3.  Solely with respect to this endorsement, Section III., Defense Provisions and Supplement Payments is amended as follows:

   a.  With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism".  However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.  We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".  Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".  We may make such investigation as we require and effect settlement of any "suit" so defended.

c.  We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# CALIFORNIA CHANGES - CANCELLATION, NONRENEWAL AND STATE REQUIRED CONDITIONS

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **29** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**EXCESS LIABILITY POLICY**
**EXCESS LIABILITY CATASTROPHE POLICY**

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

   **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

   **(b)** Continuation of the policy coverage would:

      **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

      **(ii)** Threaten our solvency.

  **(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

  **(8)** A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

  **(9)** Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

 **(10)** A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

 **b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

  **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

  **(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

_____

Authorized Agent

# AMENDMENT OF WHO IS AN INSURED

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **30** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 - 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section II WHO IS AN INSURED  Paragraph B. is hereby amended to add the following:

7. Any person or organization you become obligated to include as an additional "insured" under the policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" arising out of your operations or premises owned by or rented to you.

However, the insurance provided by this endorsement will not be broader than the coverage provided by this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## PERMISSIVE USE OF AUTOMOBILE

| Named Insured: | Endorsement Number: |
|---|---|
| McKesson Corporation | 31 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G24910179 | 07/01/2010 – 07/01/2011 | 07/01/2010 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property And Casualty Insurance Company |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
## COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION II.  WHO IS AN INSURED** Paragraph B.  is amended to include the following:

7.  Any person while using with your permission a covered "auto" you own, hire or borrow except:

   a.  **The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a trailer connected to a covered "auto" you own.**

   b.  **Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.**

   c.  **Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.**

   d.  **Anyone other than your "employees", partners (if you are a partnership) , members (if you are a limited liability company) , or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".**

   e.  **A partner (if you are a partnership) , or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.**

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# AMENDATORY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | 32 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 – 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

It is understood and agreed that this policy is amended per the following:

- Endorsement 18 – Trailing Retention Endorsement is deleted and replaced with Endorsement 33 – Trailing Retention Endorsement
- Endorsement 34 – Non-Contributory Endorsement for Additional Insureds is added
- Revised Schedule of Endorsements
- Revised Schedule of Underlying

All other terms and conditions of this policy remain unchanged.

_Clyrman_

Authorized Agent

CC1E15

# Trailing Retention Endorsement
# (No Underlying Insurance)

| Named Insured: | | | Endorsement Number: |
|---|---|---|---|
| McKesson Corporation | | | 33 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XOO | G24910179 | 07/01/2010 – 07/01/2011 | 07/01/2010 |
| Issued By (Name of Insurance Company) | | | |
| ACE Property And Casualty Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

### SCHEDULE

Trailing Retention – Products & Completed Operations:  $ 500,000        Each Occurrence

Aggregate Trailing Retention:     $ Not Applicable

**Section IV. LIMITS OF INSURANCE** is amended as follows:

With respect to the application of part E. of Section IV., LIMITS OF INSURANCE, that relates to the reduction or exhaustion of the aggregate limits of liability under any "retained limit" by reason of "loss" paid thereunder, this policy is amended as follows:

A.  If the aggregate limits of liability under any "retained limit" are reduced or exhausted solely by reason of "loss" paid thereunder arising out of "bodily injury," "personal and advertising injury," or "property damage" which takes place during our "policy period," then this policy shall:

1.  In the event of reduction, pay the excess of the reduced underlying limit; but only in excess of the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

2.  In the event of exhaustion continue in force, but only for any excess above the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

**Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Part A is amended to read as follows:

1.  With respect to any "occurrence" covered by the "retained limit" listed in the schedule of "retained limit" or any "other insurance" to which this policy applies, whether the aggregate limit of said "retained limit" or "other insurance" is exhausted or not, we shall not be called upon to assume charge of the investigation, settlement or defense of any "suit" brought against the "insured," but we shall have the right and be given the opportunity to be associated in the defense and trial of any "suits" relative to any "occurrence" which, in our opinion, may create liability on the part of us under the terms of the policy.

2.  With respect to any "occurrence" not covered by the "retained limit" or any "other insurance" but covered by the terms and conditions of this policy, we shall defend such "suit" against the "insured" seeking damages on account of "bodily injury," "personal and advertising injury," or "property damage" and we may make such investigation and effect settlement of any "suit" so defended. Provided, however, we shall have no obligation to defend until the "insured" losses have exceeded the "trailing retention" amount set out in the Schedule above.

CC1E15                                                                                    Page 1 of 2

Furthermore, we shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

**Section VII. DEFINITIONS**, is amended as follows:

The following Definitions are added:

"Trailing retention" means the amount shown in the Schedule above, which is the amount in excess of the reduced or exhausted limit of "retained limit" you will pay in the settlement of any claim or "suit" to which this policy applies.  Our policy does not apply until you have paid the "trailing retention."

"Aggregate trailing retention" means the amount shown in the Schedule above which is the most you will pay for the sum of all "trailing retention" amounts.

All other terms and conditions of this policy remain unchanged.

_Authorized Agent_

CC1E15                                                                                          Page 2 of 2

## Non-Contributory Endorsement for Additional Insureds

| Named Insured: | | | Endorsement Number: |
|---|---|---|---|
| McKesson Corporation | | | 34 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XOO | G24910179 | 07/01/2010 – 07/01/2011 | 07/01/2010 |
| **Issued By (Name of Insurance Company)**<br>ACE Property And Casualty Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

**Schedule**

Organization                                             Additional Insured Endorsement

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to **Section VI. CONDITIONS Paragraph J. Other Insurance**

If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured.  Your "retained limit" still applies to such "loss".

All other terms and conditions of this policy remain unchanged.

*Clyrman*
_____
Authorized Agent

# AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 35 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 – 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is understood and agreed that this policy is amended per the following:

- Endorsement 19 – Named Insured Endorsement is deleted and replaced with Endorsement 36 – Named Insured Endorsement

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

CC1E15

# NAMED INSURED ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **36** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 to 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

| |
|---|
| **McKesson Corporation** |
| McKesson Specialty Prescription Services (Atlantic) Corporation |
| 3087601 Nova Scotia Company |
| A.L.I. Holdings LLC |
| A.L.I. Technologies (Deutschland) GmbH |
| A.L.I. Technologies (Europe) B.V. |
| Beldere Corporation* |
| California Golden State Finance Company |
| Cancer Clinics of Excellence LLC (McKesson ownership is 27.5%) |
| CGSF Funding Corporation |
| City Properties, S.A. (20%)* |
| Clinique Sante Corporation |
| CPG Industries, Inc. |
| Crocker Plaza Company |
| Cypress Medical Products LLC |
| D&K Healthcare Resources LLC |
| D&K Pharmacy Solutions, Inc. |
| Diversified Healthcare, LLC |
| Edwards Medical Supply, Inc. |
| FAR-SUR |
| Fastpro International, Inc. |
| Fitness2Live (UK) Limited |
| Fitness2Live Pty Limited |
| Foremost de Venezuela, S.A. (Forvensa) (40% owned by McKesson Corp., 60% by City Property)* |
| Foremost Iran Corporation* |
| Foremost Shir, Inc.* |
| Foremost Tehran, Inc.* |
| Golden State Corporate Services LLC |

XS-24545 (03/08)

| |
|---|
| Golden State Insurance Company Limited |
| HBOC Medical Ltd. * |
| Health Mart Systems, Inc. |
| Health Nexus LLC (McKesson owns 34.039%) |
| HF Land Company |
| Intercal, Inc. (15% owned by McKesson Corp.) |
| Jaron, Inc. |
| Jewett Drug LLC |
| KWS & P, Inc. |
| KWS & P/SFA, Inc. |
| McKesson (Shanghai) Trading Co., Ltd. |
| McKesson Asia-Pacific Pty Limited |
| McKesson Automation Canada Corporation |
| McKesson Automation Inc. |
| McKesson Automation Systems Inc. |
| McKesson Canada Corporation*** |
| McKesson Canada Support Services Corporation |
| McKesson Capital Funding Corporation |
| McKesson Capital LLC |
| McKesson Central Fill LLC |
| McKesson China Holdings S.a.r.l. |
| McKesson Financial Holdings II Limited |
| McKesson Financial Holdings Limited |
| McKesson Foundation Inc. |
| McKesson Funding Company of Canada |
| McKesson Health Solutions Holdings LLC |
| McKesson Health Solutions LLC |
| McKesson Health Solutions Puerto Rico Inc. |
| McKesson Health Solutions Texas Inc. |
| McKesson High Volume Solutions Inc. |
| McKesson Information Solutions Canada Company |
| McKesson Information Solutions Capital S.a.rl. |
| McKesson Information Solutions Finance S.a.r.l. |
| McKesson Information Solutions France SAS |
| McKesson Information Solutions Holdings France S.a.r.l. |
| McKesson Information Solutions Holdings I SRL*** |
| McKesson Information Solutions Holdings S.a.r.l. |
| McKesson Information Solutions I SRL*** |
| McKesson Information Solutions Netherlands B.V. |
| McKesson Information Solutions Sweden AB |
| McKesson Information Solutions UK Limited |
| McKesson International Capital S.a.r.l. |
| McKesson International Finance S.a.r.l. |
| McKesson International Holdings II S.a.r.l. |
| McKesson International Holdings III S.a.r.l. |

| |
|---|
| McKesson International Holdings IV S.à.r.l. |
| McKesson International Holdings Limited |
| McKesson International Holdings LLC |
| McKesson International Holdings S.a.r.l. |
| McKesson International Holdings SRL*** |
| McKesson International Holdings V S.a.r.l. |
| McKesson International Holdings VII S.à.r.l. |
| McKesson International LLC |
| McKesson International Netherlands B.V.* |
| McKesson International Netherlands II B.V.* |
| McKesson International S.à.r.l. |
| McKesson International SRL*** |
| McKesson International Sweden I AB |
| McKesson International Sweden II AB |
| McKesson International Sweden III AB |
| McKesson International Topholdings S.a.r.l. |
| McKesson Ireland Limited |
| McKesson Israel Ltd. |
| McKesson Medical Imaging Company |
| McKesson Medical-Surgical FDT Inc. |
| McKesson Medical-Surgical Holdings Inc. |
| McKesson Medical-Surgical Inc. |
| McKesson Medical-Surgical International Limited |
| McKesson Medical-Surgical Medimart Inc. |
| McKesson Medical-Surgical Minnesota Inc. |
| McKesson Medical-Surgical Minnesota Supply Inc. |
| McKesson Nederland B.V. |
| McKesson New Zealand Limited |
| McKesson Pharmaceutical Holdings LLC |
| McKesson Pharmacy Optimization LLC |
| McKesson Pharmacy Systems Canada ULC (formerly NDCHealth Pharmacy Systems and Services ULC) |
| McKesson Pharmacy Systems LLC |
| McKesson Plasma and Biologics LLC |
| McKesson Property Company, Inc. |
| McKesson Specialty Arizona Inc. |
| McKesson Specialty Care Distribution Corporation |
| McKesson Specialty Care Distribution Joint Venture L.P.**** |
| McKesson Specialty Corporation |
| McKesson Specialty Distribution LLC |
| McKesson Specialty Holdings LLC |
| McKesson Specialty Prescription Services (B.C.) Corporation |
| McKesson Specialty Prescription Services Corporation |
| McKesson Technologies Inc.(formerly named Per-Se Technologies Inc.) |
| McKesson Transportation Systems, Inc. |
| McQueary Bros. Drug Company LLC |

| |
|---|
| Medcon Systems (1993)* |
| Medcon UK Limited |
| Medical & Vaccine Products, Inc. |
| Medical Imaging SRL |
| Moore Medical LLC |
| MSA Products LLC |
| myhca, inc. |
| Nadro S.A. de C.V.*** |
| Nadro Services, S. de R.L. de C.V. |
| National Oncology Alliance, Inc. |
| NDCHealth Corporation |
| NDCHealth Pharmacy Systems and Services, Inc. |
| Northstar Healthcare Holdings Limited |
| Northstar Healthcare Limited |
| Northstar Rx LLC |
| Oncology Holdings II, Inc. |
| Oncology Holdings, Inc. |
| Oncology Therapeutics Network Corporation |
| OnMark, Inc. |
| OTN Generics, Inc. |
| OTN Participant, Inc. |
| Parata Systems, LLC (owned 39.06%) |
| Per-Se Technologies Canada, Inc.* |
| Pharmessor Group Corporation |
| Podiatry Online, Inc. |
| Proventy |
| PST Services, Inc. |
| Purchasing Alliance for Clinical Therapeutics, LLC |
| S.K.U., Inc. (50%)** |
| San Bruno Mountain Ltd. (McKesson ownership is 5%)* |
| Sterling Medical Services, LLC |
| Strategic Health Alliance II, Inc. |
| Strategic Health Alliance Management Corp. |
| Titus Home Health Care LLC |
| VC Services, Inc. |
| Visitaction Associates (Mckesson ownership 50%)* |
| Walsh Distribution, LLC |
| Walsh Healthcare Solutions LLC |
| Zee Medical Canada Corporation |
| Zee Medical, Inc. |

_C. German_

Authorized Agent

# AMENDATORY ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **McKesson Corporation** | | 37 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 – 07/01/2011** | **07/01/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

It is understood and agreed that this policy is amended per the following:

- Endorsement 31 – Permissive Use Of Automobile is deleted and replaced with Endorsement 38 – Automobile Liability Limitation Endorsement
- Endorsement 34 – Non-Contributory Endorsement For Additional Insureds is deleted and replaced with Endorsement 39 – Non-Contributory Endorsement For Additional Insureds

All other terms and conditions of this policy remain unchanged.

_Clyman_

———————————————
Authorized Agent

CC1E15

## Automobile Liability Limitation Endorsement

| Named Insured: | | | Endorsement Number: |
|---|---|---|---|
| McKesson Corporation | | | 38 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XOO | G24910179 | 07/01/2010 – 07/01/2011 | 07/01/2010 |
| **Issued By (Name of Insurance Company)**<br>ACE Property And Casualty Insurance Company | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement.  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy #MWTB20990 and Old Republic Insurance Company of Canada Policy #CTB20990 subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy #MWTB20990 and Old Republic Insurance Company of Canada Policy #CTB20990.

All other terms and conditions of this policy remain unchanged.

*Cyrmano*

_____
Authorized Agent

## Non-Contributory Endorsement for Additional Insureds

| Named Insured: | | | Endorsement Number: |
|---|---|---|---|
| McKesson Corporation | | | 39 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XOO | G24910179 | 07/01/2010 – 07/01/2011 | 07/01/2010 |
| **Issued By (Name of Insurance Company)** ACE Property And Casualty Insurance Company | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

For any person or organization qualifying as an "insured" under Section II WHO IS AN INSURED, Paragraph B.7. (as added by endorsement to this policy) the following is added to **Section VI. CONDITIONS Paragraph J. Other Insurance**

If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured.  Your "retained limit" still applies to such "loss" and any payments you receive from "other insurance" will not erode your "retained limit".

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | 40 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24910179** | **07/01/2010 – 07/01/2011** | **11/16/2010** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

It is understood and agreed that this policy is amended per the following:

- Endorsement 41 – Clinical Trials Exclusion Endorsement With Exception added.

All other terms and conditions of this policy remain unchanged.

_Authorized Agent_

CC1E15

## CLINICAL TRIALS EXCLUSION ENDORSEMENT WITH EXCEPTION

| Named Insured: | | | Endorsement Number: |
|---|---|---|---|
| McKesson Corporation | | | 41 |
| **Policy Symbol** | **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| XOO | G24910179 | 07/01/2010 – 07/01/2011 | 11/16/2010 |
| **Issued By (Name of Insurance Company)** | | | |
| ACE Property And Casualty Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial".  However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this policy remain unchanged.


_____
Authorized Agent

# EXHIBIT C



**ace group**

# Declarations
# ACE Umbrella Plus<sup>sm</sup>
# Commercial Umbrella Liability Policy

| Policy Symbol: XOO | Previous Policy Symbol: XOO |
|---|---|
| Policy Number: G24903126 | Previous Policy Number: G24910179 |

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW

ACE Property And Casualty Insurance Company

| Named Insured and Address | Producer Name and Address |
|---|---|
| McKesson Corporation<br>One Post St., 34th Floor<br>San Francisco, CA 94104 | Marsh Risk & Insurance Services<br>345 California Street, Suite 1300<br>San Francisco, CA 94104<br><br>PRODUCER CODE:  155013 |

| Policy Period:   From 07/01/2011            to 07/01/2012 | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |
|---|---|

## Limits of Insurance

| $ 25,000,000 | Each Occurrence | | |
|---|---|---|---|
| $ 25,000,000 | General Aggregate | | |
| $ 25,000,000 | Products Completed-Operations Aggregate | $ 25,000 | Self-Insured Retention |

## Annual Premium

| $ 702,864 | Premium | $ 33,470 | Terrorism Premium included in Annual Premium |
|---|---|---|---|
| $ 702,864 | Premium, including all Surcharges and Assessments | | |

## Policy Period Premium

| $ 702,864 | Premium | $ 33,470 | Terrorism Premium included in Annual Premium |
|---|---|---|---|
| $ 702,864 | Premium, including all Surcharges and Assessments | | |

## Schedule of Underlying Insurance

Refer to the attached Schedule of Underlying Insurance, which forms a part of this Policy's Declarations.

## Endorsements and Forms

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.

# SCHEDULE OF ENDORSEMENTS

| Named Insured | | | |
|---|---|---|---|
| **McKesson Corporation** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

| | |
|---|---|
| XS9U57b (08/09) | Schedule of Underlying Insurance |
| XS-20835 (08/06) | Commercial Umbrella Liability Policy |
| ALL-20887 (10/06) | ACE Producer Compensation Practices & Policies |
| XS-28500 (10/09) | Ace Groups Specialty Claims Loss Notification Form |
| IL P 001 (01/04) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| XS-22552 (06/07) | Catastrophe Management Policyholder Notice |
| EXFL64 (10/08) | Florida Uninsured Motorists' Coverage |
| ILN151 (08 07) | Wisconsin Underinsured Vehicle Coverage Policy Disclosure Statement |
| ILU018 (09/03) | West Virginia Excess Uninsured/Underinsured Important Notice |
| CC-1K11e (02/06) | Signatures |
| XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| CC-1E15 | Cancellation Amendatory Endorsement |
| CC-1E15 | Clinical Trial Exclusion Endorsement |
| XS-23637 (01/2008) | Foreign Liability Limitation |
| XS-20753 (08/06) | Knowledge Of Occurrence |
| XS-20755 (08/06) | Non-Concurrency Endorsement(Recognizes Non-Concurrency) |
| XS-20756 (08/06) | Notice Of Occurrence |
| XS-21580 (01/07) | Professional Services Liability Exclusion - Exception For Resulting Bodily Injury And Property Damage |
| XS-25254 (02/09) | War Exclusion |
| XS-23501 (04/08) | Unintentional Failure to Disclose |
| XS-23634 (01/08) | Fellow Employee Exclusion Deleted |
| XS-26426 (02/09) | Employee Benefit Plan Limitation (Claims Made) |
| XS-26428 (02/09) | Incidental Medical Malpractice Endorsement |
| XS-28727a (01/11) | Foreign Loss Indemnity Endorsement |
| XS26429a (08/09) | Industrial Aid Aircraft Endorsement |
| XS20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and Named Peril (with Insureds Retained Limit) |
| CC-1E15 | Trailing Retention Endorsement |
| XS-24545 (03/08) | Named Insured Endorsement |
| CC-1E15 | Joint Venture |
| CC-1E15 | Manufacture of Drugs Exclusion |
| CC-1E15 | Annual Period Extension - Natural Disaster Or Other Catastrophe |
| CC-1E15 | Retained Limit Amendatory Endorsement |
| CC-1E15 | Personal Injury Definition Amended To Include Discrimination |

# SCHEDULE OF ENDORSEMENTS

| Named Insured | | | |
|---|---|---|---|
| **McKesson Corporation** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

| | |
|---|---|
| CC-1E15 | Newly Acquired Entity Endorsement Revenue And Timeframe Parameters |
| CC-1E15 | Coverage Territory Definition Amendment |
| TRIA11b (01/08) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| XS-23669 (01/2008) | Cap On Losses From Certified Acts Of Terrorism |
| XS-1V12a (07/04) | California Changes-Cancellation, Nonrenewal And State Required Conditions |
| CC-1E15 | Amendment Of Who Is An Insured |
| CC-1E15 | Automobile Liability Limitation Endorsement |
| CC-1E15 | Non-Contributory Endorsement for Additional Insureds |
| CC-1E15 | Internal Creation Endorsement |
| CC-1E15 | Amendment of Definition of Bodily Injury |
| CC-1E15 | Amendment of Definition of Insured Contract |



**ace group**

# Schedule of Underlying Insurance

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | G24903126 | 07/01/2011 to 07/01/2012 |

| **General Liability (Canada)** | Limits of Insurance | |
|---|---|---|
| Company: Old Republic Insurance Co. | Each Occurrence | $ 5,000,000 |
| | Aggregate | $ 5,000,000 |
| Policy Number: TBD | Personal Injury | $ 5,000,000 |
| Policy Period: 07/01/2010 to 07/01/2011 | Non-Owned Auto | $ 2,000,000 |

| **General Liability (New York)** | Limits of Insurance | |
|---|---|---|
| Company: Old Republic Insurance Co. | General Aggregate | $ 5,000,000 |
| | Each Occurrence | $ 5,000,000 |
| Policy Number: TBD | | |
| Policy Period: 07/01/2010 to 07/01/2011 | | |

| **Employers Liability** | Limits of Insurance |
|---|---|
| Company: Old Republic Insurance Co. | Bodily Injury by Accident |
| | $ 5,000,000 Each Accident |
| Policy Number: TBD | Bodily Injury By Disease |
| | $ 5,000,000 Each Policy |
| | $ 5,000,000 Each Employee |
| Policy Period: 07/01/2010 to 07/01/2011 | |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.



**ace group**

# Schedule of Underlying Insurance (Continued)

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | G24903126 | 07/01/2011 **to** 07/01/2012 |

| | | Limits of Insurance |
|---|---|---|
| Coverage | Foreign DIC General Liability | |
| Company | Insurance Company of the State of PA | $1,000,000 Occurrence |
| Policy Number | TBD | $2,000,000 Products Completed Operations Aggregate |
| Policy Period | 07/01/2011 to 07/01/2012 | $2,000,000 General Aggregate |
| | | $4,000,000 Master Control Policy Aggregate |
| Coverage | Foreign DIC Employee Benefits Liability | Limits of Insurance |
| Company | Insurance Company of the State of PA | $1,000,000 Aggregate |
| Policy Number | TBD | $1,000,000 Occurrence |
| Policy Period | 07/01/2011 to 07/01/2012 | |
| Coverage | Foreign DIC Automobile Liability | Limits of Insurance |
| Company | Insurance Company of the State of PA | $1,000,000 Occurrence |
| Policy Number | TBD | |
| Policy Period | 07/01/2011 to 07/01/2012 | |
| Coverage | Foreign DIC Employers Liability | Limits of Insurance |
| Company | Insurance Company of the State of PA | $1,000,000 Each Accident |
| Policy Number | TBD | $1,000,000 Each Policy |
| Policy Period | 07/01/2011 to 07/01/2012 | $1,000,000 Each Employee |
| Coverage | Employers Liability - UK | Limits of Insurance |
| Company | AIG UK Limited | £10,000,000 Occurrence |
| Policy Number | TBD | |
| Policy Period | 07/01/2011 to 07/01/2012 | |



**ACE UMBRELLA PLUS**<sup>SM</sup>

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

**I.   INSURING AGREEMENT**

A.  We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or personal and advertising injury" to which this insurance applies.

   1.  This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

      a.  The "bodily injury" or "property damage" is caused by an "occurrence";

      b.  The "bodily injury" or "property damage" occurs during the "policy period"; and

      c.  Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

   2.  This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

B.  "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

C.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   1.  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   2.  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   3.  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II. WHO IS AN INSURED

A. The following are "insureds":

1. The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2. Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3. If you are designated in the Declarations as:

a. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

c. A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

e. A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

a. "Bodily injury" or "personal and advertising injury":

(1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(2) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

(3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

(4) Arising out of his or her providing or failing to provide professional health care services.

b. "Property damage" to property:

(1) Owned, occupied or used by you,

(2) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   b. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

   c. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

   d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6. Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III. DEFENSE AND SUPPLEMENTARY PAYMENTS

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

   1. When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

   2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

   3. When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B. We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C. We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D. If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

   1. All expenses we incur.

   2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4.  The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5.  All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6.  All costs taxed against the "insured" in the "suit".

7.  Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8.  Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E.  Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV. LIMITS OF INSURANCE

A.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made or "suits" brought; or

3.  Persons or organizations making claims or bringing "suits".

B.  The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1.  Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2.  Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C.  The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D.  Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E.  If the applicable limits of "underlying insurance" have been:

1.  Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2.  Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V. EXCLUSIONS

This insurance does not apply to:

### A. Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1. A watercraft while ashore on premises you own or rent; or

2. A watercraft you do not own that is:

    a. Less than 26 feet long; and

    b. Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B. Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C. Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. That the "insured" would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

    a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### E. Damage to Property

"Property damage" to:

1. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3. Property loaned to you;

4. Personal property in the care, custody or control of the "insured";

5. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### F. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

### G. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### H. Electronic Chat Rooms or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

### I. Employer's Liability

"Bodily injury" to:

1. An "employee" of the "insured" arising out of and in the course of:

   a. Employment by the "insured"; or

   b. Performing duties related to the conduct of the "insured's" business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1. Whether the "insured" may be liable as an employer or in any other capacity; and

   2.   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

   1.   To liability assumed by the "insured" under an "insured contract".

   2.   To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

### J.  Employment Practices

."Bodily injury", "property damage" or "personal and advertising injury" arising out of:

   1.   Refusal to employ;

   2.   Termination of employment;

   3.   Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies,   acts or omissions; or

   4.   Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

### K.  Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

### L.  Infringement of Copyright, Patent, Trademark or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### M.  "Insureds" in Media and Internet-Type Businesses

"Personal and advertising injury" committed by an "insured" whose business is:

     1.   Advertising, broadcasting, publishing or telecasting;

     2.   Designing or determining content of web-sites for others; or

     3.   An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VI - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### N.  Liquor Liability

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

   1.   Causing or contributing to the intoxication of any person;

   2.   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### O.  **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

### P.  **Nuclear**

1. To any injury or damage:

   a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting form the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

   a. "Hazardous properties" include radioactive, toxic or explosive properties;

   b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e. "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f. "Nuclear facility" means:

   (1)   Any "nuclear reactor";

   (2)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (3)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

   (4)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

## Q.  **Other "Personal and Advertising Injury"**

1.  "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2.  "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3.  "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4.  Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5.  "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    a. That the "insured" would have in the absence of the contract or agreement; or

    b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

       i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

       ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6.  "Personal and advertising injury" arising out of a breach of contract, except an implied contract use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

   b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (1) Any "insured"; or

      (2) Any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

   e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

   f. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

   g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

   However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

      1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

      2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6. Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a. The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b. The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7. Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a. The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S. **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T. **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U. **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V. **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. This exclusion also applies to communications which are made or allegedly made in violation of the:

    1.    Telephone Consumer Protection Act (TCPA) including any

            Amendment of or addition to such law; or

    2.    The CAN-SPAM Act of 2003, including any amendment of

            Or addition to such law; or

    3.    Any statute, ordinance or regulation, other than the TCPA

            Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

## VI. CONDITIONS

A. **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for,in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and intereston that amount of any judgment that does not exceed the applicable Limits of Insurance shown in theDeclarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B. **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us. If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

  4.  No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

## G.  Inspection and Audit

  1.  We will be permitted, but not obligated to inspect the "insured's" property and operations.  Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

  2.  We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

## H.  Legal Action Against Us

  1.  No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

  2.  You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

## I.   Maintenance of "Underlying Insurance"

During the "policy period", you agree:

  1.  To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

  2.  That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

  3.  That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

  4.  That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

  5.  That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

## J.  Other Insurance

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance".  This provision will not apply if the "other insurance" is written to be excess of this policy.

## K.  Premium

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium.  It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

## L.  Separation of "Insureds"

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

  1.  As if each Named Insured were the only Named Insured; and

2.  Separately to each "insured" against whom claim is made or "suit" is brought.

### M. **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

### N. **Transfer of Rights of Recovery Against Others to Us**

1.  If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2.  Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3.  If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

### O. **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

## VII. DEFINITIONS

A.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B.  "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D.  "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E.  "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or independent contractor.

F.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I. "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured

J. "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities

K. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M. "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.   Power cranes, shovels, loaders, diggers or drills; or

    b.   Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.   Cherry pickers and similar devices used to raise or lower workers;

6.  Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a.   Equipment designed primarily for:

        i.   Snow removal;

        ii.   Road maintenance, but not construction or resurfacing; or

        iii.   Street cleaning;

    b.   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O.  "Occurrence" means:

1.  With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2.  With respect to "personal and advertising injury", a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P.  "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q.  "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment;

2.  Malicious prosecution;

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T. "Products-completed operations hazard":

1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   a. Products that are still in your physical possession; or

   b. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      i. When all of the work called for in your contract has been completed

      ii. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

   a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

   b. The existence of tools, uninstalled equipment or abandoned or unused materials.

U. "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V. "Retained limit" means either of the following:

1. The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

X.   "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.   "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.   "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA.   "Your product":

  1.   Means:

    a.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1)   You;

      (2)   Others trading under your name; or

      (3)   A person or organization whose business or assets you have acquired; and

    b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  2.   Includes:

    a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.   The providing of or failure to provide warnings or instructions.

  3.   Does not include vending machines or other property rented to or located for the use of others but not sold.

BB.   "Your work":

  1.   Means:

    a.   Work or operations performed by you or on your behalf; and

    b.   Materials, parts or equipment furnished in connection with such work or operations

  2.   Includes:

    a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    b.   The providing of or failure to provide warnings or instructions.



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the  following toll-free  telephone number: 1-866-512-2862.

ALL-20887 (10/06)



## ACE GROUP SPECIALTY CLAIMS LOSS NOTIFICATION FORM

**Today's Date: 22 June 2010**

**FORWARD BY FAX, MAIL OR E-MAIL TO:**

ACE Excess
P.O. Box 5103
Scranton, PA 18505-0510
Fax No.: (866)635-5687

CasualtyRiskExcessFirstNotice@acegroup.com

**Notice of:** (check all that apply)

☐ **First-Party Claim**       ☐ **Potential Claim**

☐ **Third-Party Claim**       ☐ **Litigation Initiated**

☐ **Other_____**

### Insured's Name & Contact Information

**Company Name:** McKesson Corporation              **Point of Contact:** _____

**Address:** One Post St., 34th Floor
San Francisco  CA 94104

**Phone Number:** _____

### Broker/Agent's Name & Contact Information

**Company Name:** MARSH RISK & INSURANCE SERVICES        **Point of Contact:** Linda Miner

**Address:** 345 CALIFORNIA STREET
SAN FRANCISCO  CA 94104

**Phone Number:** _____

### Policy Information

**Policy Number:** G24903126              **Policy Period:** 07/01/2011- 07/01/2012

**Limits of Liability:** 25,000,000   **per** 25,000,000   **agg**   **Self-Insured Retention/Deductible:** 25,000.00

### Loss Information

**Date of Incident/Claim:** _____   **Location:** _____

**Claimant Name/Address:** _____

**Description of Loss:** _____

_____

_____

_____

Please list all attached or enclosed documentation:   ☐   (check if none provided)

_____

_____

_____

Name of Person Completing This Form: _____   Signature: _____

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

**COMMERCIAL UMBRELLA LIABILITY**
**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully. When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.
- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

  # 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.
- Please be prepared to provide the following information:
  - Caller's name, title and contact telephone number
  - Name of Insured
  - Policy Number
  - A description of the incident
  - Any witnesses
  - Property, Product or Vehicle Information
  - Incident Location
  - Contact Person
  - Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty Insurance Company or one of its insurance company affiliates.

XS-22552   (06/2007)

**FLORIDA UNINSURED MOTORISTS' COVERAGE**

**ace group**

Dear Policyholder:

Under Florida law, *we* must provide Uninsured Motorists' Coverage (including Underinsured Motorists' Coverage) at a limit up to the Bodily Injury Liability limit of *your* policy or $1 million, whichever is less, unless *you* select one of the available options.

Uninsured Motorists' Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of *bodily injury* or death resulting therefrom. Such benefits may include payments for certain *medical expenses*, lost wages, and pain and suffering, subject to limitations and conditions contained in the policy. For the purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the *bodily injury* limits are less than *your* damages. If coverage is selected, coverage will respond on a "Non Stacked" basis. This means that under this form if injury occurs in a vehicle owned or leased by you or any family member who resides with you, this policy will apply only to the extent of coverage (if any) which applies to that vehicle in this policy.

*Your* Uninsured Motorists' Coverage limit options are as follows:

1. *You* can completely reject Uninsured Motorists' Coverage.

2. *You* can choose Uninsured Motorists' Coverage up to the Bodily Injury limit of *your* policy or $1 million, whichever is less.

If *you* wish to choose any of these options, please complete the selection form and send it to *your* agent or broker.

IL N 151 08 07

# WISCONSIN UNDERINSURED VEHICLE COVERAGE POLICY DISCLOSURE STATEMENT

| Policy Number: G24903126 | Policy Effective Date: 07/01/2011 |
|---|---|
| Company: ACE Property And Casualty Insurance Company | Producer:  MARSH RISK & INSURANCE SERVICES |
| Applicant/Named Insured: McKesson Corporation | |

☐ Underinsured motorist coverage may not be purchased under this policy.

☐ Underinsured motorist coverage may be purchased under this policy. You should contact us or your agent if you have any questions regarding underinsured motorist coverage and your options with respect to this coverage.

 © ISO Properties, Inc., 2007

IL U 018 09 03

# WEST VIRGINIA EXCESS UNINSURED/UNDERINSURED IMPORTANT NOTICE

### RETURN ATTACHED FORMS WITHIN THIRTY (30) DAYS

**TO: PROPOSED POLICYHOLDER (APPLICANT)**

**IF YOU DO NOT RETURN THESE FORMS TO YOUR INSURER WITHIN THIRTY (30) DAYS YOU WILL BE PRESUMED TO HAVE REJECTED UNINSURED AND UNDERINSURED MOTOR VEHICLE COVERAGES.**

**OR**

**PRESENT POLICYHOLDER**

**IF YOU DO NOT RETURN THESE FORMS TO YOUR INSURER WITHIN THIRTY (30) DAYS YOUR COVERAGE WILL STAY THE SAME AS IT IS NOW. THIS IS AN OPPORTUNITY TO CHANGE THE COVERAGE YOU PRESENTLY HAVE.**

### A. UNinsured Motor Vehicle Coverage

**The State of West Virginia requires** that you purchase **UNinsured** motor vehicle coverage with limits not less of $20,000 per person, $40,000 per accident for uninsured bodily injury losses, and $10,000 for uninsured property losses under your basic automobile coverage. In your case, you have already done so, and you have opted to purchase excess or umbrella type coverage which is also written to cover automobile liability. Therefore, the law also requires that you be given the opportunity to purchase uninsured motor vehicle coverage in an amount not less than the liability limit or limits selected on the excess or umbrella policy as well.

**UNinsured Motor Vehicle Coverage** may protect you and passengers in your car if you are injured in an accident that was caused by a driver who was at-fault, or an unidentified driver who was at-fault but who does not have insurance to pay for your damages.

### B. UNDERinsured Motor Vehicle Coverage

The State of West Virginia **does not require** you to purchase any **UNDERinsured** motor vehicle coverage under your basic automobile policy. However, the law does state that you must be given the opportunity to purchase this coverage in an amount not less than your liability coverage. In your case, you have opted to purchase excess or umbrella coverage which is also written to cover automobile liability. Therefore, the law also requires that you be given the opportunity to purchase underinsured motor vehicle coverage in an amount not less than the liability limit or limits selected on the excess or umbrella policy as well

**UNDERinsured** motor vehicle coverage may protect you and passengers in your car if you are involved in an accident which was caused by a driver who was at-fault but the at-fault driver's insurance policy is not sufficient to pay for your damages. In some cases the at-fault driver will not have enough liability coverage to pay for all the damages you have suffered. In order for you to protect yourself and others in your car, **UNDERinsured** motor vehicle coverage is available to you. This type of coverage may pay for the remainder of your damages up to your policy limits.

### C. Example:

You have purchased **UNDERinsured** motor vehicle coverage under your auto policy with limits of $100,000 per person with a maximum of $300,000 for any accident. You have also purchased underinsured motor vehicle coverage under your umbrella in the amount of $1,000,000. You are in an accident where the other driver is at fault. The at-fault driver's liability policy limits are $20,000 per person. You suffered damages of $300,000. You receive $20,000 from the at-fault driver's insurance. Since you still have outstanding losses of $280,000, you can receive $100,000 from your **UNDERinsured** motor vehicle coverage under your auto policy and $180,000 from your underinsured motor vehicle coverage under your umbrella.

If you do not have **UNDERinsured motor vehicle coverage,** you may have found yourself in a situation where you did not have enough coverage to meet all of the losses you sustained in the accident.

 © ISO Properties, Inc., 2003

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **1** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**BANKERS STANDARD FIRE AND MARINE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**BANKERS STANDARD INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE INDEMNITY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE AMERICAN INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**PACIFIC EMPLOYERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

**WESTCHESTER FIRE INSURANCE COMPANY**
1325 Avenue of the Americas, 19th Floor, New York, NY 10019

GEORGE D. MULLIGAN, Secretary

DENNIS A. CROSBY, JR., President

_____
Authorized Agent

CC-1K11e  (02/06) Ptd. in U.S.A.

# CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **2** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

$250,000 Annual Limit

Catastrophe Management Coverage

A. Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

B. A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

C. There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

D. Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

E. Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

F. For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling;  travel expenses; temporary living expenses or other necessary response costs and approved by us,  incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured".  A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

# CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **3** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VI, Condition D of the Policy is amended to read as follows:

D.  CANCELLATION

This policy may be cancelled by YOU by mailing to US written notice stating when such cancellation shall be effective.

This policy may be cancelled by US by mailing to YOU at YOUR last known address, written notice stating when, not less than **One Hundred Twenty  (120) days** thereafter, **Ten (10) days** if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective.  The mailing of notice shall be sufficient proof of notice.  The effective date and hour of cancellation stated in the notice shall be the end of the POLICY PERIOD.

If YOU cancel, earned premiums shall be computed in accordance with the applicable Pro-rata table or procedure. If WE cancel, earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation becomes effective. OUR check or the check of OUR representative mailed to YOU shall be sufficient proof of any refund or premium due YOU.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

CC-1E15

Page 1 of 1

# CLINICAL TRIAL EXCLUSION ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **4** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial". However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

CC-1E15

# FOREIGN LIABILITY LIMITATION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **5** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the "scheduled underlying insurance:"

1) This exclusion shall not apply; and

2) Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance," subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance."

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

XS-23637 (01/2008)

# KNOWLEDGE OF OCCURRENCE

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **6** | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement | |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** | |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property And Casualty Insurance Company** | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Senior Director of Risk Management or General Counsel shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

XS-20753 (08/06)

Page 1 of 1

# NON-CONCURRENCY ENDORSEMENT
## (Recognizes Non-Concurrency)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **7** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Whereas, the policy (ies) listed in the schedule of "underlying insurance" are non-concurrent with the "policy period" hereunder;

In the event of reduction or exhaustion of the aggregate limit(s) of the policy (ies) by reason of "occurrences" prior to the inception of this policy, it is agreed that such insurance as is afforded by this policy shall:

(1)   in the event of reduction apply in excess of the reduced underlying limit; or

(2)   in the event of exhaustion continue in force as "underlying insurance".

Anything in this endorsement to the contrary notwithstanding this policy applies only to "occurrences" happening during the "policy period".

"Policy period" means the period stated in the Declarations of this policy.

All other terms and conditions remain unchanged.

_____

Authorized Agent

# NOTICE OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# PROFESSIONAL SERVICES LIABILITY EXCLUSION - EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **9** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

XS-21580 (01/07)

# WAR EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **10** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

**W. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

# UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **11** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

# FELLOW EMPLOYEE EXCLUSION DELETED

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **12** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

# EMPLOYEE BENEFIT PLAN LIMITATION
## [CLAIMS MADE]

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **13** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |

Issued By (Name of Insurance Company)

**ACE Property And Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

1.  Underlying Insurance

    Company:                  Insurance Company of the State of Pennsylvania

    Policy Number:            Foreign General Liability

    Expiration Date:          July 1, 2012

    Retroactive Date:         None

    Limits of Insurance:

    Each Employee             $ 1,000,000

    Aggregate:                $ 1,000,000


    Company:                  Old Republic Insurance Company

    Policy Number:            Canadian General Liability

    Expiration Date:          July 1, 2012

    Retroactive Date:         None

    Limits of Insurance:

    Each Employee             $ 1,000,000

    Aggregate:                $ 1,000,000

2.  Our Retroactive Date:     July 1, 2009

3.  Coverage

XS-26426 (02/09)                                                    Page 1 of 3

Except insofar as coverage is a(   )able to you in the "underlying insurance" (   ) for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

"Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

a.  Counseling "employees" on your "employee benefit programs";

b.  Interpreting your "employee benefit programs";

c.  Handling records for your "employee benefit programs";

d.  Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e.  Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f.  Collection of contributions and application of contributions as provided in your "employee benefit programs";

g.  Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h.  Processing of claims for your "employee benefit programs".

"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4.  Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a.  Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i.  The date such claim is first made against you is during OUR policy period, and

ii.  The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b.  Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in like manner, subject to all of the following:

i.  Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii.  The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii.  The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c.  Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance" above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i.  The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

XS-26426 (02/09)

ii.  Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii.  If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d.  Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **14** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4) arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a. medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or
b. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# FOREIGN LOSS INDEMNITY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **15** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**THIS ENDORSEMENT APPLIES ONLY WHEN A "FOREIGN OCCURRENCE", ARISING OUT OF A "FOREIGN BUSINESS OPERATION" AND CAUSING "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY", TAKES PLACE IN A COUNTRY WHERE WE ARE NOT "LICENSED".**

The policy is amended to add the following:

## FIRST NAMED INSURED INDEMNITY COVERAGE

### I.   INSURING AGREEMENT

This endorsement applies only when a "foreign occurrence", arising out of a "foreign business operation" and causing "bodily injury", "property damage" or "personal and advertising injury", takes place in a country where we are not "licensed".

In that case, rather than directly pay on behalf of and defend your "foreign business operation", we will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" and defense and supplementary payments in accordance with this endorsement. This endorsement provides the only coverage under the policy for "bodily injury", "property damage" or "personal and advertising injury" arising out of a "foreign occurrence".

The terms, conditions and limitations in sub-section A.1., A.2., B., C. and D. of Section **I. INSURING AGREEMENT** in the policy will apply to our duty to indemnify the "First Named Insured".

### II.   WHO IS AN INSURED

Section **II. WHO IS AN INSURED**, is amended to provide that a "foreign business operation" is not an "insured" on whose behalf we have a direct duty to pay settlements or judgments or a direct duty to defend under this policy.

### III.   DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS

When this endorsement applies, rather than directly defend your "foreign business operation", we will indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign business operation", provided that (a) the "foreign business operation" gives the "First Named Insured" the right to control the investigation, defense and settlement of the "suit" and (b) the "First Named Insured" assigns this right to us.  We will associate with the "First Named Insured" to conduct such investigation, defense and settlement as provided in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, except that we will indemnify the "First Named Insured" rather than directly defend and pay supplementary payments.

## IV. LIMITS OF INSURANCE

A. The insurance provided by this endorsement is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity will erode and be counted against such limits.

B. Subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

   1. Has indemnified a "foreign business operation", or

   2. Represents to us that it is obligated to indemnify the "foreign business operation".

However, if this policy provides for a percentage allocation of liability with respect to the insured's or the "foreign business operation's" interest in a joint venture, limited liability company or partnership, the allocation set forth in such provision will apply.

The terms, conditions and limitations set forth in Section **IV. LIMITS OF INSURANCE** in the policy will apply to our duty to indemnify the "First Named Insured".

## V. CONDITIONS

When this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy.

### A. Claims Made/Reported Coverage (if applicable)

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period will also apply to all claims made against a "foreign business operation" for which the "First Named Insured" seeks indemnification.

### B. Additional Notice Duties of the "First Named Insured"

With respect to a "foreign occurrence" which may result in a claim for damages under this endorsement, the "First Named Insured" assumes the duty to notify us, and must notify us in accordance with the standards described in Condition **F. Duties in the Event of "Occurrence", Claim or "Suit"** in the policy.

### C. Proof of Insurance

This policy may not be offered as proof of insurance unless permitted by local applicable law.

### D. Truthfulness and Accuracy of Material Information

When this endorsement applies, the "First Named Insured":

1. Is responsible for the truthfulness and accuracy of any material information provided to us with respect to a "foreign business operation", "foreign occurrence", claim, "suit" or "loss"; and

2. Will not, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured, a "foreign business operation", a "loss", claim or "suit" or a "foreign occurrence".

## VI. DEFINITIONS

When this endorsement applies, Definition M. "Loss" in the policy is deleted and replaced with the following:

M. "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "foreign business operation" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", for which the "foreign business operation" makes a claim for reimbursement from the "First Named Insured", after making proper deduction for all recoveries and salvages.

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign business operation" means a subsidiary of the "First Named Insured" and any other organization under its control or active management at the inception date of the policy or added by endorsement, and having its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", "property damage" or "personal and advertising injury" located in a country where we are not "licensed".

"Foreign occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign business operation" taking place in or causing "bodily injury", "property damage" or "personal and advertising injury" in a country where we are not "licensed". Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

"Licensed" means expressly approved in accordance with law by the applicable regulatory body to conduct the business of insurance in a country as a regulated, authorized insurer. "Licensed" is synonymous with admitted and authorized. It does not include being recorded as an eligible foreign or alien non-admitted insurer.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# INDUSTRIAL AID AIRCRAFT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **16** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.   LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$500,000,000 Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned by or rented or loaned to any "insured".  Use includes operation and "loading and unloading").

II.  For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III. For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV.  Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance"

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses"

V.   For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.   Aircraft
     This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI.  For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1.  attorney's fees and all other investigation, loss adjustment and litigation expenses;
2.  premiums on bonds to release attachments;
3.  premiums on appeal bonds required by law to appeal any claim or "suit";
4.  costs taxed against the "insured" in any claim or "suit";
5.  pre-judgment interest awarded against the "insured"; and
6.  interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used solely for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL
## (with Insureds Retained Limit)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **17** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1. To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2. To any "loss", cost or expense arising out of any:

   a. Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. Is both unexpected and unintended from the standpoint of the "insured";

2. Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3. Is caused:

   a. Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

   b. Or arises out of "your product" included in the "products-completed operations hazard"; or

c. By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (1) Is at or from any:

      (a) Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

      (b) Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

      And

   (2) Is known by any "insured" within <u>twenty</u> (20) days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

   (3) Is reported to us within <u>eighty</u> (80) days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not. Waste means any substance that:

   a. Is left over, or no longer in use, or discarded;

   b. Is to be reclaimed or recycled, or reconditioned; or

   c. Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to $<u>5,000,000</u>.

All other terms and conditions of the policy remain unchanged.

_____

                Authorized Representative

# TRAILING RETENTION ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **18** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
## COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

Trailing Retention – Products & Completed Operations:  $ 500,000     Each Occurrence

Aggregate Trailing Retention:     $ Not Applicable

**Section IV. LIMITS OF INSURANCE** is amended as follows:

With respect to the application of part E. of Section IV., LIMITS OF INSURANCE, that relates to the reduction or exhaustion of the aggregate limits of liability under any "retained limit" by reason of "loss" paid thereunder, this policy is amended as follows:

A.  If the aggregate limits of liability under any "retained limit" are reduced or exhausted solely by reason of "loss" paid thereunder arising out of "bodily injury," "personal and advertising injury," or "property damage" which takes place during our "policy period," then this policy shall:

1.  In the event of reduction, pay the excess of the reduced underlying limit; but only in excess of the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

2.  In the event of exhaustion continue in force, but only for any excess above the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

**Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** Part A is amended to read as follows:

1.  With respect to any "occurrence" covered by the "retained limit" listed in the schedule of "retained limit" or any "other insurance" to which this policy applies, whether the aggregate limit of said "retained limit" or "other insurance" is exhausted or not, we shall not be called upon to assume charge of the investigation, settlement or defense of any "suit" brought against the "insured," but we shall have the right and be given the opportunity to be associated in the defense and trial of any "suits" relative to any "occurrence" which, in our opinion, may create liability on the part of us under the terms of the policy.

CC1E15

2. With respect to any "occurrence" not covered by the "retained limit" or any "other insurance" but covered by the terms and conditions of this policy, we shall defend such "suit" against the "insured" seeking damages on account of "bodily injury," "personal and advertising injury," or "property damage" and we may make such investigation and effect settlement of any "suit" so defended. Provided, however, we shall have no obligation to defend until the "insured" losses have exceeded the "trailing retention" amount set out in the Schedule above.

Furthermore, we shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

**Section VII. DEFINITIONS**, is amended as follows:

The following Definitions are added:

"Trailing retention" means the amount shown in the Schedule above, which is the amount in excess of the reduced or exhausted limit of "retained limit" you will pay in the settlement of any claim or "suit" to which this policy applies. Our policy does not apply until you have paid the "trailing retention."

"Aggregate trailing retention" means the amount shown in the Schedule above which is the most you will pay for the sum of all "trailing retention" amounts.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# NAMED INSURED ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **19** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

| **McKesson Corporation** |
|---|
| 10101 Woodloch Forest LLC |
| 3071406 Nova Scotia Company |
| A.L.I. Technologies (Deutschland) GmbH |
| AccessMed Holdings, LLC |
| AccessMed, LLC |
| AOR Holding Company of Indiana, LLC |
| AOR Management Company of Arizona, LLC |
| AOR Management Company of Indiana, LLC |
| AOR Management Company of Missouri, LLC |
| AOR Management Company of Oklahoma, LLC |
| AOR Management Company of Pennsylvania LLC |
| AOR Management Company of Virginia LLC |
| AOR of Texas Management, LLC |
| AOR Real Estate of Greenville, LP |
| AOR Real Estate, LLC |
| AOR Synthetic Real Estate LLC |
| AORT Holding Company, Inc. |
| Ascalon International LLC |
| Beldere Corporation |
| California Golden State Finance Company |
| Cancer Treatment Associates of Northeast Missouri, Ltd. |
| CCCN NW Building, JV |
| CGSF Funding Corporation |
| City Properties, S.A. |
| Clinique Sante Corporation |
| Colorado Cancer Centers, LLC |
| Cora Concept, SAS |
| Crocker Plaza Company |
| Cypress Medical Products LLC |
| D & K Healthcare Resources LLC |
| Delta Clinical Research LLC |

East Indy CC, LLC
FAR-SUR
Foremost de Venezuela, S.A. (Forvensa)
Foremost Iran Corporation
Foremost Shir, Inc.
Foremost Tehran, Inc.
Golden State Corporate Services LLC
Golden State Insurance Company Ltd.
Greenville Radiation Care, Inc.
HBOC Medical Ltd.
Health Mart Systems, Inc.
Health Nexus LLC
HF Land Company
Innovent Oncology, LLC
Intercal, Inc.
Iowa Pharmaceutical Services, LLC
KCCC JV, LLC
KCCC/SMMC Cancer Center, LLC
KWS & P/SFA, Inc.
McKesson (Shanghai) Trading Co. Ltd.
McKesson Automation Canada Corporation
McKesson Automation Inc.
McKesson Automation Systems Inc.
McKesson Canada Corporation
McKesson Canada Support Services Corporation
McKesson Capital Funding Corporation
McKesson Capital LLC
McKesson Central Fill LLC
McKesson China Holdings S.a.r.l.
McKesson Financial Holdings
McKesson Financial Holdings II
McKesson Funding Company of Canada
McKesson Health Solutions Holdings LLC
McKesson Health Solutions LLC
McKesson High Volume Solutions Inc.
McKesson Information Solutions Canada Company
McKesson Information Solutions Capital S.a.r.l.
McKesson Information Solutions Finance S.a.r.l.
McKesson Information Solutions France SAS
McKesson Information Solutions Holdings France S.a.r.l.
McKesson Information Solutions Holdings S.a.r.l.
McKesson Information Solutions Netherlands B.V.
McKesson Information Solutions Sweden AB
McKesson Information Solutions Topholdings S.a.r.l.
McKesson International Bermuda IP2A Limited
McKesson International Bermuda IP2B Limited
McKesson International Bermuda IP3B Limited
McKesson International Bermuda IP4A Limited
McKesson International Bermuda IP4B Unlimited
McKesson International Bermuda IP5A Limited
McKesson International Bermuda IP5B Unlimited
McKesson International Bermuda Opco 1A Limited
McKesson International Bermuda Opco 1B Unlimited
McKesson International Bermuda Opco3A Limited
McKesson International Bermuda Opco3B Unlimited

| |
|---|
| McKesson International Bermuda Opco4A Limited |
| McKesson International Bermuda Opco4B Limited |
| McKesson International Bermuida IP3A Limited |
| McKesson International Capital S.a.r.l. |
| McKesson International Finance S.a.r.l. |
| McKesson International Holdings |
| McKesson International Holdings II S.a.r.l. |
| McKesson International Holdings III S.a.r.l. |
| McKesson International Holdings IV S.a.r.l. |
| McKesson International Holdings S.a.r.l. |
| McKesson International Holdings SRL |
| McKesson International Holdings V S.a.r.l. |
| McKesson International Holdings VII S.a.r.l. |
| McKesson International Malaysia SND. BHD. |
| McKesson International S.a.r.l. |
| McKesson International SRL |
| McKesson International Sweden I AB |
| McKesson International Sweden II AB |
| McKesson International Sweden III AB |
| McKesson International Topholdings S.a.r.l. |
| McKesson Intrernational Holdings LLC |
| McKesson Ireland |
| McKesson Israel Ltd. |
| McKesson Medical Imaging Company |
| McKesson Medical-Surgical FDT Inc. |
| McKesson Medical-Surgical Holdings Inc. |
| McKesson Medical-Surgical Inc. |
| McKesson Medical-Surgical International |
| McKesson Medical-Surgical MediMart Inc. |
| McKesson Medical-Surgical Minnesota Inc. |
| McKesson Medical-Surgical Minnesota Supply Inc. |
| McKesson Nederland B.V. |
| McKesson Pharmaceutical Holdings LLC |
| McKesson Pharmacy Optimization LLC |
| McKesson Pharmacy Systems Canada ULC |
| McKesson Pharmacy Systems LLC |
| McKesson Plasma and Biologics LLC |
| McKesson Property Company, Inc. |
| McKesson Specialty Arizona Inc. |
| McKesson Specialty Care Distribution Corporation |
| McKesson Specialty Care Distribution Joint Venture LP |
| McKesson Specialty Care Distribution Joint Venture LP |
| McKesson Specialty Distribution LLC |
| McKesson Specialty Holdings LLC |
| McKesson Specialty Prescription (BC) Services Corporation |
| McKesson Specialty Prescription Services (Atlantic) Corporation |
| McKesson Specialty Prescription Services Corporation |
| McKesson Technologies Inc. |
| McKesson Transportation Systems, Inc. |
| McKesson UK Holdings |
| McQueary Bros. Drug Company, LLC |
| Med Fusion, LLC |
| Medcon Systems (1993) |
| Medcon UK Limited |
| Medical & Vaccine Products, Inc. |

Metropolitian Integrated Cancer Center, LLC
MH/USON Radiation Management Company, LLC
MHD-USO General, LLC
MHD-USO Management Company, LP
Moore Medical LLC
MSA Products LLC
N.V Medicopharma
Nadro S. de R.L. de C.V.
Nadro S.A. de C.V.
National Oncology Alliance, Inc.
NDCHealth Corporation
NDCHealth Pharmacy Systems and Services, Inc.
Nebraska Pharmaceutical Services, LLC
New Mexico Pharmaceutical Services, LLC
Nexcura, LLC
North Carolina Pharmaceutical Services, LLC
Northstar Healthcare
Northstar Healthcare Holdings
Northstar Rx LLC
Oncology Holdings II, Inc.
Oncology Holdings, Inc.
Oncology Portal, LLC
Oncology RX Care Advantage, LP
Oncology Therapeutics Network Corporation
Oncology Today, LP
Onmark, Inc.
Oregon Cancer Centers Ltd
OTN Generics, Inc.
OTN Participant, Inc.
Per-Se Technologies Canada, Inc.
Pharmessor Group Corporation
Physician Reliance Network, LLC
Physician Reliance, LLC
Presbyterian Cancer Center-Dallas, LLC
Prismedica, SAS
PST Services, Inc.
Purchasing Alliance for Clinical Therapeutics, LLC
RFCC Asset, LLC
RFCC Support, LLC
RMCC Cancer Center, LLC
S.K.U., Inc.
San Bruno Mountain, Ltd.
Southeast Texas Cancer Centers, LP
St. Louis Pharmaceutical Services LLC
Sterling Medical Services, LLC
Strategic Health Alliance II, Inc.
Strategic Health Alliance Management Corp.
Texas Pharmaceutical Services, LLC
The Carroll County Cancer Center, Ltd.
TOPS Pharmacy Services, Inc.
Tyler Radiation Equipment Leasing, LLC
Unity Oncology, LLC
US Oncology Clinical Development, LLC
US Oncology Corporate, Inc.
US Oncology Holdings, Inc.

XS-24545 (03/08)

| US Oncology Integrated Solutions, LP |
|---|
| US Oncology Lab Services, LLC |
| US Oncology Pharmaceutical Services, LLC |
| US Oncology Reimbursement Solutions, LLC |
| US Oncology Research, LLC |
| US Oncology Specialty, LP |
| US Oncology, Inc. |
| Visitaction Associates |
| WFCC Radiation Management Company, LLC |
| Zee Medical, Inc. |

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

# JOINT VENTURE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **20** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that in the event of any "occurrence" caused by or arising out of any Joint Venture, Co-Venture, Joint Lease, Joint Operating Agreement, Partnership or Limited Liability Company [hereinafter Joint Venture] in which the "insured" has an interest, the Limits of Insurance under our policy shall be limited to the total liability coverage afforded the "insured" by this policy.

It is further agreed that the Limits if Insurance of the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture and our liability shall be excess of the sum of

      1.   The limits of underlying "retained limits", and
      2.   The limits of any "other insurance".

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

# MANUFACTURE OF DRUGS EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **21** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section V. EXCLUSIONS is amended to include the following additional exclusion.

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling of drugs.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

CC-1E15

# ANNUAL PERIOD EXTENSION - NATURAL DISASTER OR OTHER CATASTROPHE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **22** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
## COMMERCIAL UMBRELLA LIABILITY POLICY

In the event of a natural disaster or other catastrophe that prevents all written, telephonic and electronic communication between us and the Named Insured at the expiration of the "policy period", the "policy period" will automatically be extended until the earlier of the two following times:

1. thirty (30) calendar days from the original expiration date of such "policy period"; or
2. fourteen (14) calendar days after written, telephonic or electronic communication between us and the Named Insured is once again possible.

The additional premium for such extension will be calculated on a pro-rata basis.  Such extension will be cancelled automatically retroactive to its inception if the additional premium or proof of payment thereof is not received by us within thirty (30) calendar days following the earlier of 1. or 2. above.

Nothing in this endorsement will operate to increase or reinstate the Limits of Liability as stated in the Declarations.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# RETAINED LIMIT ENDORSEMENT
## (No Underlying Insurance)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **23** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1.  The preamble in the policy is deleted and replaced with the following:

    Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

    Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

    Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS**.

    We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2.  Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

    A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

        1.  When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
        2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy.  Any such payment we make shall reduce the Limits of Insurance.  Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

CC-1E15

3. Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

    E. If the applicable "retained limits" listed on the Schedule of Retained Limits have been:
        1. Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

        2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4. Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5. Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

    A. **Appeals**

    In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

    C. **Bankruptcy**

    Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

    I. **Maintenance of "Underlying Insurance"** is deleted.

    N. **Transfer of Rights of Recovery Against Others to Us**

        3. If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6. Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

    P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

    V. "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General  Liability | $5,000,000<br>$7,500,000 | Each Occurrence<br>General Aggregate | Within limits & within deductible |
| Products Liability | $5,000,000<br>$5,000,000 | Each Occurrence<br>Aggregate | Within limits & within deductible |
| Auto Liability | $5,000,000 | Each Occurrence | Outside   Limits & Deductibles |

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

CC-1E15

# PERSONAL INJURY DEFINITION AMENDED TO INCLUDE DISCRIMINATION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **24** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII, DEFINITIONS, Part R. "Personal and advertising injury" is deleted and replaced with the following:

R. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5. Oral or written publication, in any manner, of material that violates a person's right of privacy;
6. Discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only is such discrimination or humiliation is:
   a. Not intentionally committed by the "insured,"
   b. Not committed by, at the direction of, or with the knowledge of you and/or any of your executive officers or directors,
   c. Not directly or indirectly related to the employment of the person or persons by you, and
   d. Not in violation of any provision(s) of the Americans with Disabilities Act (including but not limited to any amendments or revisions thereto and any rules or regulation promulgated thereunder) or any similar common or statutory law,
7. The use another's advertising idea in your "advertisement," or
8. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

All other terms and conditions of the policy remain unchanged.

Authorized Agent

CC1E15

# NEWLY ACQUIRED ENTITY ENDORSEMENT
## Revenue and Timeframe Parameters

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **25** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

SECTION II, WHO IS AN INSURED, Section B.5. is deleted and replaced with the following:

5.      Any organization(s) you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured; subject to the following:

a.      at the time of acquisition, inception of control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $500,000,000 and (b) the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of control or formation, with no additional premium charge, provided that you notify us within 90 days of such acquisition, inception of control or formation.

b.      If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do exceed $500,000,000 or (b) the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 90th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier.

c.      For any organization covered by paragraph b. above, coverage will expire on the 90th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier, unless, within the 90 day period, you request us to include such organization as a Named Insured, and we agree to do so.

d.      We may, at our option, make an additional premium charge for any organization that you acquire, take control of or form during the "policy period," when that organization is not automatically covered in 5 .a. above.

e.      Coverage does not apply to any liability arising out of an "occurrence" or offense committed before you acquire, take control of or form any organization covered by this endorsement; and

Notwithstanding anything to the contrary contained above, coverage does not apply to any liability arising out of the conduct of any current, past, or newly acquired or formed partnership or joint venture that is not stated in the Declarations of this policy as a Named Insured.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

CC-1E15

# COVERAGE TERRITORY DEFINITION AMENDMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **26** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VII.**, **DEFINITIONS**, part D. "Coverage territory" is deleted and replaced with the following:

D.  "Coverage territory" means anywhere in the world.

All other terms and conditions of this policy remain unchanged.

---

Authorized Agent

CC-1E15

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **27** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $33,470.

_____

Authorized Agent

Includes copyrighted material of Insurance Services office, Inc., with its permission

TRIA11b (1/08)

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **28** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C.  In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

1.  The Limits of Insurance of the Declarations is amended to include:

   "Certified act of terrorism retained limit" $5,000,000.

2.  "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance. "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

3.  Solely with respect to this endorsement, Section III., Defense Provisions and Supplement Payments is amended as follows:

   a.  With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism". However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.  We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".  Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".  We may make such investigation as we require and effect settlement of any "suit" so defended.

c.  We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

# CALIFORNIA CHANGES - CANCELLATION, NONRENEWAL AND STATE REQUIRED CONDITIONS

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **29** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY
EXCESS LIABILITY POLICY
EXCESS LIABILITY CATASTROPHE POLICY**

A. The **Cancellation** Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **All Policies In Effect For 60 Days Or Less**

   If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

   a. 10 days before the effective date of cancellation if we cancel for:

      (1) Nonpayment of premium; or

      (2) Discovery of fraud by:

         (a) Any insured or his or her representative in obtaining this insurance; or

         (b) You or your representative in pursuing a claim under this policy.

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. **All Policies In Effect For More Than 60 Days**

   a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

      (1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

      (2) Discovery of fraud or material misrepresentation by:

         (a) Any insured or his or her representative in obtaining this insurance; or

         (b) You or your representative in pursuing a claim under this policy.

      (3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

      (4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

      (5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

      (6) A determination by the Commissioner of Insurance that the:

    **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    **(b)** Continuation of the policy coverage would:

        **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

        **(ii)** Threaten our solvency.

    **(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

    **(8)** A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

    **(9)** Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

    **(10)** A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

  **b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

    **(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

_____

Authorized Agent

# AMENDMENT OF WHO IS AN INSURED

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **30** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section II WHO IS AN INSURED  Paragraph B. is hereby amended to add the following:

7. Any person or organization you become obligated to include as an additional "insured" under the policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" arising out of your operations or premises owned by or rented to you.

However, the insurance provided by this endorsement will not be broader than the coverage provided by this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

CC1E15

## Automobile Liability Limitation Endorsement

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **31** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement. Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy #MWTB21266 and Old Republic Insurance Company of Canada Policy #CTB21266 subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy. In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # MWTB21266 and Old Republic Insurance Company of Canada Policy # CTB21266.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

CC-1E15

## Non-Contributory Endorsement for Additional Insureds

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **32** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

For any person or organization qualifying as an "insured" under Section II WHO IS AN INSURED, Paragraph B.7. (as added by endorsement to this policy) the following is added to
**Section VI. CONDITIONS Paragraph J. Other Insurance**

If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured.  Your "retained limit" still applies to such "loss" and  any payments you receive from "other insurance" will not erode your "retained limit".

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

CC-1E15

## Internal Creation Endorsement

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **33** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section II. WHO IS AN INSURED,** Subsection B., Paragraph 5, is amended to including the following:

e. If you are a limited liability company or limited liability partnership that was created subsequent to the inception date of this policy as a result of internal restructuring or realignment, you are an "insured" provided that:
   (1) The newly created limited liability company or limited liability partnership solely comprises operations which were part of the "insured" prior to the date of such creation; and
   (2) The newly created limited liability company or limited liability partnership continues to operate in a similar fashion as the "insured" prior to the date of such creation.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

CC-1E15

# AMENDMENT OF DEFINITION OF BODILY INJURY

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **34** | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement | |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** | |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property And Casualty Insurance Company** | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section III. Definition C. Bodily Injury is deleted in its entirety and replaced by the following:

      a.   BODILY INJURY means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time. BODILY INJURY includes mental anguish or mental injury resulting from bodily injury.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

CC-1E15

# AMENDMENT TO DEFINITION OF INSURED CONTRACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **35** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

Definition **J.** is deleted in its entirety and replaced by the following:

**J.** "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **a.** Preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **b.** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2. Under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 1. above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

CC-1E15

# NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**36** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903126** | Policy Period<br>**07/01/2011 to 07/01/2012** | Effective Date of Endorsement<br>**08/11/2011** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

A. If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

B. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

C. The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

D. We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

E. We may arrange with your representative to send such notice in the event of any such cancellation.

F. You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

G. This endorsement does not apply in the event that you cancel the Policy.

### SCHEDULE

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
| Port Authority of New York & New Jersey<br>Newark Liberty International Airport<br>c/o EBIX BPO | | P.O. Box 881639<br>San Diego, CA 92168-1639 |

All other terms and conditions of the Policy remain unchanged.

*Clayman*

Authorized Representative

ALL-32688 (01/11)                                                                                     Page

## FOREIGN LIABILITY FOLLOW FORM LIMITATION ENDORSEMENT – EXCEPTION FOR PRODUCTS

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**37** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903126** | Policy Period<br>**07/01/2011 to 07/01/2012** | Effective Date of Endorsement<br>**07/01/2011** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the scheduled "underlying insurance"

1. This exclusion shall not apply; and

2. Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of such "underlying insurance," subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, and this policy will be no broader than the coverage provided by "underlying insurance."

Notwithstanding the above provisions, with respect to claims or "suits" alleging "bodily injury," "property damage" or "personal and advertising injury" that (a) occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada, and (b) arises out of "your product", this insurance will apply subject to subject to a "retained limit" which is a self-insured retention as follows:

$5,000,000 each "occurrence" ("loss" and defense expenses erode SIR)

$5,000,000 annual aggregate ("loss" and defense expenses erode SIR)

$500,000 "Trailing Retention"

The following definition is added to the policy:

"Trailing retention" means the amount shown above, which is the amount of "loss" in excess of the reduced or exhausted limit of the "underlying insurance" you will pay in the settlement of any claim or "suit" to which this policy applies. Our policy does not apply until you have paid the "trailing retention".

All other terms and conditions of this policy remain unchanged.

*Cgerman*

Authorized Representative

CC-1E15

## Government Immunity Endorsement

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **38** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **07/01/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

We shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority of New York and New Jersey (Port Authority), raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority.

All other terms and conditions of this policy remain unchanged.

*Cgrman*

Authorized Representative

MS-4331 (09/11)

## AMENDATORY ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>39 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G24903126 | Policy Period<br>07/01/2011 to 07/01/2012 | Effective Date of Endorsement<br>08/31/2011 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Endorsement number 19 – Named Insured Endorsement is hereby deleted in it entirety and replaced by endorsement number 40.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# NAMED INSURED ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **40** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903126** | **07/01/2011 - 07/01/2012** | **08/31/2011** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

**McKesson Corporation**
10101 Woodloch Forest LLC
3071406 Nova Scotia Company
A.L.I. Technologies (Deutschland) GmbH
AccessMed Holdings, LLC
AccessMed, LLC
AOR Holding Company of Indiana, LLC
AOR Management Company of Arizona, LLC
AOR Management Company of Indiana, LLC
AOR Management Company of Missouri, LLC
AOR Management Company of Oklahoma, LLC
AOR Management Company of Pennsylvania LLC
AOR Management Company of Virginia LLC
AOR of Texas Management, LLC
AOR Real Estate of Greenville, LP
AOR Real Estate, LLC
AOR Synthetic Real Estate LLC
AORT Holding Company, Inc.
Ascalon International LLC
Beldere Corporation
California Golden State Finance Company
Cancer Treatment Associates of Northeast Missouri, Ltd.
CCCN NW Building,JV
CGSF Funding Corporation
City Properties, S.A.
Clinique Sante Corporation
Colorado Cancer Centers, LLC
Cora Concept, SAS
Crocker Plaza Company
Cypress Medical Products LLC
D & K Healthcare Resources LLC
Delta Clinical Research LLC

# WHO IS AN INSURED ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>41 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G24903126 | Policy Period<br>07/01/2011 to 07/01/2012 | Effective Date of Endorsement<br>07/01/2011 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

   **1.** The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

      a.  such entity is under your management;

      b.  such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and

      c.  any liability covered under this policy is not also covered under any other valid and collectable insurance available to such entity.

   Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

   **2.** Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

      a.  such entity is under your management;

      b.  such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and

      c.  any liability covered under this policy is not also covered under any other valid and collectable insurance available to such entity.

   Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

**B.** All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy. However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

MS-5614 (11/11)           © 2011           Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# HEALTH CARE SERVICES EXCLUSION

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>42 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G24903126 | Policy Period<br>07/01/2011 to 07/01/2012 | Effective Date of Endorsement<br>11/17/2011 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Solely with respect to Interlakes Oncology, PC, and those entities identified in the Schedule on Endorsement 42 (WHO IS AN INSURED ENDORSEMENT) of this policy Section V, DEFINITIONS, is amended by the addition of the following exclusion:

**Health care Services**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of the policy remain unchanged.

Authorized Agent

## AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 43 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XOO | G24903126 | 07/01/2011 to 07/01/2012 | 07/01/2011 |
| Issued By (Name of Insurance Company) | | | |
| ACE Property and  Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### Commercial Umbrella Liability Policy

In consideration Endorsement #23 of this Policy is hereby deleted in its entirety and replaced with Endorsement #44 effective 07/01/2011.

All other terms and conditions of this policy remain unchanged.

Cogerman

Authorized Agent

CC1E15

## RETAINED LIMIT ENDORSEMENT
### (No Underlying Insurance)

| Named Insured: McKesson Corporation | | | Endorsement Number: 44 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G24903126 | Policy Period 07/01/2011 to 07/01/2012 | Effective Date of Endorsement 07/01/2011 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1. The preamble in the policy is deleted and replaced with the following:

   Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

   Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

   Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS.**

   We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2. Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

   A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

      1. When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
      2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy. Any such payment we make shall reduce the Limits of Insurance. Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or

CC-1E15

## NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES

| Named Insured McKesson Corporation | | | Endorsement Number 45 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G24903126 | Policy Period 07/01/11 to 07/01/12 | Effective Date of Endorsement 07/01/11 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

A. If we cancel this Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

B. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

C. The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

D. We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

E. We may arrange with your representative to send such notice in the event of any such cancellation.

F. You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

G. This endorsement does not apply in the event that you cancel the Policy.

### SCHEDULE

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
| Medassets | | 13727 Noel Road, Suite 1400, Dallas, TX 75240 |
| | | |

ALL-32688 (01/11)

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

All other terms and conditions of this Policy remain unchanged.

_Chermans_

Authorized Representative

supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

3. Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

    E. If the applicable "retained limits" listed on the Schedule of Retained Limits have been:

       1. Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

       2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4. Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5. Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

    A. **Appeals**

    In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

    C. **Bankruptcy**

    Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

    I. **Maintenance of "Underlying Insurance"** is deleted.

    N. **Transfer of Rights of Recovery Against Others to Us**

       3. If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6. Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

    P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

    V. "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

## Schedule of Retained Limits

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General Liability | $5,000,000 | Each Occurrence | Within limits & |
| | $7,500,000 | General Aggregate | within deductible |
| Products Liability | $5,000,000 | Each Occurrence | Within limits & |
| | $5,000,000 | Aggregate | within deductible |
| Auto Liability | $5,000,000 | Each Occurrence | Outside Limits & Deductibles |
| US Ocology | | | Within limits & within deductible |
| General Liability | $5,000,000<br>$5,000,000<br><br>$5,000,000 | Each Occurrence<br>Personal and<br>Advertising Injury<br>General Aggregate | |
| Auto Liability | $1,000,000 | Accident | In addition to limits |
| Employer's Liability | $1,000,000<br>$1,000,000<br>$1,000,000 | Accident<br>Disease-Policy Limit<br>Disease-Employee | In addition to limits |

All other terms and conditions of this policy remain unchanged.

*Chjrman*

_____
Authorized Agent

**C.** Section **VII, DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

I. "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured .

**SCHEDULE**

Advanced Medical Specialties dba: Arch Cancer Care
Arizona Oncology Associates; PC
Arkansas Oncology Associates, PA
Blue Ridge Cancer Care
Cancer Care & Hematology Specialists of Chicagoland, PC
Cancer Care Centers of South Texas, PA
Cancer Centers of North Carolina, PC
Cancer Centers of North Carolina-Ashville, PC
Cancer Centers of the Carolinas
Comprehensive Cancer Care
Comprehensive Cancer Care of Nevada
Fairfax-Northern Virginia Hematology-Oncology, PC
Florida Cancer Institute- New Hope PA
Florida Institute of Research, Medicine and Surgery, PA Formerly Cancer Centers of Florida
Hematology Oncology Associates of Illinois
Maryland Oncology Hematology PA
Minnesota Oncology Hematology PA
Missouri Cancer Associates
New York Oncology Hematology PC
Northwest Cancer Specialists PC
Ocala Oncology Center PI
Oncology Associates of Oregon PC
Regional Cancer Care PA
Rocky Mountain Cancer Centers LLP
South Florida Oncology and Hematology Consultants
St. Louis Urological Surgeons, Inc.
Texas Oncology PA
The Hope Center for Cancer Care
Venango Oncology Hematology
Virginia Oncology Associates
Wilshire Oncology Medical Group, Inc.

All other terms and conditions of the policy remain unchanged.

_Cagrmans_

Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

East Indy CC, LLC
FAR-SUR
Foremost de Venezuela, S.A. (Forvensa)
Foremost Iran Corporation
Foremost Shir, Inc.
Foremost Tehran, Inc.
Golden State Corporate Services LLC
Golden State Insurance Company Ltd.
Greenville Radiation Care, Inc.
HBOC Medical Ltd.
Health Mart Systems, Inc.
Health Nexus LLC
HF Land Company
**Innovent Oncology, LLC**
Intercal, Inc.
Interlakes Oncology Hematology PC
Iowa Pharmaceutical Services, LLC
KCCC JV, LLC
KCCC/SMMC Cancer Center, LLC
KWS & P/SFA, Inc.
McKesson (Shanghai) Trading Co. Ltd.
McKesson Automation Canada Corporation
McKesson Automation Inc.
McKesson Automation Systems Inc.
McKesson Canada Corporation
McKesson Canada Support Services Corporation
McKesson Capital Funding Corporation
McKesson Capital LLC
McKesson Central Fill LLC
McKesson China Holdings S.a.r.l.
McKesson Financial Holdings
McKesson Financial Holdings II
McKesson Funding Company of Canada
McKesson Health Solutions Holdings LLC
McKesson Health Solutions LLC
McKesson High Volume Solutions Inc.
McKesson Information Solutions Canada Company
McKesson Information Solutions Capital S.a.r.l.
McKesson Information Solutions Finance S.a.r.l.
McKesson Information Solutions France SAS
McKesson Information Solutions Holdings France S.a.r.l.
McKesson Information Solutions Holdings S.a.r.l.
McKesson Information Solutions Netherlands B.V.
McKesson Information Solutions Sweden AB
McKesson Information Solutions Topholdings S.a.r.l.
McKesson International Bermuda IP2A Limited
McKesson International Bermuda IP2B Limited
McKesson International Bermuda IP3B Limited
McKesson International Bermuda IP4A Limited
McKesson International Bermuda IP4B Unlimited
McKesson International Bermuda IP5A Limited
McKesson International Bermuda IP5B Unlimited

McKesson International Bermuda Opco 1A Limited
McKesson International Bermuda Opco 1B Unlimited
McKesson International Bermuda Opco3A Limited
McKesson International Bermuda Opco3B Unlimited
McKesson International Bermuda Opco4A Limited
McKesson International Bermuda Opco4B Limited
McKesson International Bermuida IP3A Limited
McKesson International Capital S.a.r.l.
McKesson International Finance S.a.r.l.
McKesson International Holdings
McKesson International Holdings II S.a.r.l.
McKesson International Holdings III S.a.r.l.
McKesson International Holdings IV S.a.r.l.
McKesson International Holdings S.a.r.l.
McKesson International Holdings SRL
McKesson International Holdings V S.a.r.l.
McKesson International Holdings VII S.a.r.l.
McKesson International Malaysia SND. BHD.
McKesson International S.a.r.l.
McKesson International SRL
McKesson International Sweden I AB
McKesson International Sweden II AB
McKesson International Sweden III AB
McKesson International Topholdings S.a.r.l.
McKesson Intrernational Holdings LLC
McKesson Ireland
McKesson Israel Ltd.
McKesson Medical Imaging Company
McKesson Medical-Surgical FDT Inc.
McKesson Medical-Surgical Holdings Inc.
McKesson Medical-Surgical Inc.
McKesson Medical-Surgical International
McKesson Medical-Surgical MediMart Inc.
McKesson Medical-Surgical Minnesota Inc.
McKesson Medical-Surgical Minnesota Supply Inc.
McKesson Nederland B.V.
McKesson Pharmaceutical Holdings LLC
McKesson Pharmacy Optimization LLC
McKesson Pharmacy Systems Canada ULC
McKesson Pharmacy Systems LLC
McKesson Plasma and Biologics LLC
McKesson Property Company, Inc.
McKesson Specialty Arizona Inc.
McKesson Specialty Care Distribution Corporation
McKesson Specialty Care Distribution Joint Venture LP
McKesson Specialty Care Distribution Joint Venture LP
McKesson Specialty Distribution LLC
McKesson Specialty Holdings LLC
McKesson Specialty Prescription (BC) Services Corporation
McKesson Specialty Prescription Services (Atlantic) Corporation
McKesson Specialty Prescription Services Corporation
McKesson Technologies Inc.

McKesson Transportation Systems, Inc.
McKesson UK Holdings
McQueary Bros. Drug Company, LLC
Med Fusion, LLC
Medcon Systems (1993)
Medcon UK Limited
Medical & Vaccine Products, Inc.
Metropolitian Integrated Cancer Center, LLC
MH/USON Radiation Management Company, LLC
MHD-USO General, LLC
MHD-USO Management Company, LP
Moore Medical LLC
MSA Products LLC
N.V Medicopharma
Nadro S. de R.L. de C.V.
Nadro S.A. de C.V.
National Oncology Alliance, Inc.
NDCHealth Corporation
NDCHealth Pharmacy Systems and Services, Inc.
Nebraska Pharmaceutical Services, LLC
New Mexico Pharmaceutical Services, LLC
Nexcura, LLC
North Carolina Pharmaceutical Services, LLC
Northstar Healthcare
Northstar Healthcare Holdings
Northstar Rx LLC
Oncology Holdings II, Inc.
Oncology Holdings, Inc.
Oncology Portal, LLC
Oncology RX Care Advantage, LP
Oncology Therapeutics Network Corporation
Oncology Today, LP
Onmark, Inc.
Oregon Cancer Centers Ltd
OTN Generics, Inc.
OTN Participant, Inc.
Per-Se Technologies Canada, Inc.
Pharmessor Group Corporation
Physician Reliance Network, LLC
Physician Reliance, LLC
Presbyterian Cancer Center-Dallas, LLC
Prismedica, SAS
PST Services, Inc.
Purchasing Alliance for Clinical Therapeutics, LLC
RFCC Asset, LLC
RFCC Support, LLC
RMCC Cancer Center, LLC
S.K.U., Inc.
San Bruno Mountain, Ltd.
Southeast Texas Cancer Centers, LP
St. Louis Pharmaceutical Services LLC
Sterling Medical Services, LLC

XS-24545 (03/08)

Strategic Health Alliance II, Inc.
Strategic Health Alliance Management Corp.
Texas Pharmaceutical Services, LLC
The Carroll County Cancer Center, Ltd.
TOPS Pharmacy Services, Inc.
Tyler Radiation Equipment Leasing, LLC
Unity Oncology, LLC
US Oncology Clinical Development, LLC
US Oncology Corporate, Inc.
US Oncology Holdings, Inc.
US Oncology Integrated Solutions, LP
US Oncology Lab Services, LLC
US Oncology Pharmaceutical Services, LLC
US Oncology Reimbursement Solutions, LLC
US Oncology Research, LLC
US Oncology Specialty, LP
US Oncology, Inc.
Visitaction Associates
WFCC Radiation Management Company, LLC
Zee Medical, Inc.

All other terms and conditions of this policy remain unchanged.

*Cgrman*

Authorized Representative

**Revised - Schedule of Underlying Insurance**

**ace group**

Effective date 08/31/2011

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | G24903126 | 07/01/2011 to 07/01/2012 |

| **General Liability (Canada)** | Limits of Insurance | |
|---|---|---|
| Company: Old Republic Insurance Co. | Each Occurrence | $ 5,000,000 |
| | Aggregate | $ 5,000,000 |
| Policy Number: TBD | Personal Injury | $ 5,000,000 |
| Policy Period: 07/01/2010 to 07/01/2011 | Non-Owned Auto | $ 2,000,000 |

| **General Liability (New York)** | Limits of Insurance | |
|---|---|---|
| Company: Old Republic Insurance Co. | General Aggregate | $ 5,000,000 |
| | Each Occurrence | $ 5,000,000 |
| Policy Number: TBD | | |
| Policy Period: 07/01/2010 to 07/01/2011 | | |

| **Employers Liability** | Limits of Insurance |
|---|---|
| Company: Old Republic Insurance Co. | Bodily Injury by Accident |
| | $ 5,000,000 Each Accident |
| Policy Number: TBD | Bodily Injury By Disease |
| | $ 5,000,000 Each Policy |
| | $ 5,000,000 Each Employee |
| Policy Period: 07/01/2010 to 07/01/2011 | |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.



# Revised -Schedule of Underlying Insurance (Continued)

## ace group

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | G24903126 | 07/01/2011 **to** 07/01/2012 |

| | | Limits of Insurance |
|---|---|---|
| Coverage | Foreign DIC General Liability | |
| Company | Insurance Company of the State of PA | $1,000,000 Occurrence |
| Policy Number | TBD | $2,000,000 Products Completed Operations Aggregate |
| Policy Period | 07/01/2011 to 07/01/2012 | $2,000,000 General Aggregate |
| | | $4,000,000 Master Control Policy Aggregate |

| | | Limits of Insurance |
|---|---|---|
| Coverage | Foreign DIC Employee Benefits Liability | |
| Company | Insurance Company of the State of PA | $1,000,000 Aggregate |
| Policy Number | TBD | $1,000,000 Occurrence |
| Policy Period | 07/01/2011 to 07/01/2012 | |

| | | Limits of Insurance |
|---|---|---|
| Coverage | Foreign DIC Automobile Liability | |
| Company | Insurance Company of the State of PA | $1,000,000 Occurrence |
| Policy Number | TBD | |
| Policy Period | 07/01/2011 to 07/01/2012 | |

| | | Limits of Insurance |
|---|---|---|
| Coverage | Foreign DIC Employers Liability | |
| Company | Insurance Company of the State of PA | $1,000,000 Each Accident |
| Policy Number | TBD | $1,000,000 Each Policy |
| Policy Period | 07/01/2011 to 07/01/2012 | $1,000,000 Each Employee |

| | | Limits of Insurance |
|---|---|---|
| Coverage | Employers Liability - UK | |
| Company | AIG UK Limited | £10,000,000 Occurrence |
| Policy Number | TBD | |
| Policy Period | 07/01/2011 to 07/01/2012 | |


**ace group**

# Revised -Schedule of Underlying Insurance (Continued)

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | G24903126 | 07/01/2011 to 07/01/2012 |

---

**Automobile Liability – (As respects Oncology Hematology PC)**

Limits of Insurance

Company

Liberty Mutual Fire Insurance Company

Policy Number:

AS2-691-438455-011

Policy Period  08/31/2011 to 08/31/2012

Bodily Injury and Property Damage

Combined Single Limit

$ 1,000,000 Each Accident

---

**Employers Liability – (As respects Oncology Hematology PC)**

Limits of Insurance

**Company**
Various, per schedule on file

Bodily Injury by Accident

$ 1,000,000 Each Accident

**Policy Number:**

Various, per schedule on file

Bodily Injury By Disease

$ 1,000,000 Each Policy

$ 1,000,000 Each Employee

Policy Period  Various, per schedule on file

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

# EXHIBIT D



**ace group**

# Declarations
# ACE Umbrella Plus<sup>sm</sup>
# Commercial Umbrella Liability Policy

| Policy Symbol: XOO | Previous Policy Symbol: XOO |
|---|---|
| Policy Number: G24903229 | Previous Policy Number: G24903126 |

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW

**ACE Property and Casualty Insurance Company**
436 Walnut Street
Philadelphia, PA  19106

| Named Insured and Address | Producer Name and Address |
|---|---|
| McKesson Corporation<br>One Post Street, 34th Floor<br>San Francisco, CA  94104 | Marsh Risk & Insurance Services<br>345 California Street<br>San Francisco, CA  94104<br><br>PRODUCER CODE  355110 |

| Policy Period:   From 07/01/2012          to 07/01/2013 | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |
|---|---|

## Limits of Insurance

| $ 25,000,000 | Each Occurrence | | |
|---|---|---|---|
| $ 25,000,000 | General Aggregate | | |
| $ 25,000,000 | Products Completed-Operations Aggregate | $ 25,000 | Self-Insured Retention |

## Annual Premium

| $ 729,275 | Premium | $ 34,727 | Terrorism Premium included in Annual Premium |
|---|---|---|---|
| $ 729,275 | Premium, including all Surcharges and Assessments | | |

## Policy Period Premium

| $ 729,275 | Premium | $ 34,727 | Terrorism Premium included in Annual Premium |
|---|---|---|---|
| $ 729,275 | Premium, including all Surcharges and Assessments | | |

## Schedule of Underlying Insurance

Refer to the attached Schedule of Underlying Insurance, XS-9U57b which forms a part of this Policy's Declarations.

## Endorsements and Forms

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.



# Schedule of Underlying Insurance

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G24903229** | **07/01/2012 - 07/01/2013** |

---

**General Liability (New York)**                          Limits of Insurance

Company                                                    Each Occurrence        $ 5,000,000

Old Republic Insurance Company                             Aggregate              $ 5,000,000

Policy Number  TBD

Policy Period  07/01/2012 - 07/01/2013

---

**General Liability
(Canada)**                                                 Limits of Insurance

Company                                                    Each Occurrence        $ 5,000,000

Old Republic Insurance Company                             Aggregate              $ 5,000,000

Policy Number  TBD                                         PI Occurrence          $ 5,000,000

Policy Period  07/01/2012 - 07/01/2013                     Non-Owned Auto         $ 2,000,000

---

**Employers Liability**                                    Limits of Insurance

Company                                                    Bodily Injury by Accident

Old Republic Insurance Company                                  $ 5,000,000 Each Accident

Policy Number  TBD                                         Bodily Injury By Disease

                                                               $ 5,000,000 Each Policy

                                                               $ 5,000,000 Each Employee

Policy Period  07/01/2012 - 07/01/2013

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

---



# Schedule of Underlying Insurance (Continued)

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G24903229** | **07/01/2012 – 07/01/2013** |

| Coverage | **Employers Liability (US Oncology)** | Limits of Insurance |
|---|---|---|
| Company | Various – Per Schedule on File | Bodily Injury by Accident |
| Policy Number | TBD | $ <u>1,000,000</u> Each Accident |
| | | Bodily Injury By Disease |
| | | $ <u>1,000,000</u> Each Policy |
| Policy Period | 07/01/2012 - 07/01/2013 | $ <u>1,000,000</u> Each Employee |

| Coverage | **Auto Liability (US Oncology)** | Limits of Insurance |
|---|---|---|
| Company | Various – Per Schedule on File | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | TBD | |
| Policy Period | 07/01/2012 - 07/01/2013 | |

| Coverage | **Foreign DIC General Liability** | Limits of Insurance |
|---|---|---|
| Company | Insurance Company of the State of Pennsylvania | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | TBD | General Aggregate $ <u>2,000,000</u> |
| | | PCO Aggregate $ <u>2,000,000</u> |
| Policy Period | 07/01/2012 - 07/01/2013 | Master Policy Aggregate $ <u>4,000,000</u> |

| Coverage | **Foreign DIC – Employee Benefits Liability** | Limits of Insurance |
|---|---|---|
| Company | Insurance Company of the State of Pennsylvania | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | TBD | Aggregate $ <u>1,000,000</u> |
| Policy Period | 07/01/2012 - 07/01/2013 | |


**ace group**

# Schedule of Underlying Insurance (Continued)

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G24903229** | **07/01/2012 – 07/01/2013** |

| | | |
|---|---|---|
| Coverage | **Foreign DIC - Automobile Liability** | Limits of Insurance |
| Company | Insurance Company of the State of Pennsylvania | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | TBD | |
| Policy Period | 07/01/2012 - 07/01/2013 | |

| | | |
|---|---|---|
| Coverage | **Foreign DIC – Employers Liability** | Limits of Insurance |
| Company | Insurance Company of the State of Pennsylvania | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | TBD | Aggregate $ <u>1,000,000</u> |
| Policy Period | 07/01/2012 - 07/01/2013 | |

| | | |
|---|---|---|
| Coverage | **UK – Employers Liability** | Limits of Insurance |
| Company | Chartis Insurance Company | Each Occurrence GBP <u>10,000,000</u> |
| Policy Number | TBD | |
| Policy Period | 07/01/2012 - 07/01/2013 | |



# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G24903229** | **07/01/2012 - 07/01/2013** |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| | XS-20835 (08/06) | Commercial Umbrella Liability Policy |
| | ALL-20887 (10/06) | ACE Producer Compensation Practices & Policies |
| | XS-28500 (10/09) | Ace Groups Specialty Claims Loss Notification Form |
| | IL P 001 (01/04) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| | XS-22552 (06/07) | Catastrophe Management Policyholder Notice |
| 1 | CC-1K11g (01/11) | Signatures |
| 2 | XS-20755 (08/06) | Non-Concurrency Endorsement(Recognizes Non-Concurrency) |
| 3 | XS-20756 (08/06) | Notice Of Occurrence |
| 4 | XS-20782 (08/06) | Cancellation Amendatory Endorsement |
| 5 | XS-21580 (01/07) | Professional Services Liability Exclusion - Exception For Resulting Bodily Injury And Property Damage |
| 6 | XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| 7 | XS 30060 (07/10) | Cancellation Pro-Rata Endorsement |
| 8 | XS 30063 (07/10) | Coverage Territory Definition Amendment |
| 9 | XS-26426 (02/09) | Employee Benefit Plan Limitation (Claims Made) |
| 10 | XS-23634 (01/08) | Fellow Employee Exclusion Deleted |
| 11 | XS-28727a (01/11) | Foreign Loss Indemnity Endorsement |
| 12 | XS-23637 (01/08) | Foreign Liability Limitation |
| 13 | XS-26428(02/09) | Incidental Medical Malpractice Endorsement |
| 14 | XS-26429b (02/11) | Industrial Aid Aircraft Endorsement |
| 15 | XS-20753 (08/06) | Knowledge Of Occurrence |
| 16 | XS-24545 (03/08) | Named Insured Endorsement |
| 17 | XS-20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and Named Peril (with Insured's Retained Limit) |
| 18 | XS-23501 (04/08) | Unintentional Failure to Disclose |



# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G24903229** | **07/01/2012 - 07/01/2013** |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 19 | XS-25254 (02/09) | War Exclusion |
| 20 | ALL-32688 (01/11) | Notice To Others Endorsement  - Specific Parties |
| 21 | TRIA11b (01/08) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 22 | XS-23669 (01/08) | Cap On Losses From Certified Acts Of Terrorism |
| 23 | ALL-21101 (11/06) | Trade Or Economic Sanctions Endorsement |
| 24 | XS-1V12b (08/11) | California Changes - Cancellation And Nonrenewal |
| 25 | MS-11231 (06/12) | Amendment of Who is an Insured |
| 26 | MS-10110 | Annual Period Extension – Natural Disaster or Other Catastrophe |
| 27 | MS-10106 | Automobile Liability Limitation Endorsement |
| 28 | MS-10108 | Clinical Trial Exclusion Endorsement |
| 29 | MS-11232 (06/12) | Amendment of Definition J. – Insured Contract |
| 30 | MS-12122 (07/12) | Personal Injury Definition Amended to Include Discrimination |
| 31 | MS-12125 (07/12) | Foreign Liability Follow Form Limitation Endorsement – Exception for Products |
| 32 | MS-10102 | Government Immunity Endorsement |
| 33 | MS-10100 | Health Care Services Exclusion |
| 34 | MS-11233 (06/12) | Insureds in Media and Internet Type Businesses Exclusion |
| 35 | MS-12121 (07/12) | Manufacture of Drugs Exclusion |
| 36 | MS-12123 (07/12) | Newly Acquired Entity Endorsement (Including Joint Venture) |
| 37 | MS-10107 | Non – Contributory Endorsement for Additional Insureds |
| 38 | MS-10104 | Retained Limit Endorsement (No Underlying Insurance) |
| 39 | MS-12124 (07/12) | Trailing Retention Endorsement (No Underlying Insurance) |
| 40 | MS-10103 | Who is an Insured Endorsement |
| 41 | MS-13847 | Internal Creation Endorsement |
| 42 | XS-33307 (06/11) | Tie In of Limits Endorsement |



**ACE Umbrella Plus**<sup>SM</sup>

**Commercial Umbrella Liability Policy**

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

I.  **INSURING AGREEMENT**

   A.  We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or personal and advertising injury" to which this insurance applies.

   1.  This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

   a.  The "bodily injury" or "property damage" is caused by an "occurrence";

   b.  The "bodily injury" or "property damage" occurs during the "policy period"; and

   c.  Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

   2.  This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

   B.  "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

   C.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   1.  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   2.  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   3.  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II. WHO IS AN INSURED

A. The following are "insureds":

1. The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2. Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3. If you are designated in the Declarations as:

   a. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

   c. A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

   e. A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

   a. "Bodily injury" or "personal and advertising injury":

      (1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (2) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

      (3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

      (4) Arising out of his or her providing or failing to provide professional health care services.

   b. "Property damage" to property:

      (1) Owned, occupied or used by you,

      (2) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this policy.

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization.  However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   b. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

   c. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

   d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6. Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

III. **DEFENSE AND SUPPLEMENTARY PAYMENTS**

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

   1. When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

   2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

   3. When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B. We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C. We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D. If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

   1. All expenses we incur.

   2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy.  We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6. All costs taxed against the "insured" in the "suit".

7. Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8. Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E. Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made or "suits" brought; or

3. Persons or organizations making claims or bringing "suits".

B. The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1. Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2. Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D. Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E. If the applicable limits of "underlying insurance" have been:

1. Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

V. **EXCLUSIONS**

This insurance does not apply to:

A. **Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1. A watercraft while ashore on premises you own or rent; or

2. A watercraft you do not own that is:

   a. Less than 26 feet long; and

   b. Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

B. **Asbestos**

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

C. **Contractual Liability**

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1. That the "insured" would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

   a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

D. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E.   **Damage to Property**

"Property damage" to:

1.   Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3.   Property loaned to you;

4.   Personal property in the care, custody or control of the "insured";

5.   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6.   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F.   **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G.   **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.   **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I.   **Employer's Liability**

"Bodily injury" to:

1.   An "employee" of the "insured" arising out of and in the course of:

   a.   Employment by the "insured"; or

   b.   Performing duties related to the conduct of the "insured's" business; or

2.   The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1.   Whether the "insured" may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1. To liability assumed by the "insured" under an "insured contract".

2. To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J. **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies,  acts or omissions; or

4. Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M. **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1. Advertising, broadcasting, publishing or telecasting;

2. Designing or determining content of web-sites for others; or

3. An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VI - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N. **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O. **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P. **Nuclear**

1. To any injury or damage:

   a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting form the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

   a. "Hazardous properties" include radioactive, toxic or explosive properties;

   b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e. "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f. "Nuclear facility" means:

    (1)    Any "nuclear reactor";

    (2)    Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

    (3)    Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

    (4)    Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

**Q. Other "Personal and Advertising Injury"**

1. "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2. "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3. "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4. Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5. "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    a. That the "insured" would have in the absence of the contract or agreement; or

    b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

        i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6. "Personal and advertising injury" arising out of a breach of contract, except an implied contract use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

   b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (1) Any "insured"; or

      (2) Any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

   e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

   f. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

   g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

   However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

   1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

   2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury"or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6. Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a. The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b. The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7. Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a. The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S. **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T. **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U. **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V. **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication.   This exclusion also applies to communications which are made or allegedly made in violation of the:

1.      Telephone Consumer Protection Act (TCPA) including any

        Amendment of or addition to such law; or

2.      The CAN-SPAM Act of 2003, including any amendment of

        Or addition to such law; or

3.      Any statute, ordinance or regulation, other than the TCPA

        Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

## VI. **CONDITIONS**

A. **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B. **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us.  If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    d.   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

  4.  No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

**G.  Inspection and Audit**

  1.  We will be permitted, but not obligated to inspect the "insured's" property and operations.  Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

  2.  We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

**H.  Legal Action Against Us**

  1.  No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

  2.  You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

**I.  Maintenance of "Underlying Insurance"**

During the "policy period", you agree:

  1.  To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

  2.  That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

  3.  That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

  4.  That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

  5.  That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

**J.  Other Insurance**

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance".  This provision will not apply if the "other insurance" is written to be excess of this policy.

**K.  Premium**

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium.  It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

**L.  Separation of "Insureds"**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

  1.  As if each Named Insured were the only Named Insured; and

2.   Separately to each "insured" against whom claim is made or "suit" is brought.

M. **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N. **Transfer of Rights of Recovery Against Others to Us**

1.   If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2.   Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment.  The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3.   If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O. **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy.  The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

VII. **DEFINITIONS**

A.   "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.   Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B.   "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D.   "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E.   "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker".  "Employee" does not include a "temporary worker" or independent contractor.

F.   "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G.   "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H.   "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I. "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured

J. "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities

K. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M. "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      a.   Power cranes, shovels, loaders, diggers or drills; or

      b.   Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.   Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      a.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      b.   Cherry pickers and similar devices used to raise or lower workers;

6.   Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      a.   Equipment designed primarily for:

         i.   Snow removal;

         ii.   Road maintenance, but not construction or resurfacing; or

         iii.   Street cleaning;

      b.   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      c.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O.  "Occurrence" means:

1.   With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2.   With respect to "personal and advertising injury", a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P.  "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q.  "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1.   False arrest, detention or imprisonment;

2.   Malicious prosecution;

3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

6.   The use of another's advertising idea in your "advertisement"; or

7.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S.   "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T.   "Products-completed operations hazard":

1.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

a.   Products that are still in your physical possession; or

b.   Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

i.   When all of the work called for in your contract has been completed

ii.   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

iii.   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2.   Does not include "bodily injury" or "property damage" arising out of:

a.   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

b.   The existence of tools, uninstalled equipment or abandoned or unused materials.

U.   "Property damage" means:

1.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.   Loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V.   "Retained limit" means either of the following:

1.   The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2.   The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W.   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

1.   An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

X.   "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.   "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.   "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA.   "Your product":

   1.   Means:

      a.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (1)   You;

         (2)   Others trading under your name; or

         (3)   A person or organization whose business or assets you have acquired; and

      b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   2.   Includes:

      a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      b.   The providing of or failure to provide warnings or instructions.

   3.   Does not include vending machines or other property rented to or located for the use of others but not sold.

BB.   "Your work":

   1.   Means:

      a.   Work or operations performed by you or on your behalf; and

      b.   Materials, parts or equipment furnished in connection with such work or operations

   2.   Includes:

      a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      **b.**   The providing of or failure to provide warnings or instructions.



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our  website  at http://www.aceproducercompensation.com or by calling the  following toll-free  telephone number: 1-866-512-2862.

ALL-20887 (10/06)



# ACE GROUP SPECIALTY CLAIMS LOSS NOTIFICATION FORM

**FORWARD BY FAX, MAIL OR E-MAILTO:**

ACE Excess
P.O. Box 5103
Scranton, PA 18505-0510
Fax No.:  (866)635-5687

CasualtyRiskExcessFirstNotice@acegroup.com

## Today's Date: 24 July 2012

**Notice of:**   (check all that apply)

☐ **First-Party Claim**          ☐ **Potential Claim**

☐ **Third-Party Claim**          ☐ **Litigation Initiated**

☐ **Other_____**

## Insured's Name & Contact Information

**Company Name:**   McKesson Corporation                **Point of Contact:** _____

**Address:**   One Post St, 34th Floor
San Francisco  CA 94104

**Phone Number:** _____

## Broker/Agent's Name & Contact Information

**Company Name:**   MARSH RISK & INSURANCE SERVICES        **Point of Contact:**   Linda Miner

**Address:**   345 CALIFORNIA STREET
SAN FRANCISCO  CA 94104

**Phone Number:** _____

## Policy Information

**Policy Number:**   XOO G24903229                **Policy Period:**   07/01/2012 - 07/01/2013

**Limits of Liability:**   25,000,000   **per**   25,000,000   **agg**   **Self-Insured Retention/Deductible:**   25,000.00

## Loss Information

**Date of Incident/Claim:** _____   **Location:** _____

**Claimant Name/Address:** _____

**Description of Loss:** _____

_____

_____

_____

Please list all attached or enclosed documentation:   ☐   (check if none provided)

_____

_____

_____

Name of Person Completing This Form: _____   Signature: _____

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc.,  2004

**COMMERCIAL UMBRELLA LIABILITY**

**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully.

When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.
- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

# 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.
- Please be prepared to provide the following information:
  - Caller's name, title and contact telephone number
  - Name of Insured
  - Policy Number
  - A description of the incident
  - Any witnesses
  - Property, Product or Vehicle Information
  - Incident Location
  - Contact Person
  - Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty insurance Company or one of its insurance company affiliates.*

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **1** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

CARMINE A. GIGANTI, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

CC-1K11g  (01/11)

# NON-CONCURRENCY ENDORSEMENT
## (Recognizes Non-Concurrency)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **2** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Whereas, the policy (ies) listed in the schedule of "underlying insurance" are non-concurrent with the "policy period" hereunder;

In the event of reduction or exhaustion of the aggregate limit(s) of the policy (ies) by reason of "occurrences" prior to the inception of this policy, it is agreed that such insurance as is afforded by this policy shall:

    (1)   in the event of reduction apply in excess of the reduced underlying limit; or

    (2)   in the event of exhaustion continue in force as "underlying insurance".

Anything in this endorsement to the contrary notwithstanding this policy applies only to "occurrences" happening during the "policy period".

"Policy period" means the period stated in the Declarations of this policy.

All other terms and conditions remain unchanged.

 

 

_____
Authorized Agent

# NOTICE OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **3** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-20756 (08/06)                                                                                    Page 1 of 1

# CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **4** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Parts 1., 2., 5 and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1.  This policy may be  cancelled by you by  mailing to us  written notice stating  when such  cancellation shall be effective.

2.  This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than <u>one hundred twenty</u> (<u>120</u>) days thereafter, <u>ten</u> (<u>10</u>) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective.  The mailing of notice shall be sufficient proof        of notice.  The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".  Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5.  If you cancel, earned premiums shall be computed in accordance with the applicable short rate table or procedure. If we cancel, earned premium shall be computed pro-rata.

6.  Premium adjustment may be made at the time cancellation becomes effective. our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

# PROFESSIONAL SERVICES LIABILITY EXCLUSION - EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **5** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of the policy remain unchanged.

_____

Authorized Agent

XS-21580 (01/07)

# CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **6** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

      $250,000 Annual Limit

Catastrophe Management Coverage

A. Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

B. A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

C. There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

D. Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

E. Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

F. For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling;  travel expenses; temporary living expenses or other necessary response costs and approved by us,  incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured".  A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____
                              Authorized Agent

# CANCELLATION PRO-RATA ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **7** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERICAL UMBRELLA LIABILITY POLICY**

Paragraphs 4 and 5 of Condition D. **Cancellation** are deleted and replaced with the following:

If this policy is cancelled, the final premium will be calculated pro rata based upon the time this policy was in force.  Final premium will not be less than the pro rata share of the Annual Premium as shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# COVERAGE TERRITORY DEFINITION AMENDMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

**Section VII**., **DEFINITIONS**, Item D. "Coverage territory" is deleted and replaced with the following:

D.  "Coverage territory" means anywhere in the world.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# EMPLOYEE BENEFIT PLAN LIMITATION
# [CLAIMS MADE]

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **9** |

| Policy Symbol | Policy Number | Policy Period | Effec ive Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

1.  Underlying Insurance

    Company:                Old Republic Insurance Company of Canada

    Policy Number:          CZY59583

    Expiration Date:        07/01/2013

    Retroactive Date:       None

    Limits of Insurance:    $25,000,000

    Each Employee           $5,000,000

    Aggregate:              $5,000,000


    Company:                Insurance Company of the State of Pennsylvania

    Policy Number:          80-0270149

    Expiration Date:        07/01/2013

    Retroactive Date:       None

    Limits of Insurance:    $25,000,000

    Each Employee           $1,000,000

    Aggregate:              $5,000,000

| | |
|---|---|
| Company: | Illinois Union Insurance Company |
| Policy Number: | TBD |
| Expiration Date: | 07/01/2013 |
| Retroactive Date: | 07/01/2006 |
| Limits of Insurance: | $25,000,000 |
| Each Employee | $5,000,000 |
| Aggregate: | $5,000,000 |

2.   Our Retroactive Date:          07/01/2006

3.   Coverage

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

"Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

a. Counseling "employees" on your "employee benefit programs";

b. Interpreting your "employee benefit programs";

c. Handling records for your "employee benefit programs";

d. Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e. Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f. Collection of contributions and application of contributions as provided in your "employee benefit programs";

g. Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h. Processing of claims for your "employee benefit programs".

"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4. Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a. Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i. The date such claim is first made against you is during OUR policy period, and

ii. The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b. Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in like manner, subject to all of the following:

i. Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii. The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c. Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance" above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i. The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii. Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii. If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d. Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# FELLOW EMPLOYEE EXCLUSION DELETED

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **10** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)   To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

_____
                                                    Authorized Agent

# FOREIGN LOSS INDEMNITY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **11** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

**THIS ENDORSEMENT APPLIES ONLY WHEN A "FOREIGN OCCURRENCE", ARISING OUT OF A "FOREIGN BUSINESS OPERATION" AND CAUSING "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY", TAKES PLACE IN A COUNTRY WHERE WE ARE NOT "LICENSED".**

The policy is amended to add the following:

## FIRST NAMED INSURED INDEMNITY COVERAGE

### I.   INSURING AGREEMENT

This endorsement applies only when a "foreign occurrence", arising out of a "foreign business operation" and causing "bodily injury", "property damage" or "personal and advertising injury", takes place in a country where we are not "licensed".

In that case, rather than directly pay on behalf of and defend your "foreign business operation", we will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" and defense and supplementary payments in accordance with this endorsement. This endorsement provides the only coverage under the policy for "bodily injury", "property damage" or "personal and advertising injury" arising out of a "foreign occurrence".

The terms, conditions and limitations in sub-section A.1., A.2., B., C. and D. of Section **I.  INSURING AGREEMENT** in the policy will apply to our duty to indemnify the "First Named Insured".

### II.   WHO IS AN INSURED

Section **II.  WHO IS AN INSURED**, is amended to provide that a "foreign business operation" is not an "insured" on whose behalf we have a direct duty to pay settlements or judgments or a direct duty to defend under this policy.

### III.   DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS

When this endorsement applies, rather than directly defend your "foreign business operation", we will indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign business operation", provided that (a) the "foreign business operation" gives the "First Named Insured" the right to control

the investigation, defense and settlement of the "suit" and (b) the "First Named Insured" assigns this right to us. We will associate with the "First Named Insured" to conduct such investigation, defense and settlement as provided in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, except that we will indemnify the "First Named Insured" rather than directly defend and pay supplementary payments.

## IV.  LIMITS OF INSURANCE

A.  The insurance provided by this endorsement is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity will erode and be counted against such limits.

B.  Subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

1.  Has indemnified a "foreign business operation", or

2.  Represents to us that it is obligated to indemnify the "foreign business operation".

However, if this policy provides for a percentage allocation of liability with respect to the insured's or the "foreign business operation's" interest in a joint venture, limited liability company or partnership, the allocation set forth in such provision will apply.

The terms, conditions and limitations set forth in Section **IV. LIMITS OF INSURANCE** in the policy will apply to our duty to indemnify the "First Named Insured".

## V.  CONDITIONS

When this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy.

### A.  Claims Made/Reported Coverage (if applicable)

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period will also apply to all claims made against a "foreign business operation" for which the "First Named Insured" seeks indemnification.

### B.  Additional Notice Duties of the "First Named Insured"

With respect to a "foreign occurrence" which may result in a claim for damages under this endorsement, the "First Named Insured" assumes the duty to notify us, and must notify us in accordance with the standards described in Condition **F. Duties in the Event of "Occurrence", Claim or "Suit"** in the policy.

### C.  Proof of Insurance

This policy may not be offered as proof of insurance unless permitted by local applicable law.

### D.  Truthfulness and Accuracy of Material Information

When this endorsement applies, the "First Named Insured":

1.  Is responsible for the truthfulness and accuracy of any material information provided to us with respect to a "foreign business operation", "foreign occurrence", claim, "suit" or "loss"; and

© 2011

2. Will not, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured, a "foreign business operation", a "loss", claim or "suit" or a "foreign occurrence".

## VI. DEFINITIONS

When this endorsement applies, Definition M. "Loss" in the policy is deleted and replaced with the following:

M. "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "foreign business operation" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", for which the "foreign business operation" makes a claim for reimbursement from the "First Named Insured", after making proper deduction for all recoveries and salvages.

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign business operation" means a subsidiary of the "First Named Insured" and any other organization under its control or active management at the inception date of the policy or added by endorsement, and having its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", "property damage" or "personal and advertising injury" located in a country where we are not "licensed".

"Foreign occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign business operation" taking place in or causing "bodily injury", "property damage" or "personal and advertising injury" in a country where we are not "licensed". Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

"Licensed" means expressly approved in accordance with law by the applicable regulatory body to conduct the business of insurance in a country as a regulated, authorized insurer. "Licensed" is synonymous with admitted and authorized.  It does not include being recorded as an eligible foreign or alien non-admitted insurer.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

# FOREIGN LIABILITY LIMITATION

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **12** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the "scheduled underlying insurance:"

1) This exclusion shall not apply; and

2) Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance," subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance."

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

# INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **13** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4)  arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a.  medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

b.  the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-26428 (02/09)

# INDUSTRIAL AID AIRCRAFT ENDORSEMENT

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **14** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.   LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$500,000,000 Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned by or rented or loaned to any "insured".   Use includes operation and "loading and unloading").

II.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV.   Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance".

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses".

V.   For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.   Aircraft
This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI.  For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1.  attorney's fees and all other investigation, loss adjustment and litigation expenses;
2.  premiums on bonds to release attachments;
3.  premiums on appeal bonds required by law to appeal any claim or "suit";
4.  costs taxed against the "insured" in any claim or "suit";
5.  pre-judgment interest awarded against the "insured"; and
6.  interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used predominantly for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# KNOWLEDGE OF OCCURRENCE

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **15** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# NAMED INSURED ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **16** |
| Policy Symbol | Policy Number | Policy Period | Effec ive Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS LIABILITY CATASTROPHE POLICY**

**EXCESS LIABILITY POLICY**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

**McKesson Corporation**
10101 Woodloch Forest LLC
A.L.I. Technologies (Deutschland) GmbH
AccessMed Holdings, LLC
AccessMed, LLC
AOR Holding Company of Indiana, LLC
AOR Management Company of Arizona, LLC
AOR Management Company of Indiana, LLC
AOR Management Company of Missouri, LLC
AOR Management Company of Oklahoma, LLC
AOR Management Company of Pennsylvania LLC
AOR Management Company of Virginia LLC
AOR of Indiana Management Partnership
AOR of Texas Management, LLC
AOR Real Estate, LLC
AOR Synthetic Real Estate LLC
AORT Holding Company, Inc.
Ascalon International LLC
Ashville CC, LLC (in process of being sold)
**Beldere Corporation**
Bluestar Group
Cancer Treatment Associates of Northeast Missouri, Ltd.
Care Records Ltd.
CCCN NW Building,JV
**CGSF Funding Corproration**
**City Properties, S.A.**
Colorado Cancer Centers, LLC
Conscia Enterprise Systems

Cypress Medical Products LLC
**D & K Healthcare Resources LLC**
Delta Clinical Research LLC
East Indy CC, LLC
FAR-SUR
**Foremost de Venezuela, S.A. (Forvensa)**
**Foremost Iran Corporation**
**Foremost Shir, Inc.**
**Foremost Tehran, Inc.**
**Golden State Corporate Services LLC**
**Golden State Insurance Company Ltd.**
Greenville Radiation Care, Inc.
HBOC Medical Ltd.
**Health Mart Systems, Inc.**
**Health Nexus LLC**
HF Land Company
Innovent Oncology, LLC
**Intercal, Inc.**
Iowa Pharmaceutical Services, LLC
IQ Systems Services
KCCC JV, LLC
KCCC/SMMC Cancer Center, LLC
**KWS & P/SFA, Inc.**
Liquidlogic Limited
McKesson (Shanghai) Trading Co. Ltd.
McKesson Automation Canada Corporation
**McKesson Automation Inc.**
**McKesson Automation Systems Inc.**
McKesson Canada Corporation
**McKesson Capital Funding Corporation**
**McKesson Capital LLC**
McKesson Central Fill LLC
McKesson China Holdings S.a.r.l.
**McKesson Corporation**
McKesson Financial Holdings
McKesson Financial Holdings II
McKesson Funding Company of Canada
**McKesson Health Solutions Holdings LLC**
McKesson Health Solutions LLC
McKesson Health Solutions Puerto Rico Inc.
McKesson High Volume Solutions Inc.
McKesson Information Solutions Canada Company
McKesson Information Solutions Capital S.a.r.l.
McKesson Information Solutions Finance S.a.r.l.
McKesson Information Solutions France SAS
McKesson Information Solutions Holdings France S.a.r.l.
McKesson Information Solutions Holdings S.a.r.l.
McKesson Information Solutions Netherlands B.V.
McKesson Information Solutions Sweden AB
McKesson Information Solutions Topholdings S.a.r.l.
McKesson Information Solutions UK Limited
**McKesson International Bermuda IP2A Limited**
McKesson International Bermuda IP2B Limited
McKesson International Bermuda IP3A Limited
McKesson International Bermuda IP3B Limited
McKesson International Bermuda IP4A Limited
McKesson International Bermuda IP4B Unlimited
**McKesson International Bermuda IP5A Limited**
McKesson International Bermuda IP5B Unlimited

McKesson International Bermuda Opco 1A Limited
McKesson International Bermuda Opco 1B Unlimited
McKesson International Bermuda Opco3A Limited
McKesson International Bermuda Opco3B Unlimited
McKesson International Bermuda Opco4A Limited
McKesson International Bermuda Opco4B Limited
McKesson International Capital S.a.r.l.
McKesson International Finance S.a.r.l.
McKesson International Holdings
McKesson International Holdings II S.a.r.l.
McKesson International Holdings III S.a.r.l.
McKesson International Holdings IV S.a.r.l.
McKesson International Holdings S.a.r.l.
McKesson International Holdings SRL
McKesson International Holdings V S.a.r.l.
McKesson International Holdings VII S.a.r.l.
McKesson International Malaysia SND.BHD
McKesson International S.a.r.l.
McKesson International SRL
McKesson International Sweden I AB
McKesson International Sweden II AB
McKesson International Sweden III AB
McKesson International Topholdings S.a.r.l.
McKesson Intrernational Holdings LLC
McKesson Ireland
McKesson Israel Ltd.
McKesson Medical Imaging Company
**McKesson Medical-Surgical Holdings Inc.**
McKesson Medical-Surgical Inc.
McKesson Medical-Surgical International
McKesson Medical-Surgical MediMart Inc.
**McKesson Medical-Surgical Minnesota Inc.**
McKesson Medical-Surgical Minnesota Supply Inc.
McKesson Nederland B.V.
**McKesson Pharmaceutical Holdings LLC**
**McKesson Pharmacy Optimization LLC**
McKesson Pharmacy Systems Canada ULC
**McKesson Pharmacy Systems LLC**
**McKesson Plasma and Biologics LLC**
**McKesson Property Company, Inc.**
**McKesson Specialty Arizona Inc.**
McKesson Specialty Care Distribution Corporation
McKesson Specialty Care Distribution Joint Venture LP
McKesson Specialty Care Distribution Joint Venture LP
**McKesson Specialty Distribution LLC**
McKesson Specialty Health Pharmaceutical & Biotech Solutions, LP (formerly named US Oncology Integrated Solutions, LP)
**McKesson Specialty Holdings LLC**
McKesson Specialty Prescription (BC) Services Corporation
McKesson Specialty Prescription Services Corporation
**McKesson Technologies Inc.**
**McKesson Transportation Systems, Inc.**
McKesson UK Holdings Limited
**McQueary Bros. Drug Company, LLC**
Med Fusion, LLC
Medcon Systems (1993)
Medcon UK Limited
Medical & Vaccine Products, Inc.
Metropolitian Integrated Cancer Center, LLC
MH/USON Radiation Management Company, LLC
MHD-USO General, LLC

MHD-USO Management Company, LP
Moore Medical LLC
MSA Products LLC
Nadro S. de R.L. de C.V.
Nadro S.A. de C.V.
National Oncology Alliance, Inc.
NDCHealth Corporation
NDCHealth Pharmacy Systems and Services, Inc.
Nebraska Pharmaceutical Services, LLC
New Mexico Pharmaceutical Services, LLC
Nexcura, LLC
North Carolina Pharmaceutical Services, LLC
Northstar Healthcare
Northstar Healthcare Holdings
Northstar Healthcare Singapore Pte. Ltd.
**Northstar Rx LLC**
Oncology Holdings II, Inc.
**Oncology Holdings, Inc.**
Oncology Portal, LLC
Oncology RX Care Advantage, LP
Oncology Therapeutics Network Corporation
Oncology Today, LP
Onmark, Inc.
Oregon Cancer Centers Ltd
OTN Generics, Inc.
OTN Participant, Inc.
peerVue, Inc.
Perigon Ltd.
Per-Se Technologies Canada, Inc.
Physician Reliance Maryland, L.P.
Physician Reliance Maryland, LLC (formerly named The Carroll County Cancer Center, Ltd.  Left on previous chart by mistake)
Physician Reliance Network, LLC
Physician Reliance, LLC
Portico Systems of Delaware, Inc.
Presbyterian Cancer Center-Dallas, LLC
PST Services, Inc.
**Purchasing Alliance for Clinical Therapeutics, LLC**
RFCC Asset, LLC
RFCC Support, LLC
RMCC Cancer Center, LLC
S.K.U., Inc.
**San Bruno Mountain, Ltd.**
SelectPlus Oncology, LLC
SIVEM Pharmaceutical ULC
Southeast Texas Cancer Centers, LP
St. Louis Pharmaceutical Services LLC
Sterling Medical Services, LLC
Strategic Health Alliance II, Inc.
**Strategic Health Alliance Management Corp.**
System C Healthcare plc
Texas Pharmaceutical Services, LLC
TOPS Pharmacy Services, Inc.
Tyler Radiation Equipment Leasing, LLC
Unity Oncology, LLC
US Oncology Clinical Development, LLC
US Oncology Corporate, Inc.
**US Oncology Holdings, Inc.**
US Oncology Lab Services, LLC
US Oncology Pharmaceutical Services, LLC

US Oncology Reimbursement Solutions, LLC
US Oncology Research, LLC
US Oncology Specialty, LP
US Oncology, Inc.
**Visitation Associates**
WFCC Radiation Management Company, LLC
Zee Medical Canada Corporation
**Zee Medical, Inc.**
3071406 Nova Scotia Company
Clinique Sante Corporation
McKesson Canada Support Services Corporation
McKesson Health Management Services ULC
McKesson Specialty Prescription Services (Atlantic) Corporation
Pharmessor Group Corporation

_____
Authorized Agent

## POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL (with Insureds Retained Limit)

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **17** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1. To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2. To any "loss", cost or expense arising out of any:

    a. Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. Is both unexpected and unintended from the standpoint of the "insured";

2. Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3. Is caused:

    a. Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

    b. Or arises out of "your product" included in the "products-completed operations hazard"; or

c. By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (1) Is at or from any:

      (a) Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

      (b) Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

      And

   (2) Is known by any "insured" within **20** days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

   (3) Is reported to us within **80** days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not. Waste means any substance that:

   a. Is left over, or no longer in use, or discarded;

   b. Is to be reclaimed or recycled, or reconditioned; or

   c. Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to **$5,000,000**.


All other terms and conditions of the policy remain unchanged.


_____

                             Authorized Representative

# UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **18** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# WAR EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **19** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

### W.  War

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of the policy remain unchanged.

Authorized Agent

# NOTICE TO OTHERS ENDORSEMENT  - SPECIFIC PARTIES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **20** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**A.** If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

**B.** We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

**C.** The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

**D.** We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

**E.** We may arrange with your representative to send such notice in the event of any such cancellation.

**F.** You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

**G.** This endorsement does not apply in the event that you cancel the Policy.

### SCHEDULE

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
| **Medassets** | | **13727 Noel Road, Suite 1400 Dallas, TX  75240** |
| **Port Authority of New York & New Jersey Newark Liberty International Airport c/o EBIX BPO** | | **P.O. Box 881639 San Diego, CA  92168-1639** |

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

All other terms and conditions of the Policy remain unchanged.

_____

Authorized Representative

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **21** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: **$34,727**.

_____
Authorized Agent

Includes copyrighted material of Insurance Services office, Inc., with its permission

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **22** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C. In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

1. The Limits of Insurance of the Declarations is amended to include:

    "Certified act of terrorism retained limit" $5,000,000

2. "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance. "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

3. Solely with respect to this endorsement, Section III., Defense Provisions and Supplement Payments is amended as follows:

    a. With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism". However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.  We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".  Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".  We may make such investigation as we require and effect settlement of any "suit" so defended.

c.  We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **23** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

Authorized Agent

ALL-21101 (11/06) Ptd. in U.S.A.

# CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **24** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**EXCESS LIABILITY POLICY**
**EXCESS LIABILITY CATASTROPHE POLICY**

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

    **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

    **(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**(8)** A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

**(9)** Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

**(10)** A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund, if any, will be computed on a pro rata basis. However, the refund may be less than pro rata if we made a loan to you for the purpose of payment of premiums for this policy. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

Authorized Representative

# AMENDMENT OF WHO IS AN INSURED

| Named Insured **McKesson Corporation** | | | Endorsement Number **25** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section II WHO IS AN INSURED  Paragraph B. is hereby amended to add the following:

7. Any person or organization you become obligated to include as an additional "insured" under the policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" arising out of your operations or premises owned by or rented to you.

However, the insurance provided by this endorsement will not be broader than the coverage provided by this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# ANNUAL PERIOD EXTENSION - NATURAL DISASTER OR OTHER CATASTROPHE

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **26** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 – 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
## COMMERCIAL UMBRELLA LIABILITY POLICY

In the event of a natural disaster or other catastrophe that prevents all written, telephonic and electronic communication between us and the Named Insured at the expiration of the "policy period", the "policy period" will automatically be extended until the earlier of the two following times:

1.  thirty (30) calendar days from the original expiration date of such "policy period"; or
2.  fourteen (14) calendar days after written, telephonic or electronic communication between us and the Named Insured is once again possible.

The additional premium for such extension will be calculated on a pro-rata basis.  Such extension will be cancelled automatically retroactive to its inception if the additional premium or proof of payment thereof is not received by us within thirty (30) calendar days following the earlier of 1. or 2. above.

Nothing in this endorsement will operate to increase or reinstate the Limits of Liability as stated in the Declarations.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# Automobile Liability Limitation Endorsement

| Named Insured **McKesson Corporation** | | | Endorsement Number **27** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement.  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy #MWTB21542 and Old Republic Insurance Company of Canada Policy #CTB21542 subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # MWTB21542 and Old Republic Insurance Company of Canada Policy # CTB21542.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# CLINICAL TRIAL EXCLUSION ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**28** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effective Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial".  However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this policy remain unchanged.

_____ _____
Authorized Agent

# AMENDMENT OF DEFINITION J. – INSURED CONTRACT

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **29** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 – 07/01/2013** | | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII.  DEFINITIONS are amended as follows:

Definition J. is deleted and replaced by the following:

"Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

    1.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        a.  preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    2.  under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

MS-11232 (06/12)                    © 2012                    Page 1 of 1

# PERSONAL INJURY DEFINITION AMENDED TO INCLUDE DISCRIMINATION

| Named Insured **McKesson Corporation** | | | Endorsement Number **30** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII, DEFINITIONS, Part R. "Personal and advertising injury" is deleted and replaced with the following:

R.  "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5. Oral or written publication, in any manner, of material that violates a person's right of privacy;
6. Discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only is such discrimination or humiliation is:
   a. Not intentionally committed by the "insured,"
   b. Not committed by, at the direction of, or with the knowledge of you and/or any of your executive officers or directors,
   c. Not directly or indirectly related to the employment of the person or persons by you, and
   d. Not in violation of any provision(s) of the Americans with Disabilities Act (including but not limited to any amendments or revisions thereto and any rules or regulation promulgated thereunder) or any similar common or statutory law,
7. The use another's advertising idea in your "advertisement," or
8. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

# FOREIGN LIABILITY FOLLOW FORM LIMITATION ENDORSEMENT – EXCEPTION FOR PRODUCTS

| Named Insured McKesson Corporation | | | Endorsement Number 31 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G24903229 | Policy Period 07/01/2012 – 07/01/2013 | Effective Date of Endorsement 07/01/2012 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the scheduled "underlying insurance"

1. This exclusion shall not apply; and

2. Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of such "underlying insurance," subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, and this policy will be no broader than the coverage provided by "underlying insurance."

Notwithstanding the above provisions, with respect to claims or "suits" alleging "bodily injury," "property damage" or "personal and advertising injury" that (a) occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada, and (b) arises out of "your product", this insurance will apply subject to subject to a "retained limit" which is a self-insured retention as follows:

$5,000,000 each "occurrence" ("loss" and defense expenses erode SIR)

$5,000,000 annual aggregate ("loss" and defense expenses erode SIR)

$500,000 "Trailing Retention"

The following definition is added to the policy:

"Trailing retention" means the amount shown above, which is the amount of "loss" in excess of the reduced or exhausted limit of the "underlying insurance" you will pay in the settlement of any claim or "suit" to which this policy applies. Our policy does not apply until you have paid the "trailing retention". Defense and supplementary payments shall reduce the amount shown above.

For the purposes of this endorsement, the definition of "loss" is amended to provide that "loss" also includes defense expenses and supplementary payments.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

MS-12125 (07/12)                    © 2012                    Page 1 of 1

# Government Immunity Endorsement

| Named Insured **McKesson Corporation** | | | Endorsement Number **32** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

We shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority of New York and New Jersey (Port Authority), raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# HEALTH CARE SERVICES EXCLUSION

| Named Insured **McKesson Corporation** | | | Endorsement Number **33** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Solely with respect to Interlakes Oncology, PC, and those entities identified in the Schedule on Endorsement 42 (WHO IS AN INSURED ENDORSEMENT) of this policy Section V, DEFINITIONS, is amended by the addition of the following exclusion:

**Health care Services**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

MS-10100                                                                                                      Page 1 of 1

# INSUREDS IN MEDIA AND INTERNET TYPE BUSINESSES EXCLUSION

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**34** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effective Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert  he policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion M. of Section **V. EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

M. **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1. Advertising, broadcasting, publishing or telecasting;
2. Designing or determining content of web-sites for others; or
3. An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# MANUFACTURE OF DRUGS EXCLUSION

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**35** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effective Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section V. EXCLUSIONS is amended to include the following additional exclusion.

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling of drugs.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# NEWLY ACQUIRED ENTITY ENDORSEMENT (INLCUDING JOINT VENTURE)

| Named Insured **McKesson Corporation** | | | Endorsement Number **36** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

The policy is amended as follows:

Paragraph B. 5. of **SECTION II WHO IS AN INSURED** is deleted and replaced by the following:

5.      Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a "insured", subject to the following:

    a.    If at the time of acquisition, inception of control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $1,000,000,000 and (b)  the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of control or formation, with no additional premium charge, provided that you notify us within 120 days of such acquisition, inception of control or formation.

    b.    If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you exceeds $1,000,000,000 or (b)  the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 120th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier.

    c.    For any organization covered by paragraph b. above, coverage will expire on the 120th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier, unless, within the 120 day period, you request us to include such organization as an "insured", and we agree to do so.

    d.    We may, at our option, make an additional premium charge for any organization that you acquire, take control of or form during the "policy period," when that organization is not automatically covered in 5 .a. above.

    e.    Coverage does not apply to any liability arising out of an "occurrence" taking place before you acquire, take control of or form any organization covered by this endorsement.

**SECTION II, WHO IS AN INSURED** is amended to include the following:
In the event of any "occurrence" caused by or arising out of any Joint Venture, Co-Venture, Joint Lease, Joint Operating Agreement, Partnership or Limited Liability Company (Joint Venture) in which the "insured" has an ownership interest, the Limits of Insurance under our policy shall be limited to the total liability coverage afforded the "insured" by this policy.

It is further agreed that the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture and our liability shall be excess of the sum of

1. The limits of the applicable "retained limit", and
2. The limits of any "other insurance".

All other terms and conditions of this policy remain unchanged.

 

_____
Authorized Representative

# Non-Contributory Endorsement for Additional Insureds

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**37** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effective Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

For any person or organization qualifying as an "insured" under Section II WHO IS AN INSURED, Paragraph B.7. (as added by endorsement to this policy) the following is added to
**Section VI. CONDITIONS Paragraph J. Other Insurance**

If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured. Your "retained limit" still applies to such "loss" and any payments you receive from "other insurance" will not erode your "retained limit".

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# RETAINED LIMIT ENDORSEMENT
## (No Underlying Insurance)

| Named Insured<br>**McKesson Corporation** | | Endorsement Number<br>**38** |
|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effective Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1.  The preamble in the policy is deleted and replaced with the following:

    Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

    Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

    Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS**.

    We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2.  Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

    A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

        1.  When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
        2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy.  Any such payment we make shall reduce the Limits of Insurance.  Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

3. Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

 E. If the applicable "retained limits" listed on the Schedule of Retained Limits have been:
  1. Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

  2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4. Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5. Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

 A. **Appeals**

  In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

 C. **Bankruptcy**

  Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy.  This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

 I. **Maintenance of "Underlying Insurance"** is deleted.

 N. **Transfer of Rights of Recovery Against Others to Us**

  3. If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6. Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

 P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

 V. "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General  Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $7,500,000 | General Aggregate | |
| Products Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $5,000,000 | Aggregate | |
| Auto Liability | $5,000,000 | Each Occurrence | Outside Limits & SIR |
| US Oncology | | | Within limits & within SIR |
| General Liability | $5,000,000 $5,000,000 $5,000,000 | Each Occurrence Personal and Advertising Injury General Aggregate | |

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# TRAILING RETENTION ENDORSEMENT
# (NO UNDERLYING INSURANCE)

| Named Insured **McKesson Corporation** | | | Endorsement Number **39** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

### SCHEDULE

Trailing Retention:               $ 500,000        Each Occurrence

Aggregate Trailing Retention:   $ Not Applicable

---

**Section IV. LIMITS OF INSURANCE** is amended as follows:

With respect to the application of part E. of Section IV., LIMITS OF INSURANCE, that relates to the reduction or exhaustion of the aggregate limits of liability under any "retained limit" by reason of "loss" paid thereunder, this policy is amended as follows:

A.  If the aggregate limits of liability under any "retained limit" are reduced or exhausted solely by reason of "loss" paid thereunder arising out of "bodily injury," "personal and advertising injury," or "property damage" which takes place during our "policy period," then this policy shall:

   1.  In the event of reduction, pay the excess of the reduced underlying limit; but only in excess of the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

   2.  In the event of exhaustion continue in force, but only for any excess above the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

**Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Part A is amended to read as follows:

1.  With respect to any "occurrence" covered by the "retained limit" listed in the schedule of "retained limit" or any "other insurance" to which this policy applies, whether the aggregate limit of said "retained limit" or "other insurance" is exhausted or not, we shall not be called upon to assume charge of the investigation, settlement or defense of any "suit" brought against the "insured," but we shall have the right and be given the opportunity to be associated in the defense and trial of any "suits" relative to any "occurrence" which, in our opinion, may create liability on the part of us under the terms of the policy.

2.  With respect to any "occurrence" not covered by the "retained limit" or any "other insurance" but covered by the terms and conditions of this policy, we shall defend such "suit" against the "insured" seeking damages on account of "bodily injury," "personal and advertising injury," or "property damage" and we may make such investigation and effect settlement of any "suit" so defended.  Provided, however, we shall have no obligation to defend until the "insured" losses have exceeded the "trailing retention" amount set out in the Schedule above.

   Furthermore, we shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

**Section VII. DEFINITIONS**, is amended as follows:

The following Definitions are added:

"Trailing retention" means the amount shown in the Schedule above, which is the amount in excess of the reduced or exhausted limit of "retained limit" you will pay in the settlement of any claim or "suit" to which this policy applies.  Our policy does not apply until you have paid the "trailing retention". Defense and supplementary payments shall reduce the amount shown above.

"Aggregate trailing retention" means the amount shown in the Schedule above which is the most you will pay for the sum of all "trailing retention" amounts.

For the purposes of this endorsement, the definition of "loss" is amended to provide that "loss" also includes defense expenses and supplementary payments.


All other terms and conditions of this policy remain unchanged.


_____
Authorized Representative

# WHO IS AN INSURED ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**40** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effective Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

    **1.** The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

        a. such entity is under your management;

        b. such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and

        c. any liability covered under this policy is not also covered under any other valid and collectable insurance available to such entity.

    Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

    **2.** Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

        a. such entity is under your management;

        b. such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and

        c. any liability covered under this policy is not also covered under any other valid and collectable insurance available to such entity.

    Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

**B.** All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy. However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

**C.** Section **VII**, **DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

    I. "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured.

### SCHEDULE

Alliance Hematology Oncology P.A.

Allison, Curtis, Kingsley, Meoz, Michael, Sanchez & Prof. Corp.

Arizona Oncology Associates, P.C.

Arkansas Oncology Associates, PA

Asheville Hematology & Oncology Associates PA

Cancer Care & Hematology Specialists of Chicagoland, PC

Cancer Care Centers of South Texas, PA

Cancer Centers of Florida, PA

Cancer Centers of North Carolina, PC

Cancer Centers of North Carolina-Asheville, PC

Comprehensive Cancer Care

Fairfax-Northern Virginia Hematology-Oncology, P.C.

Flavio Kruter, M.D., P.A.

Florida Cancer Affiliates, PL

Florida Institute of Research, Medical & Surgical, PA

Hematology Oncology Associates of Illinois

Interlakes Oncology Hematology P.C.

Kansas City Cancer Center, LLC

Mahoning Valley Hematology-Oncology Associates, Inc.

Maryland Oncology Hematology, PA

Minnesota Oncology Hematology, PA

Missouri Cancer Associates, LLC

Murrell, Westgate & Bryer, Inc.

New York Oncology Hematology, PC

Northwest Cancer Specialists, PC

Ocala Oncology Center, P.L.

Oncology & Hematology Associates, Inc.

Oncology and Hematology Associates of Southwest Virginia, Inc. (Blue Ridge Cancer Care)

Oncology Associates of Oregon, PC (Willamette Valley Cancer Center)

Oncology Hematology Radiation Care, LLC (Advanced Medical Specialties)

Regional Cancer Care, PA

Rocky Mountain Cancer Centers, a Professional LLP

South Florida Oncology & Hematology Consultants

St. Louis Urological Surgeons, Inc.

Texas Oncology, P.A.

The Hope Center for Cancer Care

Virginia Cancer Specialists, PC

Virginia Cancer Specialists

Wilshire Oncology Medical Group, Inc.


All other terms and conditions of the policy remain unchanged.


_____
Authorized Representative

# INTERNAL CREATION ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**41** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effec ive Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section II. WHO IS AN INSURED**, Subsection B., Paragraph 5, is amended to including the following:

 f. If you are a limited liability company or limited liability partnership that was created subsequent to the inception date of this policy as a result of internal restructuring or realignment, you are an "insured" provided that:

    (1)  The newly created limited liability company or limited liability partnership solely comprises operations which were part of the "insured" prior to the date of such creation; and

    (2)  The newly created limited liability company or limited liability partnership continues to operate in a similar fashion as the "insured" prior to the date of such creation.

All other terms and conditions of this policy remain unchanged.

_____
                          Authorized Representative

               

# TIE IN OF LIMITS ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**42** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effec ive Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance is amended to include the following additional Condition:

If this insurance and the insurance provided by the policy(ies) listed in the schedule below apply to the same claim, "suit" or "occurrence", the maximum combined limits of insurance available under this policy and the scheduled policy(ies) below for such claim, "suit" or "occurrence" will not exceed:

$ <u>25,000,000</u> Each Occurrence

$ <u>25,000,000</u> General Aggregate

$ <u>25,000,000</u> Products-Completed Operations Aggregate

These limits are the most that will be paid under this policy and the policies listed in the schedule below, combined, for all claims, damages, "losses" or "suits", regardless of any aggregate, per "occurrence", per incident, or per accident limit, or any other limit of liability or limit of insurance in this policy or the scheduled policy.

### SCHEDULE

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| Canada | ACE INA Insurance Company | XBC 324006 |

Any "loss" paid under the scheduled policy shall reduce by such amount the applicable limit of insurance under this policy.

Nothing in this provision shall serve to increase any applicable limit of insurance of this policy or the scheduled policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**43** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G24903229** | Policy Period<br>**07/01/2012 – 07/01/2013** | Effec ive Date of Endorsement<br>**07/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

It is agreed the following endorsements have been deleted and replaced with the following:

Schedule of Underlying Insurance XS-9U57b is replaced with Revised Schedule of Underlying Insurance XS-9U57b

Endorsement 9, Employee Benefit Plan Limitation (Claims Made) is replaced with Endorsement 44

Endorsement 31, Foreign Liability Follow Form Limitation Endorsement – Exception for Products is replaced with Endorsement 45

Endorsement 33, Health Care Services Exclusion is replaced with Endorsement 46

Endorsement 36, Newly Acquired Entity Endorsement (Including Joint Venture) is replaced with Endorsement 47

Endorsement 38, Retained Limit Endorsement (No Underlying Insurance) is replaced with Endorsement 48

All other terms and conditions in the policy remain unchanged.

_____
Authorized Agent

CC1E15

# EMPLOYEE BENEFIT PLAN LIMITATION
# [CLAIMS MADE]

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **44** |
| Policy Symbol | Policy Number | Policy Period | Effec ive Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 - 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

1.   Underlying Insurance

      Company:               Old Republic Insurance Company of Canada

      Policy Number:        CZY59583

      Expiration Date:       07/01/2013

      Retroactive Date:     None

      Limits of Insurance:   $25,000,000

      Each Employee      $5,000,000

      Aggregate:          $5,000,000

      Company:               Insurance Company of the State of Pennsylvania

      Policy Number:       80-0270149

      Expiration Date:       07/01/2013

      Retroactive Date:     None

      Limits of Insurance:   $25,000,000

      Each Employee      $1,000,000

      Aggregate:          $5,000,000

| | |
|---|---|
| Company: | Illinois Union Insurance Company |
| Policy Number: | MLPG21821020003 |
| Expiration Date: | 07/01/2013 |
| Retroactive Date: | 07/01/2006 |
| Limits of Insurance: | $25,000,000 |
| Each Employee | $5,000,000 |
| Aggregate: | $5,000,000 |

2. Our Retroactive Date:          07/01/2006

3. Coverage

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

"Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

a. Counseling "employees" on your "employee benefit programs";

b. Interpreting your "employee benefit programs";

c. Handling records for your "employee benefit programs";

d. Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e. Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f. Collection of contributions and application of contributions as provided in your "employee benefit programs".

g. Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h. Processing of claims for your "employee benefit programs".

"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4.   Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a.  Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i.   The date such claim is first made against you is during OUR policy period, and

ii.   The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b.  Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in  like manner, subject to all of the following:

i.   Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii.   The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii.  The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c.  Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance"  above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i.   The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii.   Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii.  If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d.  Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.


All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# FOREIGN LIABILITY FOLLOW FORM LIMITATION ENDORSMENT – EXCEPTION FOR PRODUCTS

| Named Insured **McKesson Corporation** | | | Endorsement Number **45** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the scheduled "underlying insurance"

1.  This exclusion shall not apply; and

2.  Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of such "underlying insurance," subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, and this policy will be no broader than the coverage provided by "underlying insurance."

Notwithstanding the above provisions, with respect to claims or "suits" alleging "bodily injury," "property damage" or "personal and advertising injury" that (a) occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada, and (b) arises out of "your product", this insurance will apply subject to a "retained limit" which is a self-insured retention as follows:

$5,000,000 each "occurrence" ("loss" and defense expenses erode SIR)

$5,000,000 annual aggregate ("loss" and defense expenses erode SIR)

$500,000 "Trailing Retention"

The following definition is added to the policy:

"Trailing retention" means the amount shown above, which is the amount of "loss" in excess of the reduced or exhausted limit of the "underlying insurance" you will pay in the settlement of any claim or "suit" to which this policy applies. Our policy does not apply until you have paid the "trailing retention". Defense and supplementary payments shall reduce the amount shown above.

For the purposes of this endorsement, the definition of "loss" is amended to provide that "loss" also includes defense expenses and supplementary payments.

All other terms and conditions of this policy remain unchanged.

_C. German_

_____
Authorized Representative

# HEALTH CARE SERVICES EXCLUSION

| Named Insured **McKesson Corporation** | | | Endorsement Number **46** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effective Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Solely with respect to Interlakes Oncology, PC, and those entities identified in the Schedule on Endorsement 40 (WHO IS AN INSURED ENDORSEMENT) of this policy Section V, EXCLUSIONS, is amended by the addition of the following exclusion:

**Health care Services**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of this policy remain unchanged.

*C. Gorman*

_____
Authorized Representative

MS-10100                                                                                                         Page 1 of 1

# NEWLY ACQUIRED ENTITY ENDORSEMENT (INCLUDING JOINT VENTURE)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **47** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 – 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

The policy is amended as follows:

Paragraph B. 5. of **SECTION II WHO IS AN INSURED** is deleted and replaced by the following:

5.      Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a "insured", subject to the following:

    a.   If at the time of acquisition, inception of control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $1,000,000,000 and (b)  the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of control or formation, with no additional premium charge, provided that you notify us within 120 days of such acquisition, inception of control or formation.

    b.   If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you exceeds $1,000,000,000 or (b)  the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 120th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier.

    c.   For any organization covered by paragraph b. above, coverage will expire on the 120th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier, unless, within the 120 day period, you request us to include such organization as an "insured", and we agree to do so.

    d.   We may, at our option, make an additional premium charge for any organization that you acquire, take control of or form during the "policy period," when that organization is not automatically covered in 5 .a. above.

    e.   Coverage does not apply to any liability arising out of an "occurrence" taking place before you acquire, take control of or form any organization covered by this endorsement.

**SECTION II, WHO IS AN INSURED** is amended to include the following:

In the event of any "occurrence" caused by or arising out of any Joint Venture, Co-Venture, Joint Lease, Joint Operating Agreement, Partnership or Limited Liability Company (Joint Venture) in which the "insured" has an ownership interest, the Limits of Insurance under our policy shall be limited to the total liability coverage afforded the "insured" by this policy.

It is further agreed that the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture and our liability shall be excess of the sum of

1. The limits of the applicable "retained limit", and
2. The limits of any "other insurance".

All other terms and conditions of this policy remain unchanged.


_____
Authorized Representative

# RETAINED LIMIT ENDORSEMENT
## (No Underlying Insurance)

| Named Insured **McKesson Corporation** | | | Endorsement Number **48** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G24903229** | Policy Period **07/01/2012 – 07/01/2013** | Effec ive Date of Endorsement **07/01/2012** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1.  The preamble in the policy is deleted and replaced with the following:

    Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

    Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

    Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS**.

    We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2.  Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

    A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

        1.  When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
        2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy.  Any such payment we make shall reduce the Limits of Insurance.  Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

MS-10104                                                                                                      Page 1 of 3

3. Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

  E. If the applicable "retained limits" listed on the Schedule of Retained Limits have been:
   1. Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

   2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4. Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5. Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

  A. **Appeals**

  In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

  C. **Bankruptcy**

  Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy.  This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

  I. **Maintenance of "Underlying Insurance"** is deleted.

  N. **Transfer of Rights of Recovery Against Others to Us**

   3. If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6. Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

  P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

  V. "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General  Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $7,500,000 | General Aggregate | |
| Products Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $5,000,000 | Aggregate | |
| Auto Liability | $5,000,000 | Each Occurrence | Outside Limits & SIR |
| US Oncology | | | Outside limits & within SIR |
| General Liability | $5,000,000<br>$5,000,000<br><br>$5,000,000 | Each Occurrence<br>Personal and<br>Advertising Injury<br>General Aggregate | |
| Employers Liability | $1,000,000 | Bodily Injury – Each Accident OR Bodily Injury By Disease – each Employee | Outside Limits & SIR |

All other terms and conditions of this policy remain unchanged.

_Cgrmans_

_____
Authorized Agent

# AMENDATORY  ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **51** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G24903229** | **07/01/2012 – 07/01/2013** | **07/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## EXCESS LIABILTIY CATASTROPHE POLICY

It is agreed that Endorsement #15 has been deleted and replaced with Endorsement #52.

All other terms and conditions remain the same.

_____

Authorized Representative

CC1E15

# KNOWLEDGE OF OCCURRENCE

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **52** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G24903229** | **07/01/2012 – 07/01/2013** | **07/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

Insert  he policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Senior Director of Risk Management or General Counsel shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

Authorized Agent



# REVISED Schedule of Underlying Insurance

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G24903229** | **07/01/2012 - 07/01/2013** |

---

**General Liability (New York)**

Limits of Insurance

Company

Old Republic Insurance Company

Policy Number  MWZY59583

Policy Period  07/01/2012 - 07/01/2013

| | |
|---|---|
| Each Occurrence | $ 5,000,000 |
| Aggregate | $ 5,000,000 |

---

**General Liability
(Canada)**

Limits of Insurance

Company

Old Republic Insurance Company

Policy Number  CZY59583

Policy Period  07/01/2012 - 07/01/2013

| | |
|---|---|
| Each Occurrence | $ 5,000,000 |
| Aggregate | $ 5,000,000 |
| PI Occurrence | $ 5,000,000 |
| Non-Owned Auto | $ 2,000,000 |

---

**Employers Liability**

Limits of Insurance

Company

Old Republic Insurance Company

Policy Number  MWC117411 & MWXS967

Bodily Injury by Accident

$ 5,000,000 Each Accident

Bodily Injury By Disease

$ 5,000,000 Each Policy

$ 5,000,000 Each Employee

Policy Period  07/01/2012 - 07/01/2013

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.


**ace group**

# REVISED Schedule of Underlying Insurance (Continued)

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G24903229** | **07/01/2012 – 07/01/2013** |

| | | |
|---|---|---|
| Coverage | **Employers Liability (US Oncology)** | Limits of Insurance |
| Company | Liberty Insurance Corp. | Bodily Injury by Accident |
| Policy Number | Various – Per schedule on File | $ <u>1,000,000</u> Each Accident |
| | | Bodily Injury By Disease |
| | | $ <u>1,000,000</u> Each Policy |
| Policy Period | 07/01/2012 - 07/01/2013 | $ <u>1,000,000</u> Each Employee |

| | | |
|---|---|---|
| Coverage | **Auto Liability (US Oncology)** | Limits of Insurance |
| Company | Liberty Mutual Fire Insurance Co. | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | A52-691-438455-012 | |
| Policy Period | 07/01/2012 - 07/01/2013 | |

| | | |
|---|---|---|
| Coverage | **Foreign DIC General Liability** | Limits of Insurance |
| Company | Insurance Company of the State of Pennsylvania | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | 80-0270149 | General Aggregate $ <u>2,000,000</u> |
| | | PCO Aggregate $ <u>2,000,000</u> |
| Policy Period | 07/01/2012 - 07/01/2013 | Master Policy Aggregate $ <u>4,000,000</u> |

| | | |
|---|---|---|
| Coverage | **Foreign DIC – Employee Benefits Liability** | Limits of Insurance |
| Company | Insurance Company of the State of Pennsylvania | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | 83-55445 | Aggregate $ <u>1,000,000</u> |
| Policy Period | 07/01/2012 - 07/01/2013 | |



**REVISED Schedule of Underlying Insurance (Continued)**

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G24903229** | **07/01/2012 – 07/01/2013** |

| | | |
|---|---|---|
| Coverage | **Foreign DIC - Automobile Liability** | Limits of Insurance |
| Company | Insurance Company of the State of Pennsylvania | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | 80-0270149 | |
| Policy Period | 07/01/2012 - 07/01/2013 | |
| Coverage | **Foreign DIC – Employers Liability** | Limits of Insurance |
| Company | Insurance Company of the State of Pennsylvania | Each Occurrence $ <u>1,000,000</u> |
| Policy Number | 80-0270149 | Aggregate $ <u>1,000,000</u> |
| Policy Period | 07/01/2012 - 07/01/2013 | |
| Coverage | **UK – Employers Liability** | Limits of Insurance |
| Company | Chartis Insurance Company | Each Occurrence GBP <u>10,000,000</u> |
| Policy Number | TBD | |
| Policy Period | 07/01/2012 - 07/01/2013 | |

# EXHIBIT E



**ace group**

# Declarations
# ACE Umbrella Plus<sup>sm</sup>
# Commercial Umbrella Liability Policy

Policy Symbol: XOO                                Previous Policy Symbol: XOO

Policy Number: G2704766A                          Previous Policy Number: G24903229

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW

ACE Property and Casualty Insurance Company
436 Walnut Street
Philadelphia, PA  19106

Named Insured and Address                         Producer Name and Address

McKesson Corporation                              Marsh Risk & Insurance Services
One Post St., 34th Floor                          345 California Street, Suite 1300
San Francisco, CA  94104                          San Francisco, CA  94104

PRODUCER CODE  355110

Policy Period:   From 07/01/2013      to 07/01/2014     12:01 A.M Standard Time at the Address of the Named
                                                        Insured as stated herein

## Limits of Insurance

$ 25,000,000    Each Occurrence

$ 25,000,000    General Aggregate

$ 25,000,000    Products Completed-Operations Aggregate   $ 25,000    Self-Insured Retention

## Annual Premium

$ 756,000    Premium                                  $ 36,000    Terrorism Premium included in Annual Premium

$ N/A        [State Surcharge]

$ 756,000    Premium, including all Surcharges and Assessments

## Policy Period Premium

$ 756,000    Premium                                  $ 36,000    Terrorism Premium included in Annual Premium


$ 756,000    Premium, including all Surcharges and Assessments

### Schedule of Underlying Insurance

Refer to the attached Schedule of Underlying Insurance, XS-9U57b which forms a part of this Policy's Declarations.

### Endorsements and Forms

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.



# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G2704766A** | **07/01/2013 - 07/01/2014** |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
|  | XS-20835 (08/06) | Commercial Umbrella Liability Policy |
|  | ALL-20887 (10/06) | ACE Producer Compensation Practices & Policies |
|  | XS-28500 (10/09) | Ace Groups Specialty Claims Loss Notification Form |
|  | IL P 001 (01/04) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
|  | XS-22552 (06/07) | Catastrophe Management Policyholder Notice |
| 1 | CC-1K11g (01/11) | Signatures |
| 2 | XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| 3 | XS 30063 (07/10) | Coverage Territory Definition Amendment |
| 4 | XS-32994 (01/12) | Defense Inside the Limits Endorsement - Follow Form |
| 5 | XS-26426 (02/09) | Employee Benefit Plan Limitation (Claims Made) |
| 6 | XS-23634 (01/08) | Fellow Employee Exclusion Deleted |
| 7 | XS-28727a (01/11) | Foreign Loss Indemnity Endorsement |
| 8 | XS-23637 (01/08) | Foreign Liability Limitation |
| 9 | XS-26428 (02/09) | Incidental Medical Malpractice Endorsement |
| 10 | XS-26429b (02/11) | Industrial Aid Aircraft Endorsement |
| 11 | XS-20755 (08/06) | Non-Concurrency Endorsement(Recognizes Non-Concurrency) |
| 12 | XS-20756 (08/06) | Notice Of Occurrence |
| 13 | XS20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and NamedPeril (with Insureds Retained Limit) |
| 14 | XS-21580 (01/07) | Professional Services Liability Exclusion - Exception For Resulting Bodily Injury And Property Damage |
| 15 | XS-33307 (04/11) | Tie In Of Limits Endorsement |
| 16 | XS-23501 (04/08) | Unintentional Failure to Disclose |
| 17 | XS-25254 (02/09) | War Exclusion |
| 18 | TRIA11b (01/08) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 19 | XS-23669 (01/08) | Cap On Losses From Certified Acts Of Terrorism |



**ace group**

# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G2704766A** | **07/01/2013 - 07/01/2014** |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 20 | XS-1V12b (08/11) | California Changes - Cancellation And Nonrenewal |
| 21 | ALL-32688 (01/11) | Notice to Others Endorsement – Specific Parties |
| 22 | MS-11231 (06/12) | Amendment of Who is an Insured |
| 23 | MS-10110 | Annual Period Extension – Natural Disaster or Other Catastrophe |
| 24 | MS-10106 | Automobile Liability Limitation Endorsement |
| 25 | MS-22418 (06/13) | Cancellation Amendatory Endorsement |
| 26 | MS-10108 | Clinical Trial Exclusion Endorsement |
| 27 | MS-11232 (06/12) | Amendment of Definition J. – Insured Contract |
| 28 | MS-12122 (07/12) | Personal Injury Definition Amended to Include Discimination |
| 29 | MS-12125 (07/12) | Foreign Liability Follow Form Limitation Endorsement – Exception for Products |
| 30 | MS-10102 | Government Immunity Endorsement |
| 31 | MS-10100 | Health Care Services Exclusion |
| 32 | MS-11233 (06/12) | Insureds in Media and Internet Type Businesses Exclusion |
| 33 | XS-20753 (08/06) | Knowledge of Occurrence |
| 34 | MS-12121 (07/12) | Manufacture of Drugs Exclusion |
| 35 | XS-24545 (03/08) | Named Insured Endorsement |
| 36 | MS-12123 (07/12) | Newly Acquired Entity Endorsement (Inluding Joint Venture) |
| 37 | MS-10107 | Non-Contributory Endorsement for Additional Insureds |
| 38 | MS-10104 | Retained Limit Endorsement (No Underlying Insurance) |
| 39 | MS-12124 (07/12) | Trailing Retention Endorsement (No Underlying Insurance) |
| 40 | MS-10103 | Who is an Insured – Affiliated Physician Practices Endorsement |



**ACE Umbrella Plus**<sup>SM</sup>
**Commercial Umbrella Liability Policy**

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

## I.  INSURING AGREEMENT

A.  We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

    1.  This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

        a.  The "bodily injury" or "property damage" is caused by an "occurrence";

        b.  The "bodily injury" or "property damage" occurs during the "policy period"; and

        c.  Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

    2.  This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

B.  "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

C.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    1.  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    2.  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    3.  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II.  WHO IS AN INSURED

A.  The following are "insureds":

1.  The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2.  Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an "insured".  Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

c.  A limited liability company, you are an "insured".  Your members are also "insureds", but only with respect to the conduct of your business.  Your managers are "insureds", but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an "insured".  Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors.  Your stockholders are also "insureds", but only with respect to their liability as stockholders.

e.  A trust, you are an "insured".  Your trustees are also "insureds", but only with respect to their duties as trustees.

B.  Each of the following is also an "insured":

1.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are "insureds" for:

a.  "Bodily injury" or "personal and advertising injury":

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(2)  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

(3)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

(4)  Arising out of his or her providing or failing to provide professional health care services.

b.  "Property damage" to property:

(1)  Owned, occupied or used by you,

(2)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   b. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

   c. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

   d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6. Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III. DEFENSE AND SUPPLEMENTARY PAYMENTS

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

   1. When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

   2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

   3. When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B. We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C. We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D. If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

   1. All expenses we incur.

   2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance.  We do not have to furnish these bonds.

4. The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6. All costs taxed against the "insured" in the "suit".

7. Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8. Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E. Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made or "suits" brought; or

3. Persons or organizations making claims or bringing "suits".

B. The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1. Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2. Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D. Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E. If the applicable limits of "underlying insurance" have been:

1. Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V. EXCLUSIONS

This insurance does not apply to:

### A. Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured".   Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1.  A watercraft while ashore on premises you own or rent; or

2.  A watercraft you do not own that is:

    a.  Less than 26 feet long; and

    b.  Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B. Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C. Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1.  That the "insured" would have in the absence of the contract or agreement; or

2.  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

    a.  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    b.  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1.  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E. **Damage to Property**

"Property damage" to:

1. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3. Property loaned to you;

4. Personal property in the care, custody or control of the "insured";

5. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I. **Employer's Liability**

"Bodily injury" to:

1. An "employee" of the "insured" arising out of and in the course of:

   a. Employment by the "insured"; or

   b. Performing duties related to the conduct of the "insured's" business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1. Whether the "insured" may be liable as an employer or in any other capacity; and

    2.   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

    1.   To liability assumed by the "insured" under an "insured contract".

    2.   To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J.   **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

    1.   Refusal to employ;

    2.   Termination of employment;

    3.   Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies, acts or omissions; or

    4.   Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K.   **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L.   **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M.   **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

    1.   Advertising, broadcasting, publishing or telecasting;

    2.   Designing or determining content of web-sites for others; or

    3.   An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N.   **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

    1.   Causing or contributing to the intoxication of any person;

    2.   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages**.**

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O. **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P. **Nuclear**

1. To any injury or damage:

   a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting form the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

   a. "Hazardous properties" include radioactive, toxic or explosive properties;

   b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e. "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f. "Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

**Q.  Other "Personal and Advertising Injury"**

1. "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2. "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3. "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4. "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5. "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    a. That the "insured" would have in the absence of the contract or agreement; or

    b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

        i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6. "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

7.   "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8.   "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R.   **Pollution**

1.   "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a.   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

b.   At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

c.   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(1)   Any "insured"; or

(2)   Any person or organization for whom you may be legally responsible;

d.   At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

e.   At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

f.   That are, or that are contained in any property that is:

(1)   Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

(2)   Otherwise in the course of transit by or on behalf of the "insured"; or

(3)   Being stored, disposed of, treated or processed in or upon a covered "auto";

g.   Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

h.   After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

1.   Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

2.   Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6. Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a. The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b. The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7. Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a. The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S. **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T. **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U. **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V. **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. This exclusion also applies to communications which are made or allegedly made in violation of the:

   1.   Telephone Consumer Protection Act (TCPA) including any

        Amendment of or addition to such law; or

   2.   The CAN-SPAM Act of 2003, including any amendment of

        Or addition to such law; or

   3.   Any statute, ordinance or regulation, other than the TCPA

        Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

## VI. CONDITIONS

A. **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B. **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us.  If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

4. No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

### G. Inspection and Audit

1. We will be permitted, but not obligated to inspect the "insured's" property and operations. Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

2. We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

### H. Legal Action Against Us

1. No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

2. You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

### I. Maintenance of "Underlying Insurance"

During the "policy period", you agree:

1. To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

2. That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

3. That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

4. That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

5. That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

### J. Other Insurance

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

### K. Premium

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium. It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

### L. Separation of "Insureds"

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2.  Separately to each "insured" against whom claim is made or "suit" is brought.

M.  **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N.  **Transfer of Rights of Recovery Against Others to Us**

1.  If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The "insured" must do nothing after "loss" to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2.  Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment.  The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3.  If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O.  **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy.  The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

VII. **DEFINITIONS**

A.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

1.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B.  "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment".

C.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.   "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D.  **"**Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E.  "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker".  "Employee" does not include a "temporary worker" or independent contractor.

F.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I. "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured.

J. "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

K. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker".

L. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M. "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. Power cranes, shovels, loaders, diggers or drills; or

    b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a. Equipment designed primarily for:

        i. Snow removal;

        ii. Road maintenance, but not construction or resurfacing; or

        iii. Street cleaning;

    b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O. "Occurrence" means:

1. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2. With respect to "personal and advertising injury", a covered offense.  All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy.  "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q. "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S.   "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T.   "Products-completed operations hazard":

1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   a. Products that are still in your physical possession; or

   b. Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

      i. When all of the work called for in your contract has been completed.

      ii. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

   a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

   b. The existence of tools, uninstalled equipment or abandoned or unused materials.

U.   "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V.   "Retained limit" means either of the following:

1. The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W.   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

X.   "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.   "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.   "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA. "Your product":

    1.   Means:

        a.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (1)   You;

            (2)   Others trading under your name; or

            (3)   A person or organization whose business or assets you have acquired; and

        b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    2.   Includes:

        a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        b.   The providing of or failure to provide warnings or instructions.

    3.   Does not include vending machines or other property rented to or located for the use of others but not sold.

BB. "Your work":

    1.   Means:

        a.   Work or operations performed by you or on your behalf; and

        b.   Materials, parts or equipment furnished in connection with such work or operations.

    2.   Includes:

        a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        b.   The providing of or failure to provide warnings or instructions.



**ACE Producer Compensation**
**Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)



## ACE GROUP SPECIALTY CLAIMS LOSS NOTIFICATION FORM

**FORWARD BY FAX, MAIL OR E-MAILTO:**

ACE Excess
P.O. Box 5103
Scranton, PA 18505-0510
Fax No.: **(866)635-5687**

CasualtyRiskExcessFirstNotice@acegroup.com

**Today's Date: 25 July 2013**

## Notice of:   (check all that apply)

**First-Party Claim**                  **Potential Claim**

**Third-Party Claim**                 **Litigation Initiated**

**Other_____**

## Insured's Name & Contact Information

**Company Name:**   McKesson Corporation                    **Point of Contact:**

**Address:**   One Post St, 34th Floor
San Francisco  CA 94104

**Phone Number:**

## Broker/Agent's Name & Contact Information

**Company Name:**   MARSH RISK & INSURANCE SERVICES          **Point of Contact:**   Linda Miner

**Address:**   345 California Street, Suite 1300
San Francisco  CA 94104

**Phone Number:**

## Policy Information

**Policy Number:**   XOO G2704766A                  **Policy Period:**   07/01/2013 - 07/01/2014

**Limits of Liability:**   25,000,000   **per**   25,000,000   **agg**   **Self-Insured Retention/Deductible:**   25,000.00

## Loss Information

**Date of Incident/Claim:**                  **Location:**

**Claimant Name/Address:**

**Description of Loss:**

Please list all attached or enclosed documentation:          (check if none provided)

Name of Person Completing This Form:                    Signature:

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

## COMMERCIAL UMBRELLA LIABILITY

## INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully.

When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.
- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

# 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.
- Please be prepared to provide the following information:
  - o Caller's name, title and contact telephone number
  - o Name of Insured
  - o Policy Number
  - o A description of the incident
  - o Any witnesses
  - o Property, Product or Vehicle Information
  - o Incident Location
  - o Contact Person
  - o Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - o Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty insurance Company or one of its insurance company affiliates.*

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **1** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

CARMINE A. GIGANTI, Secretary

JOHN J. LUPICA, President

Authorized Representative

CC-1K11g  (01/11)

# CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **2** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

      $250,000 Annual Limit

Catastrophe Management Coverage

A. Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

B. A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

C. There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

D. Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

E. Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

F. For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling;  travel expenses; temporary living expenses or other necessary response costs and approved by us,  incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured".  A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# COVERAGE TERRITORY DEFINITION AMENDMENT

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **3** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section VII**., **DEFINITIONS**, Item D. "Coverage territory" is deleted and replaced with the following:

D.   "Coverage territory" means anywhere in the world.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# DEFENSE INSIDE THE LIMITS ENDORSEMENT - FOLLOW FORM

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **4** |

| | | | |
|---|---|---|---|
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

Paragraph D. of Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS** is deleted and replaced by the following**:**

D.  If we assume the defense of any "suit" against the "insured", we will pay the following items as listed below:

1.  All expenses we incur.

2.  Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy.  We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance.  We do not have to furnish these bonds.

4.  The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5.  All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6.  All costs taxed against the "insured" in the "suit".

7.  Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8.  Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance", then such expenses will reduce the corresponding applicable Limits of Insurance of this policy.  However, if expenses incurred to defend any "suit" do not reduce the applicable limits of "underlying insurance", then we will pay such expenses in addition to the applicable Limit of Insurance of this policy.

Section **IV.**, **LIMITS OF INSURANCE** is amended by the addition of the following:

If defense expenses are included within the "underlying insurance" or within any "other insurance", then references to damages in this Section are amended to include Defense and Supplementary Payments for the sole purpose of determining erosion of limits of insurance.

Section **VII.**, **DEFINITIONS**, Subsection **M.**, is deleted in its entirety and replaced with the following:

**M.** "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay because of damages as a result of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.   If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance",  then "loss" also includes Defense and Supplementary Payments, which will erode the limits of this insurance.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# EMPLOYEE BENEFIT PLAN LIMITATION
# [CLAIMS MADE]

| | | | |
|---|---|---|---|
| Named Insured | | | Endorsement Number |
| **McKesson Corporation** | | | **5** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

1. Underlying Insurance

    Company:

    Policy Number:

    Expiration Date:

    Retroactive Date:

    Limits of Insurance:

    Each Employee            $

    Aggregate:               $

2. Our Retroactive Date:

3. Coverage

    Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

    "Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

    a.  Counseling "employees" on your "employee benefit programs";

    b.  Interpreting your "employee benefit programs";

    c.  Handling records for your "employee benefit programs";

d. Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e. Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f. Collection of contributions and application of contributions as provided in your "employee benefit programs";

g. Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h. Processing of claims for your "employee benefit programs".

"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4. Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a. Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i. The date such claim is first made against you is during OUR policy period, and

ii. The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b. Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in like manner, subject to all of the following:

i. Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii. The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c. Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance"  above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i. The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii. Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii. If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d. Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

## FELLOW EMPLOYEE EXCLUSION DELETED

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **6** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# FOREIGN LOSS INDEMNITY ENDORSEMENT

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **7** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**THIS ENDORSEMENT APPLIES ONLY WHEN A "FOREIGN OCCURRENCE", ARISING OUT OF A "FOREIGN BUSINESS OPERATION" AND CAUSING "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY", TAKES PLACE IN A COUNTRY WHERE WE ARE NOT "LICENSED".**

The policy is amended to add the following:

## FIRST NAMED INSURED INDEMNITY COVERAGE

### I.  INSURING AGREEMENT

This endorsement applies only when a "foreign occurrence", arising out of a "foreign business operation" and causing "bodily injury", "property damage" or "personal and advertising injury", takes place in a country where we are not "licensed".

In that case, rather than directly pay on behalf of and defend your "foreign business operation", we will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" and defense and supplementary payments in accordance with this endorsement. This endorsement provides the only coverage under the policy for "bodily injury", "property damage" or "personal and advertising injury" arising out of a "foreign occurrence".

The terms, conditions and limitations in sub-section A.1., A.2., B., C. and D. of Section **I. INSURING AGREEMENT** in the policy will apply to our duty to indemnify the "First Named Insured".

### II.  WHO IS AN INSURED

Section **II. WHO IS AN INSURED**, is amended to provide that a "foreign business operation" is not an "insured" on whose behalf we have a direct duty to pay settlements or judgments or a direct duty to defend under this policy.

### III.  DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS

When this endorsement applies, rather than directly defend your "foreign business operation", we will indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign business operation", provided that (a) the "foreign business operation" gives the "First Named Insured" the right to control

© 2011

the investigation, defense and settlement of the "suit" and (b) the "First Named Insured" assigns this right to us. We will associate with the "First Named Insured" to conduct such investigation, defense and settlement as provided in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, except that we will indemnify the "First Named Insured" rather than directly defend and pay supplementary payments.

## IV. LIMITS OF INSURANCE

A. The insurance provided by this endorsement is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity will erode and be counted against such limits.

B. Subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

1. Has indemnified a "foreign business operation", or

2. Represents to us that it is obligated to indemnify the "foreign business operation".

However, if this policy provides for a percentage allocation of liability with respect to the insured's or the "foreign business operation's" interest in a joint venture, limited liability company or partnership, the allocation set forth in such provision will apply.

The terms, conditions and limitations set forth in Section **IV. LIMITS OF INSURANCE** in the policy will apply to our duty to indemnify the "First Named Insured".

## V. CONDITIONS

When this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy.

### A. Claims Made/Reported Coverage (if applicable)

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period will also apply to all claims made against a "foreign business operation" for which the "First Named Insured" seeks indemnification.

### B. Additional Notice Duties of the "First Named Insured"

With respect to a "foreign occurrence" which may result in a claim for damages under this endorsement, the "First Named Insured" assumes the duty to notify us, and must notify us in accordance with the standards described in Condition **F. Duties in the Event of "Occurrence", Claim or "Suit"** in the policy.

### C. Proof of Insurance

This policy may not be offered as proof of insurance unless permitted by local applicable law.

### D. Truthfulness and Accuracy of Material Information

When this endorsement applies, the "First Named Insured":

1. Is responsible for the truthfulness and accuracy of any material information provided to us with respect to a "foreign business operation", "foreign occurrence", claim, "suit" or "loss"; and

2.  Will not, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured, a "foreign business operation", a "loss", claim or "suit" or a "foreign occurrence".

## VI.  DEFINITIONS

When this endorsement applies, Definition M. "Loss" in the policy is deleted and replaced with the following:

M.  "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "foreign business operation" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", for which the "foreign business operation" makes a claim for reimbursement from the "First Named Insured", after making proper deduction for all recoveries and salvages.

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign business operation" means a subsidiary of the "First Named Insured" and any other organization under its control or active management at the inception date of the policy or added by endorsement, and having its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", "property damage" or "personal and advertising injury" located in a country where we are not "licensed".

"Foreign occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign business operation" taking place in or causing "bodily injury", "property damage" or "personal and advertising injury" in a country where we are not "licensed". Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

"Licensed" means expressly approved in accordance with law by the applicable regulatory body to conduct the business of insurance in a country as a regulated, authorized insurer. "Licensed" is synonymous with admitted and authorized.  It does not include being recorded as an eligible foreign or alien non-admitted insurer.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# FOREIGN LIABILITY LIMITATION

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **8** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the "scheduled underlying insurance:"

1) This exclusion shall not apply; and

2) Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance," subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance."

All other terms and conditions of this policy remain unchanged.

Authorized Agent

## INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **9** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4)   arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a.   medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or
b.   the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# INDUSTRIAL AID AIRCRAFT ENDORSEMENT

Named Insured | Endorsement Number
**McKesson Corporation** | **10**

Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement
**XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013**

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.  LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$         Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned by or rented or loaned to any "insured".  Use includes operation and "loading and unloading").

II. For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III. For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV. Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance".

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses".

V.  For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A. Aircraft
This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI. For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1. attorney's fees and all other investigation, loss adjustment and litigation expenses;
2. premiums on bonds to release attachments;
3. premiums on appeal bonds required by law to appeal any claim or "suit";
4. costs taxed against the "insured" in any claim or "suit";
5. pre-judgment interest awarded against the "insured"; and
6. interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used predominantly for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

## NON-CONCURRENCY ENDORSEMENT
### (Recognizes Non-Concurrency)

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **11** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Whereas, the policy (ies) listed in the schedule of "underlying insurance" are non-concurrent with the "policy period" hereunder;

In the event of reduction or exhaustion of the aggregate limit(s) of the policy (ies) by reason of "occurrences" prior to the inception of this policy, it is agreed that such insurance as is afforded by this policy shall:

(1) in the event of reduction apply in excess of the reduced underlying limit; or

(2) in the event of exhaustion continue in force as "underlying insurance".

Anything in this endorsement to the contrary notwithstanding this policy applies only to "occurrences" happening during the "policy period".

"Policy period" means the period stated in the Declarations of this policy.

All other terms and conditions remain unchanged.

Authorized Agent