1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7   ACE PROPERTY AND CASUALTY          Case No.  20-cv-09356-JSC
    INSURANCE COMPANY,

8                 Plaintiff,            **ORDER RE: MOTION TO REMAND**

9          v.                          Re: Dkt. No. 90

10   MCKESSON CORPORATION, et al.,

11                Defendants.

12

13          Ace Property and Casualty Insurance Company ("ACE") filed this action in Orange

14   County Superior Court seeking a declaration that it has no duty to defend or indemnify McKesson

15   Corporation ("McKesson") for lawsuits alleging that McKesson contributed to and profited from

16   the nation's opioid epidemic. In addition to McKesson, ACE named as defendants 25 other

17   insurance companies that insured McKesson at some point during the relevant period.  McKesson

18   removed the lawsuit to this Court based on diversity jurisdiction.  Before the Court is ACE's

19   motion to remand.  (Dkt. No. 90.)[1]  ACE contends that McKesson's notice of removal is facially

20   and procedurally defective, and that McKesson cannot use the doctrine of realignment to cure the

21   defects in its removal notice.  After carefully considering the parties' briefing, and having had the

22   benefit of oral argument on February 25, 2021, the Court DENIES Ace's motion to remand.

23   Realignment of the parties is proper.

24                          **BACKGROUND**

25   **I.      ACE's State Court Action**

26          ACE filed this action in Orange County Superior Court on October 30, 2020 against

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers placed at the top of the documents.

United States District Court
Northern District of California

McKesson and 25 other insurance companies that "issued insurance policies to McKesson covering the relevant period" of the lawsuits McKesson faces regarding its alleged misconduct in distributing opioids. (Dkt. No. 1-3 at 4 at ¶ 4.)  ACE seeks declaratory judgments that it owes no duty to defend McKesson or indemnify in these lawsuits.  (*Id.* at 13 ¶¶ 47-52.)  ACE also seeks—to the extent that ACE has any obligation to defend or indemnify McKesson—a declaration of the rights and obligations, if any, other named insurers have to defend or indemnify McKesson in these lawsuits under those insurers' policies.  (*Id.* at 14 ¶¶ 53-55.)  While the action was pending in state court, ACE voluntarily dismissed 13 Defendants.[2]  (Dkt. No. 123-2 at 4.)  On December 2, 2020, McKesson filed a notice of removal, removing the action on diversity grounds to the United States District Court for the Central District of California, and simultaneously sought to transfer the action to the Northern District of California.  (*See* Dkt. Nos. 1 & 2.)  McKesson argued in its removal notice that complete diversity existed between the parties when they were properly aligned as "insurers versus insured."  (Dkt. No. 1 at 8 ¶ 21.)

Following ACE's consent to McKesson's transfer motion, this action was transferred to the Northern District of California on December 23, 2020.  (Dkt. No. 53.)  On January 4, 2021, ACE filed the instant motion to remand.  (Dkt. No. 90.)  Defendant National Fire & Marine Insurance Company ("National Fire") filed a statement of non-opposition to and support for ACE's remand motion on January 19, 2021, contending that McKesson failed to obtain its consent to removal. (Dkt. No. 106.)  ACE then voluntarily dismissed 7 Defendants, but not National Fire.[3]  (Dkt. No.

---

[2] Ace voluntarily dismissed Defendants Arch Reinsurance Limited, Argo Re Limited, Aspen Insurance UK Limited, Canopius Underwriting Bermuda Limited, Endurance Specialty Insurance Limited, Great Lakes Insurance Company SE, Ironshore Specialty Insurance Company, Liberty Special Markets Agency, Markel American Insurance Company, Munich Reinsurance America, Inc., North American Capacity Insurance Company, Swiss Re International SE, and XL Insurance America, Inc.  (Dkt. No. 123-2 at 4.)

[3] Ace voluntarily dismissed Defendants Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509B0WCN1500017, Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1600451, Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1700408, Certain Underwriters at Lloyd's London, Subscribing to Policy No. 509/DL554610, Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1600450, Certain Underwriters at Lloyd's London, Subscribing to Policy No. B0509BOWCN1700419, and Lexington Insurance Company.  (Dkt. Nos. 82 & 112.)  Six parties remain in the action, and all have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 101-04, 109.)

United States District Court
Northern District of California

112.)  The remand motion is fully briefed, and the Court heard oral argument on February 25, 2021.

**II.     AIU's Related Federal Court Action**

On October 23, 2020, one week before ACE filed this action in state court, AIU Insurance Company ("AIU") and National Union Fire Insurance Company ("National Union") (collectively "AIU Plaintiffs") filed an action in the Northern District of California seeking declarations that they are not obligated to defend or indemnify McKesson against the opioid lawsuits.  (*See AIU Insurance Company et al v. McKesson Corporation*, Case No. 3:20-cv-07469-JSC, Dkt. No. 1 at 10-11 ¶¶ 49-56.)  McKesson filed an answer and counterclaim against the AIU Plaintiffs in the *AIU Insurance* action on November 6, 2020—also naming ACE as a third-party defendant— alleging that the AIU Plaintiffs and ACE breached their insurance policies with McKesson by failing and refusing to defend and indemnify McKesson in the opioid lawsuits.  (*AIU Insurance*, Dkt. No. 9 at 17-18 ¶¶ 39-48.)  McKesson also sought declarations that the AIU Plaintiffs and ACE are obligated to defend and indemnify it in the opioid lawsuits.  (*Id.* at 18-19 ¶¶ 49-60.)

ACE filed an answer and counterclaims seeking declarations that it has no duty to defend or indemnify against McKesson's third-party complaint on January 7, 2021; the AIU Plaintiffs filed their answer to McKesson on the same day.  (*AIU Insurance*, Dkt. Nos. 45, 46.)  The Court related the actions on January 20, 2021.  (*AIU Insurance*, Dkt. No. 53.)  Following ACE's filing of its remand motion on January 4, 2021, ACE filed a motion to stay in the *AIU Insurance* action on the grounds that the *AIU Insurance* action should be "stay[ed] . . . in favor of the state court action[.]"  (*AIU Insurance*, Dkt. No. 54 at 6.)  In response, McKesson filed its motion for an extension of time to respond to ACE's stay motion until this Court ruled on the instant motion remand.  (*AIU Insurance*, Dkt. No. 62.)  The Court granted McKesson's motion for an extension of time, and deferred briefing on ACE's motion to stay in *AIU Insurance* until ACE's remand motion is decided in this case.  (*AIU Insurance*, Dkt. No. 65.)

**DISCUSSION**

ACE argues that McKesson's removal notice is facially improper because complete diversity does not exist between the parties, and procedurally improper because McKesson did not

1    obtain the consent of other Defendants, such as National Fire, before removing this action.

2    **I.      Legal Standard**

3             "Federal courts are courts of limited jurisdiction. They possess only that power authorized

4    by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

5    (1994). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28

6    U.S.C. §§ 1331 and 1332. Section 1331 provides for 'federal question' jurisdiction, § 1332 for

7    'diversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (internal

8    brackets omitted). Federal subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires

9    complete diversity of citizenship and an amount in controversy in excess of $75,000.

10            "Only state-court actions that originally could have been filed in federal court may be

11   removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

12   (1987); *see also* 28 U.S.C. § 1441(a). A defendant seeking removal to federal court "bears the

13   burden of establishing that removal is proper," and the "removal statute is strictly construed

14   against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d

15   1083, 1087 (9th Cir. 2009). "Federal jurisdiction must be rejected if there is any doubt as to the

16   right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992); *see also*

17   28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks

18   subject matter jurisdiction, the case shall be remanded.")

19   **II.     Remand**

20            **a.   Realignment & Removal**

21            McKesson insists that if the insurer defendants are realigned with ACE as plaintiffs there is

22   complete diversity between plaintiffs and McKesson (the lone defendant), and therefore National

23   Fire's (or any other insurer's) lack of consent is immaterial. ACE responds that a removing

24   defendant "may not invoke the doctrine of realignment in order to manufacture diversity

25   jurisdiction where the plaintiff's complaint does not supply it," or that, put differently, realignment

26   cannot be used to create diversity where it would not otherwise exist. (Dkt. No. 90 at 15, 17-18.)

27   The Court disagrees.

28            As a threshold matter, Ace's contention that realignment cannot be used to "manufacture"

*United States District Court*
*Northern District of California*

diversity is not consistent with Ninth Circuit precedent.  *See Faysound Ltd. v. United Coconut Chemicals, Inc*., 878 F.2d 290, 295–96 (9th Cir. 1989) ("It has been found not inappropriate to permit realignment with another result—the creation of diversity jurisdiction.") (citation omitted). In the Ninth Circuit, "[c]ourts may realign parties, according to their ultimate interests, whether the realignment has the effect of *conferring or denying* subject matter jurisdiction on the court." *Smith v. Salish Kootenai Coll*., 434 F.3d 1127, 1133 (9th Cir. 2006) (en banc) (citing *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 382 (9th Cir. 1965)) (emphasis added).  While ACE cites *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 172-73 (4th Cir. 2018), in support of its argument that McKesson may not invoke realignment to create federal diversity jurisdiction, *Jackson* is a Fourth Circuit decision whose reasoning is inapplicable where the Ninth Circuit has held that courts may realign parties even where "realignment has the effect of *conferring . . .* subject matter jurisdiction on the court," *Smith*, 434 F.3d at 1133 (citation omitted) (emphasis added); *see also Zuniga v. United Can Co*., 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their own circuit[.]").  Accordingly, the Court may properly consider the parties' realignment where, as here, it would create diversity jurisdiction over McKesson, ACE, and the remaining insurer defendants ("Insurer Defendants").

ACE argues further, however, that realignment *upon removal* is improper.  While the Ninth Circuit has not addressed this specific question, several district courts in the Ninth Circuit have considered and realigned parties to affirm or confer diversity jurisdiction upon removal.  *See, e.g.*, *Rainier Econ. Dev. Council v. United States Gypsum Co.*, No. 09-00479-HA, 2009 WL 10733447, at *2 (D. Or. July 6, 2009); *Brighton/Shaw, Inc. v. Carson*, No. 1:06cv1136 AWI DLB, 2007 WL 426446, at *2 (E.D. Cal. Feb. 7, 2007) ("As with original diversity jurisdiction, in determining whether diversity exists in cases removed from state court, the federal court has the power to align the parties according to their real interests.") (citation omitted); *City of Gladstone v. Northland Cas. Co*., No. CIV. 00-1438-KI, 2001 WL 34728883, at *2-3 (D. Or. Feb. 28, 2001) (determining that "[t]he remaining issue [on the City's motion to remand] is whether [certain defendants] should now be realigned with the City to allow this court to have diversity subject matter jurisdiction" and realigning those defendants such that "diversity subject matter jurisdiction

exists"); *Telekenex, Inc. v. Axis Reinsurance Co.*, No. C12-1617-JCC, 2012 WL 13028156, at *3 (W.D. Wash. Nov. 27, 2012) (finding that it was "the proper course" to "realign[] the parties in an insurance coverage case before determining whether the requirements of the removal statute—including the forum defendant rule—were satisfied") (citing *Universal Concrete Prods. Corp. v. Peerless Ins. Co.*, No. CCB-08-00317, 2008 WL 4104171, at *14-15 (D. Md. Aug. 21, 2008)); *Pattee v. Am. States Ins. Co.*, No. A03-208CV(JWS), 2003 WL 24085348, at *2 (D. Alaska Nov. 10, 2003) (querying that "[w]hether this case will be remanded depends on whether the court should [realign a defendant]" to confer diversity, and determining that realignment was proper where parties' interests were "congruent at the time of removal . . . [t]herefore [a defendant] is deemed to have been a plaintiff"). *Cf. Richer v. Travelers Commercial Ins. Co.*, No. 17-cv-04984-HSG, 2017 WL 5618524, at *2 (N.D. Cal. Nov. 22, 2017) (finding that the court was "required to remand the case to state court—unless [one defendant] c[ould] show that [another was] properly realigned as a plaintiff, which would preserve diversity of citizenship and . . .  subject matter jurisdiction[,] but that the defendant failed to make this showing). The Court finds these cases persuasive. As the court in *Telekenex* stated, "[a]ny other rule [c]ould permit parties to avoid removal of cases properly within the jurisdiction of the federal courts by creative pleading[.]" *Telekenex, Inc.*, 2012 WL 13028156, at *3.

ACE asserts that, rather than realign the parties, McKesson must instead satisfy the requirements of the "fraudulent joinder" exception to the rule that "only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant[.]" *Caterpillar Inc.*, 482 U.S. at 392; *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"). "There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal quotation marks and citation omitted). According to ACE, "[i]t makes eminent sense to require [McKesson] to satisfy the strictures of fraudulent joinder to remove [the] case that on its face lacks complete diversity,"

6

1   and that otherwise permitting McKesson to realign the parties upon removal "would be to

2   countenance a readily available end-run around [the] demanding standard" of the fraudulent

3   joinder exception. (Dkt. No. 90 at 15-16.) Not so.

4       At oral argument, ACE highlighted that when the Ninth Circuit has discussed fraudulent

5   joinder as a possible exception to the complete diversity requirement for removal jurisdiction it

6   has not also mentioned realignment as an exception. *See, e.g.*, *Morris*, 236 F.3d at 1067-1070

7   (analyzing removal jurisdiction through the fraudulent joinder exception with no mention of

8   realignment); *Grancare*, 889 F.3d 543 (reviewing district court's remand order on the basis of

9   fraudulent joinder). ACE contended that the Court should draw by "negative implication" the

10  notion that had the Ninth Circuit "meant to include" realignment as an exception to the complete

11  diversity requirement it would have done so. (Dkt. No. 135 at 9.) According to ACE, the Ninth

12  Circuit's silence regarding realignment as a possible exception to this requirement is tantamount to

13  its rejection. This argument is unpersuasive. First, there is nothing in the relevant caselaw that

14  indicates the Ninth Circuit considered and rejected realignment. ACE cites cases from the Third

15  and Eighth Circuits for the proposition that a defendant may avoid remand only by showing a non-

16  diverse party was fraudulently joined. (Dkt. No. 90 at 15.) *See Batoff v. State Farm Ins. Co.*, 977

17  F.2d 848, 851 (3d Cir. 1992) ("[T]he removing defendant may avoid remand only by

18  demonstrating that the non-diverse party was fraudulently joined."); *see also Filla v. Norfolk S.*

19  *Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). These cases are inapposite, however, as the Ninth

20  Circuit has not limited fraudulent joinder as the only means for a removing defendant to avoid

21  remand if the parties are facially non-diverse. *See Morris*, 236 F.3d at 1067 ("[*O*]ne exception to

22  the requirement of complete diversity is [fraudulent joinder].") (emphasis added); *Strotek Corp. v.*

23  *Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002) ("Nor may the presence of a sham

24  or nominal party defeat removal on diversity grounds.") (citations omitted).[4]

25  _____

26  [4] ACE cites one district court case, *King v. Warner-Lambert Co.*, No. CV-S-02-0370, 2002 WL
    988167, at *1 (D. Nev. May 7, 2002), in support of its argument that fraudulent joinder is the only
27  way in which a removing defendant may avoid remand where one defendant is non-diverse. *King*,
    a district court in the Ninth Circuit, cited *Batoff*, 977 F.2d at 851 as the appropriate legal standard
    in its analysis. As such, the Court finds ACE's citation to *King* unavailing because it relied on
28  out-of-circuit authority that is inconsistent with Ninth Circuit caselaw. Further, there is nothing in

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In any event, realignment of the parties upon removal is not an "exception" to the complete

2   diversity requirement or an "end-run around" the requirements for fraudulent joinder; rather, it is a

3   consideration of how parties' interests align for jurisdictional purposes.  *See Dolch v. United*

4   *California Bank*, 702 F.2d 178, 181 (9th Cir. 1983) ("If the interests of a party named as a

5   defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named

6   defendant must be realigned as a plaintiff for jurisdictional purposes.") (citing *City of Indianapolis*

7   *v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)); *Prudential Real Estate Affiliates, Inc. v. PPR*

8   *Realty, Inc*., 204 F.3d 867, 873 (9th Cir. 2000) ("We must align for jurisdictional purposes those

9   parties whose interests coincide respecting the primary matter in dispute.) (internal quotation

10   marks and citation omitted).  Other courts have analyzed parties' realignment in a similar fashion.

11   *See, e.g.*, *City of Gladstone*, 2001 WL 34728883, at *2-3 ("The remaining issue [on the City's

12   motion to remand] is whether [certain defendants] should now be realigned with the City to allow

13   this court to have diversity subject matter jurisdiction[.]"); *Telekenex, Inc.*, 2012 WL 13028156, at

14   *3.  Their analyses support this Court's conclusion that consideration of the parties' alignment

15   upon removal is neither violative of the removal statute nor a work-around the requirements for

16   fraudulent joinder.  *See also Tres Cruzes Land & Cattle, LLC v. Scottsdale Ins. Co*., No. 2:15-cv-

17   00449-MCE-DAD, 2015 WL 6949888, at *3 (E.D. Cal. Nov. 10, 2015) ("Despite this

18   presumption against the propriety of jurisdiction, courts must nonetheless look beyond the labels

19   in the complaint and realign the parties according to their real interests.") (citing *Scotts Co. LLC v.*

20   *Seeds, Inc*., 688 F.3d 1154, 1157 (9th Cir. 2012)).  Moreover, the Court's conclusion is consistent

21   with its "duty . . . to look beyond the pleadings, and arrange the parties according to their sides in

22   the dispute."  *City of Indianapolis*, 314 U.S. at 69 (citation omitted).

23    The requirement that a court must "strictly construe[]" the removal statute and the

24   presumption against removal, *see Provincial Gov't*, 582 F.3d at 1087, does not mean that

25   realignment cannot properly be considered even when conferring diversity jurisdiction, *see Smith*,

26   434 F.3d at 1133; *see also In re Digimarc Corp. Derivative Litig*., 549 F.3d 1223, 1234 (9th Cir.

27

28   the opinion that suggests the district court was even aware of the realignment possibility, let alone
     that it rejected it.

1    2008) ("[A] court must realign the parties in order to protect [its] judgments against artful

2    pleading[.]") (citation omitted).  At bottom, so long as the Court resolves any doubts regarding the

3    propriety of the parties' realignment upon removal against their realignment, the Court does not

4    offend the presumption against removal, *see Gaus*, 980 F.2d at 566, or its obligation to resolve all

5    jurisdictional doubts in favor of remand.

6         **b.  Primary Purpose**

7         ACE argues in the alternative that, even if realignment can be considered upon removal,

8    realignment here—placing ACE and the Insurer Defendants on one side, and McKesson on the

9    other—is improper. The Court disagrees.

10        In the Ninth Circuit, courts use the "primary purpose" test when evaluating parties'

11   realignment.  *See, e g.*, *Prudential*, 204 F.3d at 872-73.  "The issue of alignment for purposes of

12   diversity jurisdiction requires a court to 'look beyond the pleadings' to the actual interests of the

13   parties respecting the subject matter of the lawsuit."  *Id.* at 872 (citing *City of Indianapolis*, 314

14   U.S. at 69).  In doing so, "[a court] must align for jurisdictional purposes those parties whose

15   interests coincide respecting the primary matter in dispute."  *Prudential*, 204 F.3d at 873 (internal

16   quotation marks and citations omitted); *see also Scotts Co. LLC v. Seeds, Inc*., 688 F.3d 1154,

17   1158 (9th Cir. 2012) ("[Courts] should limit [their] inquiry of what constitutes the primary dispute

18   to the primary purpose of th[e] federal case.").  "If the interests of a party named as a defendant

19   coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant

20   must be realigned as a plaintiff for jurisdictional purposes."  *Dolch*, 702 F.2d at 181 (citing *City of

21   Indianapolis*, 314 U.S. at 69-70); *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co*., 819 F.2d

22   1519, 1523 (9th Cir. 1987).  "Realignment may be required even if a diversity of interests exists

23   on other issues."  *Dolch*, 702 F.2d at 181.

24        While the Ninth Circuit has not applied the "primary purpose test" to circumstances similar

25   to those here, the Fourth Circuit in *U.S. Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 132 (4th

26   Cir. 1995), applied the primary purpose test from the Ninth Circuit's decision in *Continental

27   Airlines*, 819 F.2d at 1523, and determined that insurers and their insured were properly realigned

28   where one insurer originally sued its insured and the insured's co-insurers.  United States Fidelity

9

1   and Guaranty Company ("U.S. Fidelity") provided A & S Manufacturing Co. ("A&S") with

2   liability insurance.  *Id.* at 132.  A&S was also insured by Federal Insurance Company as well as

3   Hartford Accident and Indemnity Company.  *Id.*  When "environmental contamination" allegedly

4   occurred at A&S sites, the Environmental Protection Agency (the "EPA") sued A&S to recover

5   costs for responding to the contamination.  *Id.*  Because these sites were covered by policies A&S

6   held with these insurers, A&S requested that they indemnify and defend it from the EPA's suit.

7   *Id.*  U.S. Fidelity filed suit against A&S as well as the other insurers, seeking "a declaration of the

8   parties' rights and duties as they relate[d] to [A&S's] claims" for coverage; each insurer denied

9   liability to A&S, and contended that "if it were liable, one or both of the other insurers would be

10   liable to it[.]"  *Id.*  As aligned in U.S. Fidelity's complaint, complete diversity existed, and the

11   district court had jurisdiction on diversity grounds.  *Id.*

12          Under the "principal purpose test," the court determined it must first identify the "primary

13   issue in the controversy," after which it "should align the parties according to their positions with

14   respect to the primary issue."  *Id.* at 133.  "If the alignment differ[ed] from that in the complaint,"

15   the court reasoned, then it must "determine whether complete diversity continues to exist."  *Id.*

16   Applying this framework, the court found that the "pleadings and the nature of the suit clearly

17   manifest[ed]" the dispute's proper alignment: because the case's "primary issue" was whether the

18   insurers owed A&S duties to defend or indemnify, any intra-insurer disputes were "ancillary" to

19   the "primary issue of the duty to indemnify."  *Id.* at 134.  For this reason, the court affirmed the

20   district court's realignment of the parties around this primary dispute, "placing the insurers as

21   plaintiffs and the insured as the defendant."  *Id.*  A court "trying the merits" of the case would first

22   need to decide whether the insurers had any obligation to defend or indemnify, and if "none, or

23   only one, provided coverage," then the issue of the insurers' liability to one another was moot.  *Id.*

24   At bottom, the insurers' dispute "[was] secondary to whether the insurers [were] liable to A&S

25   and [was] hypothetical until the insurers' liability [to the insured] [was] determined."  *Id.*

26          The Court finds *U.S. Fidelity*'s reasoning persuasive.  ACE seeks a declaration of the

27   Insurer Defendants' obligations, "if any," to defend or indemnify McKesson "*to the extent* that the

28   Court determines" ACE has any defense or indemnifying obligations itself.  (Dkt. No. 1-3 at 14 ¶

United States District Court
Northern District of California

54.) (emphasis added.)  The "pleadings and the nature of the suit clearly manifest[]" the dispute

and parties' proper alignment.  *U.S. Fidelity*, 48 F.3d at 134.  The "primary dispute" is ACE's

duties to McKesson, and the Insurer Defendants' obligations, "*if any*," are predicated on "*the*

*extent* [to which] the court determines that ACE has any [coverage] obligations" to McKesson.

(Dkt. No. 1-3 at 14 ¶ 54.) (emphasis added).  As such, ACE's dispute with the Insurer Defendants

is "secondary to whether [they] are liable to [McKesson] and is *hypothetical* until [their] liability

to [McKesson] is determined."  *U.S. Fidelity*, 48 F.3d at 134 (emphasis added).[5]  Accordingly,

ACE and the Insurer Defendants share a primary purpose, and are properly realigned as plaintiffs

opposite McKesson.

      The Court's conclusion that the Insurer Defendants are properly realigned with ACE is

also consistent with the Sixth Circuit's decision in *U.S. Fid. & Guar. Co. v. Thomas Solvent Co*.,

955 F.2d 1085, 1090 (6th Cir. 1992).  In *Thomas Solvent*, the Sixth Circuit, also citing the Ninth

Circuit's decision in *Continental Airlines*, 819 F.2d at 1519, applied the "primary dispute" test,

under which "parties should be aligned according to the primary dispute in an action," *Thomas*

*Solvent*, 955 F.2d at 1091. Applying this test, the court realigned the insurers involved in an action

in which one insurer "[sought] a declaratory judgment of the obligations of the various insurers in

order to receive contribution from those insurers who shared an obligation with [it] to the insured

parties . . . because the primary dispute involved the insurers' duties to indemnify[.]"  *Id.* at 1089-

90. "Depending on the district court's determination of this latter issue, the contribution issue may

be moot." *Id.* at 1089.[6]

      ACE argues that the issue of what defense or indemnification costs are shared with or

covered entirely by the Insurer Defendants is "[i]nherent in [the primary] dispute[,]" and that this

is "necessary to ascertain the extent of ACE's liability, if any, to McKesson."  (Dkt. No. 90 at 22.)

---

[5] While *U.S. Fidelity* concerned an action that was originally filed in federal court, and the parties' realignment destroyed diversity, these distinctions are immaterial for the Court's analysis because, as explained above, it may consider realignment upon removal and realignment may be properly considered to confer diversity jurisdiction.

[6] *Thomas Solvent* likewise concerned an action originally filed in federal court where the parties' realignment destroyed diversity.  As with *U.S. Fidelity*, these distinctions are of no moment in the Court's analysis.

United States District Court
Northern District of California

While ACE contends that certain factual issues—such as when McKesson learned of the "at-issue injuries," or when certain accidents covered under the policies occurred—support its theory that the determination of the Insurer Defendants' duties inheres in the action's "primary dispute," ACE prefaces this contention with the same condition: "*In the event* it is determined that there is coverage," *then* it can be determined whether and to what extent ACE is ultimately liable. (Dkt. No. 90 at 23.) (emphasis added.) In sum, ACE undermines its own theory that the issue of the Insurer Defendants' obligations is intertwined with the primary dispute. As in *U.S. Fidelity*, 48 F.3d at 134, ACE's dispute with the Insurer Defendants is hypothetical until its liability to McKesson is determined and further, until the Insurer Defendants' liability to McKesson is likewise determined. Furthermore, even if a "diversity of interests" exists between ACE and the Insurer Defendants on other or ancillary issues, this does not itself preclude their realignment. *Dolch*, 702 F.2d at 181.

ACE's citation to *Cont'l Ins. Co. v. Foss Mar. Co.*, No. C 02-3936 MJJ, 2002 WL 31414315, at *4-5 (N.D. Cal. Oct. 23, 2002), fails to persuade the Court otherwise. In *Foss*, an insurer named as defendants its insured—Foss Maritime Company—as well as "various insurance company defendants" who had issued policies to Foss during the period relevant to the Environmental Protection Agency's lawsuit against Foss for environmental damage. *Id.* at *1. Foss argued that realignment was proper because "the dispute [was] only between Foss and the insurance carriers over Foss's right to insurance coverage, and not a division of liability between Continental and the other defendants." *Id* at *4. The court found that there was no "coincidence or identity of interest" between the insurers that made realignment proper. *Id.* at *5. *Foss*, however, applied a "coincidence [of] interest" test in its realignment analysis that required the parties' "coinciding interests" to be nearly identical to satisfy the realignment standard. *Id.* at *5. The Court disagrees with this interpretation of *Continental Airlines*, 819 F.2d at 1523, and the standard for the Ninth Circuit's "primary purpose" test.

ACE additionally argues that realignment would improperly convert the Insurer Defendants into "involuntary plaintiffs." (Dkt. No. 117 at 19.) However, courts "must align for jurisdictional purposes those parties whose interests coincide respecting the primary matter in

United States District Court
Northern District of California

1  dispute." *Prudential*, 204 F.3d at 873 (internal quotation marks and citation omitted). ACE's

2  citation to *Veranda Beach Club Ltd. P'ship v. W. Sur. Co.*, 936 F.2d 1364, 1370 n.2 (1st Cir.

3  1991), does not persuade the Court that realignment on this basis is improper.  In *Veranda Beach*,

4  the court simply noted that, following realignment, one party elected not to file its own complaint

5  but, "in effect, adopted [the plaintiff's] complaint."  *Id.*  In *Flame Control Int'l, Inc. v. Pyrocool*

6  *Techs., Inc.*, No. 3:05-CV-0503-H, 2006 WL 8437275, at *1, *5 (N.D. Tex. Mar. 22, 2006), the

7  court determined in its discretion that amendment of the pleadings was required; however, *Flame*

8  *Control* addressed multiple motions, including motions for leave to file a third amended complaint

9  and a first amended counterclaim, and distinguishably concerned the "fallout of a failed business

10  relationship for the marketing and sale of firefighting products and technologies."  Fundamentally,

11  ACE cannot claim that realignment's jurisdictional analysis is invalid on the basis that any

12  realigned party becomes an "involuntary plaintiff." Doing so would preclude a court from

13  realigning parties in the first place—itself an "end run" around the doctrine.  Moreover, 2 Insurer

14  Defendants in this action, AIU Insurance Company and National Union, are plaintiffs in the *AIU*

15  *Insurance* action, Case No. 3:20-cv-07469-JSC, where they seek declarations that they have no

16  duty to defend or indemnify McKesson in the same underlying opioid litigation.  Realigning these

17  defendants in this action would hardly make them "involuntary plaintiffs."

18          Finally, ACE's citation to *Chicago Ins. Co. v. Kilbuck*, 857 F.2d 1477 (9th Cir. 1988), an

19  unpublished opinion, in support of its argument that realignment of ACE, the Insurer Defendants,

20  and McKesson, is improper.  Pursuant to N.D. Cal. Civ. L.R. 3-4(e), *Kilbuck* cannot be cited and

21  thus carries no weight.  Local Rule 3-4(e) prohibits litigants' citation to any order or opinion

22  designated as "uncitable" by its issuing court, with certain exceptions.  Ninth Circuit Local Rule

23  36-3(c) provides that unpublished orders issued before January 1, 2007 "may not be cited to the

24  courts of this circuit," except in circumstances related to claim or issue preclusion, for certain

25  factual purposes, or requests for publication and petitions for panel rehearings or rehearings *en*

26  *banc.  Kilbuck* was decided in 1988. Because none of these exceptions are relevant, N.D. Cal. Civ.

27  L.R. 3-4(e) applies; therefore, the Court does not consider *Kilbuck*.

28

* * *

For the reasons set forth above, ACE and the Insurer Defendants share a primary purpose, and are properly realigned as plaintiffs opposite McKesson.  While "[f]ederal jurisdiction must be rejected if there is any doubt" regarding removal, *Gaus*, 980 F.2d at 566, here there is no doubt that ACE and the Insurer Defendants are properly realigned for jurisdictional purposes.  The Court, therefore, has subject matter jurisdiction over this action and remand is inappropriate.

"As such, diversity subject matter jurisdiction exists and it was unnecessary for [any Insurer Defendant] to consent to removal."  *City of Gladstone*, 2001 WL 34728883, at *3; *see also Club at Hokuli'a, Inc. v. Am. Motorists Ins. Co*., No. CIV. 10-00241 JMS, 2010 WL 4386741, at *3 (D. Haw. Oct. 26, 2010) ("Consent of all defendants is not needed, however . . . where the non-consenting defendant's interests 'coincide respecting the primary matter in dispute' with the plaintiff.") (citing *Prudential*, 204 F.3d at 873).  While "[c]hallenges to removal jurisdiction require an inquiry into the circumstances at the time the notice of removal is filed," *Spencer v. U.S. Dist. Court for N. Dist. of Ca*., 393 F.3d 867, 871 (9th Cir. 2004) (citation omitted), "a complaint's alignment of the parties is not binding on the courts," *Scotts*, 688 F.3d at 1157 (internal quotation marks and citation omitted).  Because the Court "*must align for jurisdictional purposes those parties whose interests coincide respecting the primary matter in dispute*," *id*. (citation omitted) (emphasis added), once properly realigned it was unnecessary for any Insurer Defendant, including National Fire, to consent to removal.  Therefore, the Court need not address ACE's arguments regarding the facial and procedural deficiencies in McKesson's removal notice.

## CONCLUSION

For the reasons set forth above, realignment of the parties—and removal of this action to federal court—is proper.  As such, ACE's motion to remand is DENIED.  The case management conference will be held on April 1, 2021 at 1:30 p.m. A joint case management conference statement is due one week in advance.

This Order disposes of Dkt. No. 90.

//

//

1    **IT IS SO ORDERED.**

2    Dated: March 10, 2021

3

4    _____

5    JACQUELINE SCOTT CORLEY
     United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California